**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QVC GROUP, INC., *et al.*,[1] | ) | Case No. 26-90447 (ARP) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DEBTORS' <u>EMERGENCY</u>**
**MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING**
**THE DEBTORS TO (A) REDACT CERTAIN CONFIDENTIAL INFORMATION**
**OF CUSTOMERS, AND (B) REDACT CERTAIN PERSONALLY IDENTIFIABLE**
**INFORMATION OF NATURAL PERSONS, (II) WAIVING THE REQUIREMENT TO FILE**
**A LIST OF, AND PROVIDE NOTICE DIRECTLY TO, EQUITY SECURITY HOLDERS,**
**(III) APPROVING THE MANNER OF NOTIFYING CREDITORS OF THE COMMENCEMENT OF**
**THE CHAPTER 11 CASES AND OTHER INFORMATION, AND (IV) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 1:00 p.m. (prevailing Central Time) on April 17, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on April 17, 2026, at 1:00 p.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Pérez's homepage. The meeting code is "Judge Pérez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Pérez's homepage. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC. The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania, 19380.

4914-1165-3282

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):   (a) authorizing the Debtors to (i) redact certain confidential information of customers, and (ii) redact certain personally identifiable information of natural persons, (b) waiving the requirement to file a list of, and provide notice directly to, equity security holders of Debtor QVC Group, Inc. ("QVCG"), (c) approving the manner of notifying creditors of the commencement of these chapter 11 cases and other information, and (d) granting related relief.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]   A description of the Debtors, their business, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases is set forth in greater detail in the *Declaration of Bill Wafford in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.  Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration or in the contemporaneously filed *Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"), as applicable.

4.      The bases for the relief requested herein are sections 105(a), 107, and 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 1007, 2002, 9007, 9018, and 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 9013-1(i), and 9037-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and Sections B and G of the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

### Background

5.      QVC Group, Inc. and its direct and indirect Debtor and non-Debtor subsidiaries (collectively, "QVC" or the "Company") are global leaders in video retailing, ecommerce, and social commerce, curating and selling a wide variety of consumer products via highly engaging, video-rich, interactive shopping experiences.  QVC's strong social media presence, influencer relationships, and long-term relationships with companies across cable, satellite, and telecommunication platforms allowed the Company to reach over 200 million households across three continents, serve nearly 10.3 million unique customers, and ship close to 182 million units of products in 2025.

6.      Founded in 1986 and headquartered in West Chester, Pennsylvania, QVC employs over 15,800 employees.  For the fiscal year 2025, QVC's revenue was more than $9.2 billion.  As of the Petition Date, the Debtors have approximately $6.5 billion in funded debt, plus approximately $1.3 billion in face amount of preferred stock.

7.      As described more fully in the First Day Declaration, the Debtors commenced these chapter 11 cases to implement a consensual deleveraging and recapitalization transaction, with the goal of preserving, among other things, the QVC brand, business, and workforce.  On April 16, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as

4914-1165-3282

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**Basis for Relief**

**I.       Redaction of Certain Confidential Information of Customers Is Warranted.**

8.       Section 107(b)(1) of the Bankruptcy Code requires bankruptcy courts, on request of a party in interest, to "protect an entity with respect to a trade secret or confidential research, development, or commercial information."   11 U.S.C. § 107(b)(1).   Pursuant to Bankruptcy Rule 9018, upon motion, "the court may, with or without notice, issue any order that justice requires to . . . protect the estate or any entity regarding a trade secret or other confidential research, development, or commercial information." Fed. R. Bankr. P. 9018(a)(1)–(2).  The Court has broad authority to issue such an order.   *See In re Glob. Crossing Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003) ("When the requirements of Rule 9018 are satisfied, the authority to issue the resulting order is broad—'any order which justice requires.'  The Court notes that the authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice.").

9.       Courts frequently define "commercial information" as information that would provide "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Wyndham Vacation Resorts, Inc. v. Faucett (In re Faucett)*, 438 B.R. 564, 567 (Bankr. W.D. Tex. 2010) (quoting *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d. Cir. 1994)); *see also In re Alterra Healthcare Corp.*, 353 B.R. 66, 75-76 (Bankr. D. Del. 2006) (same); *In re Glob. Crossing Ltd.*, 295 B.R. at

4

725 ("The whole point of [Fed. R. Bankr. P. 9018(a)(1)] is to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury."). Commercial information also encompasses "situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a chilling effect on business negotiations, ultimately affecting the viability of Debtors." *In re Borders Grp., Inc*., 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (internal citation and quotation marks omitted); *see also In re Lomas Fin. Corp.*, No. 90 Civ. 7827, 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991) (finding that "commercial information" under section 107(b)(1) is broader than merely the "information that may give a debtor's competitors an unfair advantage").

10.     One of the Debtors' most critical assets is their customer database and related customer data, which is comprised of the names of individuals and entities, email addresses, physical addresses, and telephone numbers (collectively, the "Customer Lists"). The Customer Lists constitute confidential "commercial information" as used in section 107(b)(1) of the Bankruptcy Code. *See, e.g.*, *Faucett*, 438 B.R. at 568 (finding that certain of the debtor's customer information could be used by the debtor's competitors and thus should be protected under section 107(b) of the Bankruptcy Code); *In re Northstar Energy*, *Inc.* 315 B.R. 425, 429–30 (Bankr. E.D. Tex. 2004) (noting that disclosure of the debtors' investor list "would expose the heart and soul" of the debtors' commercial operations and warranted protection under section 107(b) of the Bankruptcy Code); *see also In re FTX Trading Ltd.*, No. 23-682 (CFC), 2024 WL 4948827, at *8–9 (D. Del. Dec. 3, 2024) (finding that the debtors' customer list fell within the ambit of section 107(b)(1) of the Bankruptcy Code); *In re Genesis Glob. Holdco, LLC*, 652 B.R. 618, 632 (Bankr. S.D.N.Y. 2023) (finding the same and collecting cases where courts have held that customer lists constitute confidential commercial information).

4914-1165-3282

11.     The Debtors are a television shopping and online retail destination for their customers and operate within a highly fragmented and growing digital retail market.  Within this market, the Debtors compete with a diverse group of retailers across various platforms, including cable and satellite television, websites, mobile applications, and social media.  Such competition makes it critical that the Debtors maintain their existing customers.  If the Debtors were required to disclose the Customer Lists, the Debtors' business operations may be harmed by loss of customers to competitors, which could in turn negatively impact the Debtors' estates.  Not only would the disclosure of the Customer Lists give unfair advantages to the Debtors' competitors by providing them information as to the commercial operations of the Debtors, but also the deluge of customer solicitation that will inevitably follow from such a disclosure will significantly increase the risk of customer attrition, diminish the value of the Debtors' estates, and distract the Debtors from their restructuring efforts.  Providing the Customer Lists publicly, for free, would be harmful to the prospect of a going-concern reorganization that maximizes value for the Debtors' stakeholders.  Thus, given the commercial importance of keeping the Customer Lists confidential, the Debtors seek to redact the Customer Lists, to the extent the Customer Lists or customer information is required to be filed publicly in these chapter 11 cases, to prevent the damage that would likely result from its disclosure.

12.     Where cause exists, such as here where the Debtors' customers' identities and contact information are valuable, proprietary, and confidential commercial information, courts throughout the country, including bankruptcy courts in the Fifth Circuit, have authorized debtors to redact the names and other identifying information of the debtors' customers or other commercially sensitive information. *See, e.g., In re Nine Energy Serv., Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 3, 2026) (authorizing the debtors to redact and file under seal the names, email addresses, physical addresses, and telephone numbers of their customers from any filings

with the Court or made publicly available in their chapter 11 cases); *In re Kleopatra Finco S.À R.L.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology, Inc.,* No. 25-90498 (ARP) (Bankr. S.D. Tex. Sept. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.,* No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (same); *In re Northvolt AB*, No. 24-90577 (ARP) (Bankr. S.D. Tex. Mar. 11, 2025) (authorizing the debtors to redact and file under seal the names, addresses, and email addresses of the debtors' customers and key suppliers from any filings with the bankruptcy court in their chapter 11 cases).

13.     Cause therefore exists pursuant to section 107(b)(1) of the Bankruptcy Code to authorize the Debtors to redact the names and all associated identifying information of the Debtors' customers from any paper filed or to be filed with the Court or otherwise made public in these chapter 11 cases, including the Consolidated Creditor Matrix, the Top 30 Creditors List,[3] and the schedules of assets and liabilities and the statements of financial affairs (the "Schedules and Statements").

14.     The Debtors will make the unredacted version of any such documents available to (a) the Court, (b) the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), (c) Davis Polk & Wardwell LLP and Porter Hedges LLP, as counsel to the QVC Noteholder Group, (d) counsel to any official committee appointed in these chapter 11 cases on a professional-eyes-only basis, (e) Kroll Restructuring Administration LLC ("Kroll"), the proposed claims and noticing agent, and (f) any party in interest upon a request to the Debtors (email being sufficient) or to the Court that is reasonably related to these chapter 11 cases; *provided* that any

---

[3]     Bankruptcy Rule 1007(a)(1) requires a debtor to file "a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H[.]" Fed. R. Bankr. P. 1007(a)(1). Pursuant to Section F. Rule 14(a) of the Complex Case Procedures, the Debtors intend to file a single consolidated list (the "Consolidated Creditor Matrix") of their 30 largest unsecured creditors of all jointly administered Debtors (the "Top 30 Creditors List").

4914-1165-3282

receiving parties shall not transfer or otherwise provide such unredacted document to any person or entity that is not a party to the request and the receiving party shall agree that the unredacted version(s) of the documents will be maintained in strict confidence.  The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document.  Nothing requested herein is intended to preclude a party in interest's right to file a motion requesting that the Court unseal the information redacted by the Order.  The Debtors propose that Kroll undertake all service on any party whose identity and/or address is redacted pursuant to the Order.

## II.     Authorizing the Debtors to Redact Certain Personally Identifiable Information of Natural Persons Is Warranted.

15.     Section 107(c) of the Bankruptcy Code provides that the Court:

> [F]or cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
>
> (A) Any means of identification . . . contained in a paper filed, or to be filed, in a case under [the Bankruptcy Code].
>
> (B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1).

16.     Bankruptcy Local Rule 9037-1(b) further recognizes that "[c]ertain documents are routinely redacted to remove personal identifying information or other content that is not relevant to a decision by the Court."  This rule provides that: "[i]n those instances, (i) the document may be filed in redacted form only; (ii) no document should be filed that contains the redacted information; and (iii) the balance of this Rule 5003-1 [sic] does not apply."  Bankruptcy Local Rule 9037-1(b).

17.     In addition, privacy and data protection regulations have been enacted in the key jurisdictions in which the Debtors and their non-debtor affiliates do business.  For example, the

8

4914-1165-3282

state of Texas enacted the Texas Data Privacy and Security Act (the "TDPSA"),[4] which establishes privacy protection safeguards on companies that "conduct business in [Texas] or produce a product or service consumed by residents of [Texas]" and that collect, use, store, sell, share, analyze, or process consumers' personal data.  Tex. Bus. & Com. Code § 541.  "Personal data" generally means any information, including sensitive data, that is linked or reasonably linkable to an identified or identifiable individual.  *Id.*  Prohibitions include a company processing personal data without first obtaining a consumer's consent.  Tex. Bus. & Com. Code § 541.101.  In addition, the TDPSA gives Texas residents the right to, among other things, request that their collected personal data be deleted by entities subject to the regulation and opt out of the processing of their personal data for the purpose of its sale.  Tex. Bus. & Com. Code § 541.  Violators risk injunctions and civil penalties of up to $7,500 for *each* violation.  Tex. Bus. & Com. Code § 541.155.  The TDPSA applies to all for-profit entities that conduct business in Texas ("TDPSA Entities"), process consumers' personal data, and are not: (a) state agencies; (b) small businesses; (c) financial institutions; (d) certain utility providers; (e) universities; or (f) certain healthcare entities.  Tex. Bus. & Com. Code § 541.002.  The Debtors likely qualify as TDPSA Entities because Debtor

---

4    Many other states, including states in which the Debtors and their non-Debtor affiliates do business, have enacted similar privacy laws. *See also* the California Consumer Privacy Act of 2018 Cal. Civ. Code § 1798.155 (effective on Jan. 1, 2020), the Virginia Consumer Data Protection Act Va. Code §§ 59.1-575-59.1-585 (effective on Jan. 1, 2023), the Connecticut Act Concerning Personal Data Privacy and Online Monitoring, Public Act § 22-15 (effective on July 1, 2023), the Colorado Privacy Act, Colo. Rec. Stat. § 6-1 (effective on July 1, 2023), the Utah Consumer Privacy Act, Utah Code § 13-61 (effective on Dec. 31, 2023), the Florida Digital Bill of Rights, Fla. Stat. § 501.701 (effective on July 1, 2024), the Oregon Consumer Privacy Act, Or. Rev. Stat. § 1.13 (effective on Jan. 1, 2024), the Montana Consumer Data Privacy Act, Mont. Code Ann. § 35 (effective on Oct. 1, 2024), the Delaware Personal Data Privacy Act, Del. Code Ann. Tit. 6 § 12D-102 (effective on Jan. 1, 2025), the Iowa Data Privacy Law, Iowa Code § 715D.1 (effective on Jan. 1, 2025), the New Hampshire Privacy Law, N.H. Rev. Stat. § 507-H:1 (effective on Jan. 1, 2025), the Nebraska Data Privacy Act, Neb. Rev. Stat. §§ 87-1101 to 87-1130 (effective on Jan. 1, 2025), the New Jersey Data Privacy Act, N.J. Rev. Stat. § 56:1 (effective on Jan. 15, 2025), the Tennessee Information Protection Act, Tenn. Code Ann. § 47-18 (effective on July 1, 2025), the Minnesota Consumer Data Privacy Act, Min. Stat. Ann. § 325O (effective on July 31, 2025), the Maryland Online Data Privacy Act, Md. Commercial Law Code § 14-4701 (effective on Oct. 1, 2025), the Rhode Island Data Transparency and Privacy Protection Act, R.I. Gen. Laws § 6-48.1-1 (effective on Jan. 1, 2026), the Indiana Data Privacy Law, Ind. Code § 24-15 (effective on Jan. 1, 2026), and the Kentucky Consumer Data Protection Act, Ky. Rev. Stat. Ann. § 367.3611 (effective on Jan. 1, 2026).

4914-1165-3282

QVC San Antonio, LLC is organized in Texas, the Debtors transact with customers located in Texas, and the Debtors' annual gross profits for 2025 exceed $2.3 billion.

18.     Additionally, other key jurisdictions have privacy and data protection regulations that likely apply to the Debtors.  For example, the European General Data Protection Regulation (the "EU GDPR"), the United Kingdom Data Protection Act of 2018 and the United Kingdom General Data Protection Regulation (together, the "UK GDPR"), and similar laws in other jurisdictions impose significant constraints on the processing (which includes the transferring or disclosing) of information relating to identified or identifiable individuals (which includes names and home and email addresses of individuals and individual business contacts) (collectively, "Personal Data").[5]  Both the EU GDPR and the UK GDPR apply to the processing of Personal Data in the context of an establishment of a controller or processor in the European Economic Area of the United Kingdom, respectively, regardless of whether the processing takes place in the European Economic Area or the United Kingdom (and, in some circumstances, the EU GDPR and UK GDPR apply to organizations established in other countries when processing Personal Data relating to individuals located in the United Kingdom or European Economic Area).

19.     The EU GDPR and the UK GDPR require a legal basis for all processing (including the disclosure) of Personal Data.  The only possible legal basis that may apply for disclosing the Personal Data in this instance would be the "legitimate interests" ground.  *See* Article 6(1)(f) EU GDPR and UK GDPR.  The "legitimate interests" ground, however, can only be relied on as a legal basis if the processing is necessary to achieve the relevant purpose, and if the same result can reasonably be achieved in a less intrusive way, the legitimate interest basis no longer applies.  Nor can the legitimate interest assessment serve as a legal basis if the rights and freedoms of the

---

[5]    Other jurisdictions where the Debtors do business have similar data protection laws, with similar penalties, including Japan.  *See* Act on the Protection of Personal Information of Japan, Law No. 37 of 2021.

4914-1165-3282

relevant individuals override the legitimate interest in question.  EU and UK regulators take the position that if a person would not reasonably expect the processing, their interests are likely to override any legitimate interests.  *See id.*[6]  Moreover, the legal basis of "compliance with a legal obligation," Article 6(1)(c) EU GDPR and UK GDPR, would not be applicable here, because that legal basis is restricted to legal obligations under EU or UK law, and not foreign laws such as the Bankruptcy Code.

20.     In addition, processing (including disclosure) under the EU GDPR and the UK GDPR must comply with certain key principles, including the principle of data minimization, which requires that any processing must be necessary in relation to its purpose.  Disclosure of the unredacted names and home and email addresses (or other Personal Data) of individual creditors on the public docket is not necessary for the purpose of reviewing the claim amounts of individual creditors in connection with a plan of reorganization or administering the chapter 11 cases, and the proposed redaction would be a less intrusive way of achieving this purpose.  *See* Art. 5(1)(c) EU GDPR and UK GDPR.[7]  The right of individual creditors to not have their unredacted names and home and email addresses disclosed on the public docket would also override the legitimate interest of disclosing such information to facilitate these chapter 11 cases.

21.     Violations of the EU GDPR and the UK GDPR result in severe penalties.  If an organization is found to have processed information in breach of the EU GDPR, the organization may be fined up to the higher of €20,000,000 or 4 percent of worldwide annual turnover—*i.e.*, total annual revenues—of the preceding financial year.  *See* General Data Protection Regulation (EU)

---

[6]   *See also* Information Commissioner's Office, *Legitimate Interests*, https://ico.org.uk/for-organisations/uk-gdpr-guidance-and-resources/lawful-basis/a-guide-to-lawful-basis/lawful-basis-for-processing/legitimate-interests/ (last visited Oct. 30, 2024).

[7]   Article 5(1)(c) UK GDPR and EU GDPR ("Personal data shall be: . . . (c) adequate, relevant and limited to what is necessary in relation to the purposes for which they are processed ('data minimization').").

4914-1165-3282

2016/679, art. 83(5).[8]  Similarly, for a breach of the UK GDPR, the organization may be fined up to the higher of £17,500,000 or 4 percent of worldwide annual turnover—*i.e.*, total annual revenues—of the preceding financial year.  *See* United Kingdom Data Protection Act 2018, section 157(5)(a) (as amended by Data Protection, Privacy and Electronic Communications (Amendments etc.)) (EU Exit) Regulations 2019.  The EU GDPR and the UK GDPR apply to the Debtors, as, in the ordinary course of business, the Debtors, and their non-debtor subsidiaries and affiliates domiciled in the UK and EU, routinely process data relating to their creditors in connection with, among other things, employees, customers, and suppliers in member states of the European Economic Area or the United Kingdom.[9]

22.  Neither the EU GDPR nor the UK GDPR supersedes the Bankruptcy Code, but rather, the Debtors must meet their obligations under section 107(c) of the Bankruptcy Code in conjunction with respecting the EU GDPR and the UK GDPR.  Compliance with the EU GDPR and the UK GDPR is the only way the Debtors can ensure that privacy rights of the individuals subject to either of the regulations, and such individuals' reasonable expectations with respect to their privacy rights, are protected.  Section 107(c) of the Bankruptcy Code, by incorporating 18 U.S.C. § 1028(d), contemplates that courts may, for cause, protect an individual's identifying information (defining "means of identification" as "any name or number that may be used, alone, or in conjunction with any other information, to identify a specific individual.").

---

[8]  Indeed, on August 26, 2024, the Dutch Data Protection Authority fined Uber €290 million for transferring the personal data of European drivers to United States servers in violation of the EU GDPR.  *See Dutch DPA Imposes a Fine of 290 Million Euro on Uber Because of Transfers of Drivers' Data to the US*, Autoriteit Persoonsgegevens [Dutch Data Prot. Auth.] (Aug. 26, 2024), https://www.autoriteitpersoonsgegevens.nl/en/current/dutch-dpa-imposes-a-fine-of-290-million-euro-on-uber-because-of-transfers-of-drivers-data-to-the-us.  And, on May 12, 2023, the Data Protection Commission of Ireland fined Facebook (Meta Ireland) €1.2 billion for improperly transferring data to the United States under the EU GDPR.  *See In re Meta Platforms Ireland Ltd.*, Reference No. IN-20-8-1 (Ir. Data Prot. Comm'n May 12, 2023).

[9]  QVC's entities operating and domiciled in Japan must comply with similar Japanese data protection laws.  *See* Act on the Protection of Personal Information of Japan, Law No. 37 of 2021.

4914-1165-3282

18 U.S.C. § 1028(d)(7).  Thus, by redacting Personal Data on the public docket, the Debtors are complying with their obligations under the Bankruptcy Code, protecting individuals' interests and rights to privacy, and abiding by one of the foundational principles of the EU GDPR and the UK GDPR by opting for the least intrusive way to reasonably achieve the desired purpose.  *See* GDPR Art. 5(1)(c).[10]

23.     The Debtors therefore request authority to redact from any paper filed or to be filed with the Court in these chapter 11 cases, including, but not limited to, the Consolidated Creditor Matrix, the Top 30 Creditors List, the Schedules and Statements, proofs of claim, and any related affidavits of service, the names, home and email addresses, and other personally identifiable information of all natural persons—including the Debtors' current and former employees, customers, other creditors, and individual equity holders.  This relief is requested because (a) such personally identifiable information can be used to perpetrate identity theft[11] and phishing scams or to locate survivors of domestic violence, harassment, or stalking under section 107(c)(1) of the Bankruptcy Code and (b) disclosure of such personally identifiable information or personal data

---

[10]  Article 5(1)(c) UK GDPR and EU GDPR ("Personal data shall be: . . . (c) adequate, relevant and limited to what is necessary in relation to the purposes for which they are processed ('data minimisation').").

[11]  *See In re Endo Int'l PLC*, No. 22-22549 (JLG), 2022 WL 16640880, at *10–11, 12 (Bankr. S.D.N.Y. Nov. 2, 2022) (taking "judicial notice of the fact that identity theft is a world-wide problem," recognizing that the right of public access to judicial records "is not absolute," and authorizing the debtors to redact the names, home addresses, and e-mail addresses of certain litigation claimants located in the US, EU, UK, and Australia from any paper filed with that court and/or otherwise made publicly available by the debtors and the claims and noticing agent thereof); *see also In re FTX Trading Ltd.*, No. 23-682 (CFC), 2024 WL 4948827, at *11 (D. Del. Dec. 3, 2024) (affirming the bankruptcy court's ruling to permanently redact the names, home addresses, and email addresses of natural persons finding that "[t]hese millions of customers would, absent relief granted by the Bankruptcy Court, have their identities revealed without their consent (and in many cases without their knowledge)."); *In re Genesis Glob. Holdco, LLC*, 652 B.R. 618, 636 (Bankr. S.D.N.Y. 2023) (quoting *Endo* and finding that "[h]ome addresses fall within that category of information, as it is taken as a 'given' that they constitute personally identifiable information that is vital information to perpetrators of identity theft, stalking and intimate partner violence alike, and that publishing such information facilitates an identity thief's search for data and a stalker's or abuser's ability to find his or her target"). *Id.* at 635, 637.

4914-1165-3282

risks violating domestic and foreign data and privacy laws and regulations, thereby exposing the Debtors to potential civil liability and significant financial penalties.

24.     Redaction is necessary to protect information that would create an "undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c)(1).  The risk described in section 107(c)(1) of the Bankruptcy Code is real and not merely speculative.  In one chapter 11 case in Delaware, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address that was previously not publicly available, forcing the employee to change addresses again.[12]  More recently, in a chapter 11 case in the Southern District of New York, at least fifteen phishing scams have been publicized.[13]  These phishing incidents targeted individuals whose names were publicized in the creditor matrix, including one in which scammers modified a court order and sent it to individuals whose names were disclosed, two where scammers posed as associates of debtors' counsel using fake email accounts purportedly from debtors' counsel and requested that individual creditors reply with their account and other personal information, and many where scammers posed as the debtor's claims agent and requested the same information from individual creditors.  These scams took place even though the bankruptcy court authorized the redaction of creditor email addresses.  These events also suggest that disclosure of Personal Data would not satisfy a legitimate interest assessment and would not be compliant with the minimization principle under the EU GDPR and UK GDPR.

---

[12]   The incident, which took place during the first Charming Charlie chapter 11 case in 2017, is described in the "creditor matrix motion" filed in *Charming Charlie Holdings Inc.*, No. 19-11534 (CSS) [Docket No. 4] (Bankr. D. Del. July 11, 2019).

[13]   *See In re Celsius Network, LLC*, No. 22-10964 (MG) [Docket Nos. 1527, 1681, 1904, 1992, 2082, 2896, 3121, 3251, 3422, 3722, 3932, 4070, 4763, 7729, and 7886] (Bankr. S.D.N.Y. 2022).

4914-1165-3282

25.     Courts in this jurisdiction have granted the relief requested herein in comparable chapter 11 cases. *See, e.g., In re Nine Energy Serv., Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 3, 2026) (authorizing the debtors to redact and file under seal the names, email addresses, physical addresses, and telephone numbers of their customers from any filings with the Court or made publicly available in their chapter 11 cases); *In re Kleopatra Finco S.À R.L.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology, Inc.,* No. 25-90498 (APR) (Bankr. S.D. Tex. Sept. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (same); *In re Ascend Performance Materials Holdings Inc.*, No. 25-90127 (CML) (Bankr. S.D. Tex. Apr. 22, 2025) (same).[14]

26.     For these reasons, the Debtors submit that cause exists to authorize the Debtors to redact, pursuant to section 107(c)(1) of the Bankruptcy Code, and in compliance with applicable privacy or data protection laws and regulations, the names, home addresses, and email addresses of natural persons listed on the Consolidated Creditor Matrix, the Top 30 Creditors List, the Schedules and Statements, proofs of claim, any related affidavits of service, or any other document filed with the Court.   Absent such relief, the Debtors (a) may be in violation of applicable privacy or data protection laws, thereby exposing the Debtors to severe monetary penalties that could threaten the Debtors' operations during this sensitive stage of their restructuring, (b) would unnecessarily render individuals more susceptible to identity theft and phishing scams, and (c) could jeopardize the safety of individuals who, unbeknownst to the Debtors, are survivors of domestic violence, harassment, or stalking by publishing their home and email addresses without any advance notice or opportunity to opt out or take protective measures.

---

[14]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

4914-1165-3282

27. The Debtors propose to provide unredacted versions of the Consolidated Creditor Matrix, the Schedules and Statements, proofs of claim, any related affidavits of service, and any other filings redacted pursuant to the proposed order to (a) the Court, (b) the U.S. Trustee, (c) Davis Polk & Wardwell LLP and Porter Hedges LLP, as counsel to the QVC Noteholder Group, (d) counsel to any official committee appointed in these chapter 11 cases, (e) Kroll, and (f) any party in interest upon a request to the Debtors (email being sufficient) or to the Court that is reasonably related to these chapter 11 cases; *provided* that any receiving parties shall not transfer or otherwise provide such unredacted document to any person or entity that is not a party to the request and the receiving party shall agree that the unredacted version(s) of the documents will be maintained in strict confidence. The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document. Nothing requested herein is intended to preclude a party in interest's right to file a motion requesting that the Court unseal the information redacted by the Order. The Debtors propose that Kroll undertake all service on any party whose identity and/or address is redacted pursuant to the Order. The Debtors, through Kroll, will also distribute, as applicable, any notices that are received at the Debtors' corporate headquarters and that are intended for a current employee. Furthermore, to the extent notice and/or service by mail (as opposed to email) is required or requested, the Debtors will instruct Kroll to serve individuals at their home addresses, ensuring that each individual will receive the same notices in the chapter 11 cases as all other creditors without the unnecessary public disclosure of his or her home address.

## III. Waiver of the Requirement to File a List of, and Provide Notice Directly to, the Equity Security Holders Is Warranted Under the Circumstances of These Chapter 11 Cases.

28. The Bankruptcy Rules contain certain requirements with respect to a debtor's equity security holders. Bankruptcy Rule 1007(a)(3) requires a debtor to file, within fourteen (14) days after the petition date, a list of the debtor's equity security holders. Bankruptcy Rule 2002(d), in turn, requires that equity security holders be provided notice of, among other things, the

16

4914-1165-3282

commencement of the bankruptcy case and the confirmation hearing. Bankruptcy courts have authority to modify or waive the requirements under both rules. *See* Fed. R. Bankr. P. 1007(a)(3) ("[U]nless the court orders otherwise, a Chapter 11 debtor must . . . file a list of the debtor's equity security holders . . . ."); Fed. R. Bankr. P. 2002(d) ("[U]nless the court orders otherwise, in a Chapter 11 case the clerk or the court's designee must give notice . . . to the equity security holders . . . ."); *see also* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); Fed. R. Bankr. P. 9007 ("Unless these rules provide otherwise, when notice is to be given, the court must designate: (1) the deadline for giving it; (2) the entities to whom it must be given; and (3) the form and manner of giving it.").

29.     The requirements to file a list of, and to provide notice directly to, equity security holders should be waived as to Debtor QVCG. QVCG's common and preferred stock is publicly traded on the NASDAQ under the ticker symbols "QVCGA," "QVCGB," and "QVCGP." There are approximately 21 million shares of common stock outstanding as of the Petition Date, a significant amount of which cannot be readily traced to specific individual holders. QVCG must therefore obtain the names and addresses of its widely dispersed equity security holders from a securities agent. Preparing and submitting such a list with last-known addresses for each equity security holder and sending notices to all such parties would incur significant expense and an administrative burden with limited corresponding benefit to the estates or parties in interest.

30.     QVCG has taken, or will take, several actions to inform its equity security holders of the commencement of these chapter 11 cases. With its petition, QVCG filed a list of persons and entities which hold five percent or more of its outstanding common stock. On or about the Petition Date, QVCG will issue a press release and file an 8-K with the U.S. Securities and Exchange Commission announcing the chapter 11 filing.

4914-1165-3282

31.     For these reasons, the Debtors request that the Court waive the requirements to file a list of, and to provide notice directly to, QVCG's equity security holders, as courts in this jurisdiction have done in comparable chapter 11 cases.  *See, e.g., In re Nine Energy Serv., Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 3, 2026) (waiving the requirement that the debtors file a list of equity security holders pursuant to Bankruptcy Rule 1007(a)(3)); *In re Kleopatra Finco S.À R.L.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology, Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Sept. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.,* No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (same)*; In re Glob. Clean Energy Holdings, Inc.*, No. 25-90113 (ARP) (Bankr. S.D. Tex. Apr. 16, 2025) (same).

**IV.     Service of Required Notices to Creditors By Kroll Is Appropriate and Should Be Approved.**

32.     Bankruptcy Rule 2002(a) provides, in relevant part, that "the clerk or the court's designee must give the debtor, the trustee, all creditors, and all indenture trustees at least twenty-one (21) days' notice by mail of:  (1) the meeting of creditors under § 341 or § 1104(b) [of the Bankruptcy Code]. . . ."  Fed. R. Bankr. P. 2002(a).  Subsection (f) of that rule provides that notice of the order for relief shall be sent to all creditors.  *See* Fed. R. Bankr. P. 2002(f).

33.     The Debtors propose that Kroll undertake all mailings and email service, as applicable, directed by the Court or the U.S. Trustee or as required in section 342(a) of the Bankruptcy Code or Bankruptcy Rule 2002(a) and (f), including, when applicable, serving the Combined Hearing Notice (as defined in the Disclosure Statement Scheduling Motion) on all parties listed on the Consolidated Creditor Matrix.[15]  Service of the Combined Hearing Notice will

---

[15]  The "Disclosure Statement Scheduling Motion" means the *Debtors' Emergency Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing a Plan Voting Deadline, Opt-Out / Opt-In Deadline, and Plan And Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Combined Hearing Notice, (V) Waiving the Requirements for the U.S. Trustee to Convene a Meeting of Creditors, (VI) Waiving the Requirements for the Debtors to File (A) Schedules and Sofas and (B) Rule 2015.3 Financial Reports, and*
(Continued)

18

4914-1165-3282

prevent the Debtors' estates from incurring unnecessary costs associated with serving multiple notices to the parties listed on the Debtors' voluminous Consolidated Creditor Matrix and will sufficiently advise such parties of the commencement of these chapter 11 cases and of the meeting of creditors under section 341 of the Bankruptcy Code.

34.     The Debtors believe that using Kroll to promptly provide notices to all applicable parties will maximize efficiency in administering these chapter 11 cases and will ease administrative burdens that would otherwise fall upon the Court, the Clerk of the Court, or the U.S. Trustee.  Additionally, Kroll will assist the Debtors in preparing creditor lists and mailing or emailing initial notices and other notices in these chapter 11 cases.  Therefore, it is more efficient to authorize Kroll to undertake the mailing or email service, as applicable, of the Combined Hearing Notice of these chapter 11 cases and other notices to be served in these chapter 11 cases. Accordingly, the Court should authorize Kroll to undertake such mailings and email service, as courts in this jurisdiction have done in other comparable chapter 11 cases.  *See, e.g., In re Nine Energy Serv., Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 3, 2026) (authorizing the debtors' claims and noticing agent to notify creditors of the commencement of the chapter 11 cases and other information); *In re Kleopatra Finco S.À R.L.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology, Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Sept. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.*, No. 25-90160 (ARP) (Bankr. S.D. Tex. June 9, 2025) (same); *In re Ascend Performance Materials Holdings Inc.*, No. 25-90127 (CML) (Bankr. S.D. Tex. Apr. 22, 2025) (same).

35.     The Debtors further request authority to distribute notices in these chapter 11 cases to parties in interest via email in lieu of mailing.  Although the Bankruptcy Rules generally require

---

*(VII) Granting Related Relief.*

4914-1165-3282

notices to be served on creditors at their addresses, they give significant latitude to bankruptcy courts for modifying the general rule. *See* Fed. R. Bankr. P. 2002(m) and 9007. Bankruptcy courts have explicit authority to modify the manner in which notice is given. Fed. R. Bankr. P. 2002(m). Here, serving notices by traditional mail is cost-prohibitive given the size of the Debtors' creditor matrix and estate resources available to fund these chapter 11 cases. Specifically, as of the Petition Date, the Debtors have approximately 10.3 million customers. Serving notices by traditional mail would drain a material amount of the Debtors' available cash at a time when such funds could instead be used to support the Debtors' restructuring efforts. In addition, email service will be more effective and will help alleviate administrative burdens. Further, the Debtors do not maintain records of mailing addresses for many parties in interest, and email is the primary channel through which the Debtors' creditors and customers exchange messages with the Debtors. Where a party has frequently communicated by email, courts have held that serving such party by email comports with the requirements of due process. *See Rio Props. Inc.,* 284 F.3d 1007, 1018 (9th Cir. 2002) (holding that when a party has "embraced" email as a method of communication, serving such party by email is appropriate). Accordingly, the Debtors request authority to serve all required notice (and other documents) by email. In the event the Debtors do not have an email address for a party in interest, the Debtors will proceed with mailing in lieu of email.

36.    In other large chapter 11 cases, courts in this district have allowed debtors to distribute notices to parties in interest via email in lieu of mailing. *See, e.g.*, *In re Nine Energy Serv., Inc.*, No. 26-90295 (CML) (Bankr. S.D. Tex. Feb. 3, 2026) (authorizing the debtors to distribute notices to parties in interest via email in lieu of mail); *In re Kleopatra Finco S.À R.L.*, No. 25-90642 (CML) (Bankr. S.D. Tex. Nov. 5, 2025) (same); *In re Anthology, Inc.*, No. 25-90498 (ARP) (Bankr. S.D. Tex. Sept. 30, 2025) (same); *In re Sunnova Energy Int'l Inc.*, No. 25-90160

4914-1165-3282

(ARP) (Bankr. S.D. Tex. June 9, 2025) (same); *In re Ascend Performance Materials Holdings Inc.*, No. 25-90127 (CML) (Bankr. S.D. Tex. Apr. 22, 2025) (same).[16]

## Emergency Consideration

37.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1 and section G of the Complex Case Procedures.  This Motion requests relief from procedural rules and requirements that pertain to matters of immediate significance or which involve deadlines sooner than twenty-one days after the commencement of these chapter 11 cases.  The relief will save costs and avoid undue administrative burden and confusion only if granted immediately.  The Debtors therefore request that the Court approve the relief requested in this Motion on an emergency basis.

## Notice

38.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Davis Polk & Wardwell LLP and Porter Hedges LLP, as counsel to the QVC Noteholder Group; (d) the Consenting LINTA Noteholders; (e) the Consenting RCF Lenders; (f) the United States Attorney's Office for the Southern District of Texas;  (g) the  Internal  Revenue  Service;  (h) the  United  States  Securities  and  Exchange Commission; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

---

16   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

4914-1165-3282

The Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  April 17, 2026

/s/  Jason S. Brookner

**GRAY REED**
Jason S. Brookner (TX Bar No. 24033684)
Lydia R. Webb (TX Bar No. 24083758)
Emily F. Shanks (TX Bar No. 24110350)
1300 Post Oak Blvd.
Suite 2000
Houston, Texas 77056
Telephone:      (713) 986-7000
Facsimile:      (713) 986-7100
Email:          jbrookner@grayreed.com
                lwebb@grayreed.com
                eshanks@grayreed.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Aparna Yenamandra, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                aparna.yenamandra@kirkland.com

- and -

Chad J. Husnick, P.C. (*pro hac vice* pending)
Gabriela Zamfir Hensley (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          chad.husnick@kirkland.com
                gabriela.hensley@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

4914-1165-3282

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Jason S. Brookner*

Jason S. Brookner

## **Certificate of Service**

I certify that on April 17, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jason S. Brookner*

Jason S. Brookner

4914-1165-3282