United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 17, 2026

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| QVC GROUP, INC., *et al.*,[1] | ) ) ) | Case No. 26-90447 (ARP) |
| Debtors. | ) ) ) ) ) | (Jointly Administered) |

**ORDER (I) SCHEDULING
A COMBINED DISCLOSURE STATEMENT
AND PLAN CONFIRMATION HEARING, (II) APPROVING
THE SOLICITATION PROCEDURES, (III) APPROVING THE
DEADLINES AND NOTICES RELATED THERETO; (IV) WAIVING CERTAIN
REQUIREMENTS IN CONNECTION THEREWITH, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) scheduling the Combined Hearing; (b) establishing the Confirmation Schedule and related procedures; (c) approving the form and manner of the Combined Hearing Notice; (d) approving the Solicitation Procedures; (e) waiving the requirement to mail Solicitation Packages to the Non-Voting Classes; (f) allowing the notice period for the Disclosure Statement and the Combined Hearing to run simultaneously; (g) directing the U.S. Trustee to not convene a Creditors' Meeting and conditionally waiving (1) such Creditors' Meeting and (2) the deadline to file Schedules and SOFAs and Rule 2015.3 Financial Reports; and (h) granting related relief, all as more fully set forth in the Motion; and

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC. The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

[2]   Capitalized terms used and not defined herein have the meanings ascribed to them in the Motion, the Plan, or the Disclosure Statement, as applicable.

upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter this Order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.　　　Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

2.　　　The following Confirmation Schedule is hereby approved (subject to modification as necessary):

| Event | Date |
| --- | --- |
| Voting Record Date | April 13, 2026 |
| Solicitation Launch Date | April 16, 2026 |
| Petition Date | April 16, 2026 |
| Initial Plan Supplement Deadline | May 11, 2026, at 4:00 p.m., prevailing Central Time |
| Voting Deadline<br>Opt-Out / Opt-In Deadline | May 19, 2026, at 11:59 p.m., prevailing Central Time |
| Objection Deadline | May 19, 2026, at 11:59 p.m., prevailing Central Time |
| Deadline to File Confirmation Brief, Reply, and Voting Report | 4 days before the Combined Hearing |
| Combined Hearing | May 26, 2026, or such other date as the Court may direct |
| Occurrence of Effective Date | June 8, 2026, or as soon as practicable thereafter |

3.      The Combined Hearing, at which time this Court will consider, among other things, final approval of the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on **May 26, 2026 at 9:00 a.m., prevailing Central Time**.  The Combined Hearing may be continued from time to time by the Court, without further notice, other than adjournments announced in open court or in the filing of a notice of reset hearing in these chapter 11 cases. The adjourned date or dates will be available on the electronic case filing docket and the Claims and Noticing Agent's website at: https://restructuring.ra.kroll.com/QVC.

4.      The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims, Holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

5.      Any objections to adequacy of the Disclosure Statement and confirmation of the Plan must be filed on or before **May 19, 2026 at 11:59 p.m., prevailing Central Time**.

6.      Any objections to the Disclosure Statement or confirmation of the Plan must:

a.      be in writing;

b.　　comply with the Bankruptcy Rules and the Bankruptcy Local Rules;

c.　　state the name of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity;

d.　　state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

e.　　be filed with this Court with proof of service thereof and served upon the Notice Parties (email being sufficient) by the Objection Deadline.

7.　　Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled or deemed to have been withdrawn.

8.　　If a Termination Date (as defined in the RSA) occurs other than as a result of the occurrence of the Effective Date, then any vote in support of the Plan by any Consenting Stakeholder (as defined in the RSA) subject to such termination shall be treated in accordance with the terms of the RSA.

9.　　The Combined Hearing Notice, a copy of which is attached hereto as **Exhibit 1**, the Publication Notice, a copy of which is attached hereto as **Exhibit 2**, and the Notice of Non-Voting Status (including the Opt-Out Form and the Opt-In Form, as applicable), copies of which are attached hereto as **Exhibit 4A** and **Exhibit 4B**, and service thereof, comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Case Procedures and are approved and deemed to be sufficient and appropriate under the circumstances.

10.　　The Voting Record Date and the Voting Deadline are hereby approved.

11.　　The Solicitation Packages and the Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages, as set forth in the Motion, in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including any

applicable registration requirements and exemptions therefrom under the Securities Act, are approved. The Solicitation Packages provide the Holders of Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with the Bankruptcy Code, Bankruptcy Rules and the Bankruptcy Local Rules. Service of the Solicitation Packages shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Local Rules.

12. Upon the entry of this Order, the Debtors are authorized to begin solicitation of the Non-Eligible Holders (and continue their solicitation of Eligible Holders) as set forth in the Motion.

13. The Debtors are authorized to cause the Publication Notice to be published in *The New York Times* (national and international editions) as soon as reasonably practicable and to make reasonable payments required for such publication. The Publication Notice, together with the Combined Hearing Notice provided for in the Motion, is deemed to be sufficient and appropriate under the circumstances.

14. The Ballots, substantially in the forms attached hereto as **Exhibit 3A**, **Exhibit 3B**, **Exhibit 3C**, **Exhibit 3D**, and **Exhibit 3E**, are approved.

15. The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballots are approved.

16. The U.S. Trustee may convene a Creditors Meeting pursuant to section 341(e) of the Bankruptcy Code only if the Plan is not confirmed within the first 64 days, without prejudice to the Debtors' right to request further extensions thereof; *provided* that such waiver period may be extended by mutual agreement of the Debtors and the U.S. Trustee without further Court order.

17.     The Debtors or their Claims and Noticing Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots, which determination will be final and binding on all parties, unless otherwise ordered by the Court.

18.     The Claims and Noticing Agent may, but is not required to, contact parties who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies; *provided*, *however*, that neither the Debtors nor the Claims and Noticing Agent need provide notification relating to Ballot defects or irregularities, nor be liable for failure to provide such notification.

19.     If any solicitation materials are undeliverable, the Debtors and their Claims and Noticing Agent are excused from any duty to mail further endeavor to deliver any solicitation materials.   The Debtors and their Claims and Noticing Agent are not required to conduct independent searches (outside the Debtors' books and records as of the Voting Record Date) nor any further acts to attempt to deliver any solicitation materials to undeliverable addresses, unless the Debtors are affirmatively provided with serviceable addresses prior to the Voting Record Date.

20.     The requirement that (a) the Debtors file the Rule 2015.3 Reports, Schedules, and SOFAs and (b) the U.S. Trustee convene a Creditors' Meeting, shall be waived without prejudice to the Debtors' right to request further extensions thereof–unless the Debtors fail to confirm a Plan within 64 days of the Petition Date; *provided* that such waiver period may be extended, without further order, by agreement between the Debtors and the U.S. Trustee.

21.     The notice and objection procedures set forth in this Order and the Motion constitute good and sufficient notice, without need for further notice or order, of the Confirmation Schedule—including the soliciting, balloting, and noticing procedures, applicable voting,

6

objection, and other deadlines and related hearings, the Combined Hearing, the prepetition launch of solicitation, subsequent commencement of these chapter 11 cases, and the procedures regarding approval of the adequacy of the Disclosure Statement, and confirmation of the Plan.

22.     The Debtors are authorized to make non-substantive changes to the solicitation materials, including the Disclosure Statement, Plan, the Solicitation Packages, Notice of Non-Voting Status and Opt-Out Form, Opt-In Form, Ballot, Publication Notice, Combined Notice, and related documents without further order of the Bankruptcy Court, including typographical and grammatical error corrections (if any) and conforming changes to the Disclosure Statement, the Plan, or any other solicitation materials.

23.     The Debtors are not required to mail Solicitation Packages or copies of the Plan or the Disclosure Statement to Holders of Claims in the Unimpaired Non-Voting Classes or Impaired Non-Voting Classes.  In accordance with Bankruptcy Rule 3017(d), the Debtors shall serve, or cause to be served to the Holders of Claims and Interests in the Unimpaired Non-Voting Classes and Impaired Non-Voting Classes, a notice substantially in the form of **Exhibit 4A** or **Exhibit 4B**, respectively, attached hereto (the "Notice of Non-Voting Status") together with the related Opt-Out Form or Opt-In Form (as applicable), in lieu of Solicitation Packages.

24.     The Claims and Noticing Agent will retain all paper copies of Ballots and solicitation-related correspondence for one year following the Effective Date, whereupon, any retained solicitation materials may be destroyed or otherwise disposed of—unless previously directed otherwise by the Debtors or the Clerk of the Court in writing—including, paper copies of Ballots, printed and digital solicitation materials, or correspondence (whether or not deliverable).

25.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

26. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

27. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Case Procedures are satisfied by such notice.

28. Notwithstanding any Bankruptcy Rule to the contrary, this Order is immediately effective and enforceable upon its entry.

29. The Debtors and their Claims and Noticing Agent are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

30. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: April 17, 2026

_____
Alfredo R Pérez
United States Bankruptcy Judge

**Exhibit 1**

**Combined Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| QVC GROUP, INC., *et al.*,[1] | ) | Case No. 26-90447 (ARP) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) COMMENCEMENT OF
PREPACKAGED CHAPTER 11 BANKRUPTCY
CASES; (II) HEARING APPROVING THE DISCLOSURE
STATEMENT, CONFIRMING THE JOINT PREPACKAGED CHAPTER 11
PLAN, AND RELATED MATTERS; AND (III) OBJECTION DEADLINES
AND SUMMARY OF THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

On April 16, 2026 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") commenced filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). Contemporaneously therewith, the Debtors filed the *Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan") and the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.[2]

**YOU ARE ADVISED TO CAREFULLY REVIEW THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS THEREIN, AS YOUR RIGHTS MAY BE AFFECTED.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC. The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

Copies of the Plan, the Disclosure Statement, and any other publicly-filed documents in the Chapter 11 Cases are available free of charge, as applicable, by: (a) visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/QVC; (b) emailing QVCInfo@ra.kroll.com (with "QVC—Solicitation Inquiries" in the subject line); or (c) calling the Claims and Noticing Agent at (888) 575-5337 (USA or Canada, toll-free) or +1 (347) 292-4386 (International, toll). You may also obtain copies of any pleadings filed in the Chapter 11 Cases via PACER at https://www.pacer.gov (for a fee). The Plan is a "prepackaged" plan of reorganization. The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, and additional costs, and, ultimately, would jeopardize recoveries for Holders of Allowed Claims.

**CRITICAL INFORMATION REGARDING RELEASE PROVISIONS IN THE PLAN**

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. ACCORDINGLY, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE IT MIGHT AFFECT YOUR RIGHTS.**

**IF YOU ARE A HOLDER OF A CLAIM AND/OR INTEREST IN A NON-VOTING CLASS PRESUMED TO ACCEPT THE PLAN AND DO NOT (A) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.C OR VIII.D OF THE PLAN OR (B) TIMELY FILE AN OBJECTION TO SUCH RELEASES (WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES) THAT IS UNRESOLVED AT CONFIRMATION, YOU WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL OF YOUR CLAIMS, INTERESTS, AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**

**IF YOU ARE A HOLDER OF A CLAIM AND/OR INTEREST IN A NON-VOTING CLASS DEEMED TO REJECT THE PLAN AND WISH TO PARTICIPATE IN THE RELEASES CONTAINED IN ARTICLE VIII.C OR VIII.D OF THE PLAN YOU MAY ELECT TO OPT IN TO SUCH RELEASES.**

**THE RELEASE, EXCULPATION, INJUNCTION, AND DISCHARGE PROVISIONS AND RELATED DEFINITIONS CONTAINED IN THE PLAN ARE INCLUDED IN THIS NOTICE.**

**Hearing on Confirmation of the Plan and the Adequacy of the Disclosure Statement**

A hearing (the "Combined Hearing") will be held before the Honorable Judge Perez, United States Bankruptcy Judge, in Courtroom 400 of the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on **May 26, 2026, at [TIME], prevailing Central Time** to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by

such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

<b><u>Information Regarding the Plan</u></b>

**Voting Record Dates**.  The voting record date was **April 13, 2026**, which was the date used for determining which Holders of RCF Claims in Class B3, QVC Notes Claims in Class B4, and LINTA Notes Claims in Class C3, were entitled to vote on the Plan.

**Objections to the Plan**.  The deadline for filing objections to the Plan or the Disclosure Statement (each, an "Objection") is **May 19, 2026, at 11:59 p.m., prevailing Central Time** (the "Objection Deadline").  Any Objection must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Bankruptcy Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

Objections must be filed with the Bankruptcy Court and served so as to be **actually received** by the Objection Deadline by those parties who have filed a notice of appearance in the Debtors' Chapter 11 Cases as well as the following parties (collectively, the "Notice Parties"):

| | |
|---|---|
| **Debtors** | **QVC Group, Inc.**<br>1200 Wilson Drive<br>West Chester, Pennsylvania 19380<br>Attention:  Bill Wafford, Chief Administrative Officer and Chief Financial Officer<br>Eve DelSoldo, Vice President and General Counsel<br>Email address: bill.wafford@qvcgrp.com, eve.delsoldo@qvc.com |
| **Proposed Counsel to the Debtors** | **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Joshua A. Sussberg, P.C.<br>Aparna Yenamandra, P.C.<br>Email address:  joshua.sussberg@kirkland.com<br>aparna.yenamandra@kirkland.com |

- and -

3

**Kirkland & Ellis LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Attention:        Chad J. Husnick, P.C.
                  Gabriela Zamfir Hensley
Email address:    chad.husnick@kirkland.com
                  gabriela.hensley@kirkland.com


- and -

**Gray Reed**
1300 Post Oak Boulevard, Suite 1200
Houston, Texas 77056
Attention:        Jason S. Brookner
                  Lydia R. Webb
Email address:    jbrookner@grayreed.com
                  lwebb@grayreed.com

| | |
|---|---|
| **Counsel to the RCF Lender Group** | Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Attention:        Nicholas Baker<br>                  Zachary Weiner<br>Email address:    NBaker@stblaw.com<br>                  zachary.weiner@stblaw.com |
| **Counsel to the QVC Noteholder Group** | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attention:        Damian S. Schaible<br>                  Angela M. Libby<br>                  Aryeh Ethan Falk<br>Email address:    damian.schaible@davispolk.com<br>                  angela.libby@davispolk.com<br>                  aryeh.falk@davispolk.com |
| **Counsel to the LINTA Noteholder Group** | Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, New York 10036<br>Attention:        Philip C. Dublin<br>                  Brad M. Kahn<br>Email address:    pdublin@akingump.com<br>                  bkahn@akingump.com |

4

| United States Trustee | **Office of the United States Trustee for the Southern District of Texas** |
|---|---|
| | 515 Rusk Street, Suite 3516 |
| | Houston, Texas 77002 |
| | Attention:  Jana Whitworth |

**IF AN OBJECTION IS NOT TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL <u>NOT</u> BE CONSIDERED BY THE BANKRUPTCY COURT.**

### Summary of Plan Treatment

The following chart summarizes the treatment provided by the Plan to each class of Claims against and Interests in the Debtors and indicates the voting status of each class.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to in writing by the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders, and the Holder of such Allowed Claim or Allowed Interest, as applicable, or unless such Allowed Claim or Allowed Interest has been paid, released, or otherwise satisfied prior to the Effective Date.

| QVCG | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class A1 | Other Secured Claims against QVCG | Each Holder of an Allowed Other Secured Claim against QVCG shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Secured Claim, as determined by the applicable Debtors:<br><br>(i)      payment in full in Cash; or<br>(ii)     such other treatment rendering such Allowed Other Secured Claim Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class A2 | Other Priority Claims against QVCG | Each Holder of an Allowed Other Priority Claim against QVCG shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Priority Claim, treatment in a manner consistent with section 1129(a) of the Bankruptcy Code. | Not Entitled to Vote (Presumed to Accept) |

| QVCG | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class A3 | General Unsecured Claims against QVCG | Each Holder of an Allowed General Unsecured Claim against QVCG shall receive, in full and final satisfaction, settlement, release, and discharge of such General Unsecured Claim, as determined by the applicable Debtors:<br>(i) payment in full in Cash on the later of (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to, or the agreement governing, such Allowed General Unsecured Claim against QVCG; or<br>(ii) such other treatment rendering such Allowed General Unsecured Claim Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class A4 | QVC-QVCG Settlement Claim | QVC shall receive, in full and final satisfaction, settlement, release, and discharge of the QVC-QVCG Settlement Claim:<br>(i) all QVCG Distributable Cash; or<br>(ii) such other treatment otherwise addressed at the option of the Debtors, and acceptable to such Holders of QVC-QVCG Settlement Claims, the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders rendering such QVC-QVCG Settlement Claims Unimpaired, and in each case as set forth in the Restructuring Steps Plan. | Not Entitled to Vote |
| Class A5 | Other Intercompany Claims against QVCG | Each Other Intercompany Claim against QVCG shall be, in full and final satisfaction, settlement, release, and discharge of such Other Intercompany Claim, as determined by the applicable Debtors, with the consent of the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders:<br><br>(i) Reinstated;<br>(ii) set off, settled, discharged, contributed, cancelled, converted to equity;<br>(iii) released without any distribution on account of such Allowed Intercompany Claim; or<br>(iv) otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan. | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class A6 | QVCG Preferred Equity Interests | The QVCG Preferred Equity Interests shall be cancelled, released, discharged, extinguished, and of no further force or effect, and such Holders shall not receive any distribution, property, or other value under the Plan on account of such QVCG Preferred Equity Interests. | Not Entitled to Vote (Deemed to Reject) |

| QVCG | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class A7 | QVCG Common Equity Interests | The QVCG Common Equity Interests shall be cancelled, released, discharged, extinguished, and of no further force or effect, and such Holders shall not receive any distribution, property, or other value under the Plan on account of such QVCG Common Equity Interests. | Not Entitled to Vote (Deemed to Reject) |
| Class A8 | Section 510(b) Claims against QVCG | On the Effective Date, each Section 510(b) Claim against QVCG shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

| QVC DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class B1 | Other Secured Claims against the QVC Debtors | Each Holder of an Allowed Other Secured Claim against a QVC Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Secured Claim, as determined by the applicable Debtors: <br><br>(i) payment in full in Cash; <br>(ii) the collateral securing its Allowed Other Secured Claim; <br>(iii) Reinstatement of its Allowed Other Secured Claim; or <br>(iv) such other treatment acceptable to the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders rendering such Allowed Other Secured Claim Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class B2 | Other Priority Claims against the QVC Debtors | Each Holder of an Allowed Other Priority Claim against a QVC Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Priority Claim, treatment in a manner consistent with section 1129(a) of the Bankruptcy Code. | Not Entitled to Vote (Presumed to Accept) |
| Class B3 | RCF Claims against the QVC Debtors | (1) Each Holder of an Allowed RCF Claim shall receive, in full and final satisfaction, settlement, release, and discharge of (a) such portion of its RCF Claim comprising RCF Loan Claims, its Pro Rata share (taking into account Claims in Class B4) of the QVC Funded Debt Plan Consideration and (b) such portion of its RCF Claim comprising RCF Letter of Credit Claims, Cash equal to the full amount of its RCF Letter of Credit Claim; provided that any RCF Letter of Credit that remains undrawn and outstanding as of the Effective Date shall be either (x) rolled into the Exit ABL Facility and granted liens pursuant to the Exit ABL Facility on terms acceptable to the Required Consenting RCF Lenders and the applicable issuing bank, (y) cancelled or returned undrawn to the applicable issuing bank, or (z) cash collateralized or otherwise backstopped in a manner reasonably | Entitled to Vote |

7

| QVC DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| | | satisfactory to the applicable issuing bank, in each case, on or prior to the Effective Date; and<br><br>(2) the QVC Debtors or the Reorganized QVC Debtors, as applicable, shall pay in full in Cash all RCF Agent Fees. | |
| Class B4 | QVC Notes Claims against the QVC Debtors | (1) Each Holder of an Allowed QVC Notes Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such QVC Notes Claim, its Pro Rata share (taking into account Claims in Class B3) of the QVC Funded Debt Plan Consideration; and<br>(2) the QVC Debtors or the Reorganized QVC Debtors, as applicable, shall pay in full in Cash all QVC Notes Trustee Fees. | Entitled to Vote |
| Class B5 | General Unsecured Claims against the QVC Debtors | Each Holder of an Allowed General Unsecured Claim against a QVC Debtor shall, in full and final satisfaction, settlement, release, and discharge of such General Unsecured Claim, as determined by the applicable Debtors:<br>(i)    payment in full in Cash on the later of (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to, or the agreement governing, such Allowed General Unsecured Claim against the QVC Debtors;<br>(ii)    Reinstated; or<br>(iii)    receive such other treatment acceptable to the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders rendering such Allowed General Unsecured Claim Unimpaired. | Not Entitled to Vote (Presumed to Accept) |

| QVC DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class B6 | Intercompany Claims against the QVC Debtors | After giving effect to the Intercompany Settlement set forth herein, each other Intercompany Claim against a QVC Debtor shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Claim, as determined by the applicable Debtors with the consent of the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders:<br><br>(i)    Reinstated;<br>(ii)    set off, settled, discharged, contributed, cancelled, converted to equity;<br>(iii)    released without any distribution on account of such Allowed Intercompany Claim; or<br>(iv)    otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan. | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class B7 | Intercompany Interests in the QVC Debtors | Each Allowed Intercompany Interest in a QVC Debtors shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Interests, as determined by the applicable Debtors:<br><br>(i)    Reinstated;<br>(ii)    set off, settled, discharged, contributed, cancelled;<br>(iii)    released without any distribution on account of such Allowed Intercompany Claim; or<br>(iv)    otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan.<br><br>*provided*, that, for the avoidance of doubt, any direct or indirect Interests held by any LINTA Debtor in any QVC Debtor shall be cancelled, released, discharged, and extinguished and will be of no further force or effect. | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class B8 | Section 510(b) Claims against the QVC Debtors | On the Effective Date, each Section 510(b) Claim against a QVC Debtor shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

9

| LINTA DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class C1 | Other Secured Claims against the LINTA Debtors | Each Holder of an Allowed Other Secured Claim against a LINTA Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Secured Claim, as determined by the applicable Debtors, with the consent of the LINTA Noteholder Group:<br><br>(i)   payment in full in Cash; or<br>(ii)   such other treatment acceptable to the Required Consenting Stakeholders rendering its Allowed Other Secured Claim Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class C2 | Other Priority Claims against the LINTA Debtors | Each Holder of an Allowed Other Priority Claim against a LINTA Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Priority Claim, treatment in a manner consistent with section 1129(a) of the Bankruptcy Code, with the consent of the LINTA Noteholder Group. | Not Entitled to Vote (Presumed to Accept) |
| Class C3 | LINTA Notes Claims | Each Holder of an Allowed LINTA Notes Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such LINTA Notes Claim, its Pro Rata share of the LINTA Distributable Cash. | Entitled to Vote |
| Class C4 | General Unsecured Claims against the LINTA Debtors | Each Holder of an Allowed General Unsecured Claim against a LINTA Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such General Unsecured Claim, as determined by the applicable Debtors:<br><br>(i)   payment in full in Cash on the later of (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to, or the agreement governing, such Allowed General Unsecured Claim against the LINTA Debtors; or<br>(ii)   such other treatment acceptable to the Required Consenting Stakeholders rendering such General Unsecured Claims Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class C5 | Intercompany Claims against the LINTA Debtors | After giving effect to the Intercompany Settlement set forth herein, each Other Intercompany Claim against a LINTA Debtor shall be, in full and final satisfaction, settlement, release, and discharge of such Other Intercompany Claim, as determined by the applicable Debtors, with the consent of the | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |

10

| LINTA DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| | | Required Consenting Stakeholders:<br>(i)   Reinstated;<br>(ii)   set off, settled, discharged, contributed, cancelled, converted to equity;<br>(iii)   released without any distribution on account of such Allowed Other Intercompany Claim; or<br>(iv)   otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan; provided that in no event shall Class C5 receive any Cash from the LINTA Debtors. | |
| Class C6 | Intercompany Interests in the LINTA Debtors | Each Allowed Intercompany Interest in a LINTA Debtor shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Interests, as determined by the applicable Debtors:<br>(i)   Reinstated;<br>(ii)   set off, settled, discharged, contributed, cancelled;<br>(iii)   released without any distribution on account of such Allowed Intercompany Interest; or<br>(i)   otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan. | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class C7 | Section 510(b) Claims against the LINTA Debtors | On the Effective Date, each Section 510(b) Claim against a LINTA Debtor shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

| CBI DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class D1 | Other Secured Claims against the CBI Debtors | Each Holder of an Allowed Other Secured Claim against the CBI Debtors shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Secured Claim, as determined by the applicable Debtors:<br>(i)   payment in full in Cash;<br>(ii)   the collateral securing its Allowed Other Secured Claim;<br>(iii)   Reinstatement of its Allowed Other Secured Claim; or<br>(i)   such other treatment acceptable to the Required Consenting QVC Noteholders and the Required Consenting RCF | Not Entitled to Vote (Presumed to Accept) |

| CBI DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| | | Lenders rendering its Allowed Other Secured Claim Unimpaired. | |
| Class D2 | Other Priority Claims against the CBI Debtors | Each Holder of an Allowed Other Priority Claim against the CBI Debtors shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Priority Claim, treatment in a manner consistent with section 1129(a) of the Bankruptcy Code. | Not Entitled to Vote (Presumed to Accept) |
| Class D3 | General Unsecured Claims against the CBI Debtors | Each Holder of an Allowed General Unsecured Claim against the CBI Debtors shall, in full and final satisfaction, settlement, release, and discharge of such General Unsecured Claim, as determined by the applicable Debtors:<br><br>(i) payment in full in Cash on the later of (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to, or the agreement governing, such Allowed General Unsecured Claim against the CBI Debtors;<br>(ii) Reinstated; or<br>(iii) receive such other treatment acceptable to the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders rendering such General Unsecured Claims Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class D4 | Intercompany Claims against the CBI Debtors | After giving effect to the Intercompany Settlement set forth herein, each other Intercompany Claim against the CBI Debtors shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Claim, as determined by the applicable Debtors with the consent of the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders:<br><br>(i) Reinstated;<br>(ii) set off, settled, discharged, contributed, cancelled, converted to equity;<br>(iii) released without any distribution on account of such Allowed Intercompany Claim; or<br>(iv) otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan. | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class D5 | Intercompany Interests in the CBI Debtors | Each Allowed Intercompany Interest in a CBI Debtor shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Interest, as determined by the applicable Debtors:<br><br>(i) Reinstated;<br>(ii) set off, settled, discharged, contributed, cancelled; | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |

12

| CBI DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| | | (iii) released without any distribution on account of such Allowed Intercompany Interest; or <br> (iv) otherwise addressed at the option of the Debtors, with the consent of the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders in each case as set forth in the Restructuring Steps Plan. | |
| Class D6 | Section 510(b) Claims against the CBI Debtors | On the Effective Date, each Section 510(b) Claim against the CBI Debtors shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

## Discharge, Injunctions, Exculpation, and Releases

Please be advised that the Plan contains certain release, exculpation, discharge, and injunction provisions as follows:

## Relevant Definitions

"**Exculpated Parties**" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; and (b) the Disinterested Directors.

"**Related Party**" means, collectively, with respect to any Entity, each of, and in each case solely in its capacity as such, (a) such Entity's current and former Affiliates and (b) such Entity's and such Entity's current and former Affiliates' current and former directors (including outside directors), managers, officers, investment committee members, members of any governing body, equity holders (including holders of QVCG Preferred Equity and regardless of whether any equity interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds (including the beneficial holders for the account of whom such funds are managed), predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current and former Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, restructuring advisors, and other professionals and advisors, and any such Entity's respective heirs, executors, estates, and nominees of the foregoing.

"**Released Parties**" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Disinterested Directors; (d) the RCF Agent; (e) the QVC Notes Trustee; (f) the LINTA Notes Trustee; (g) the Consenting Stakeholders; (h) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (i) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (j) the Takeback Debt Agents; (k)

the DIP LC Agent and other DIP LC Secured Parties; (l) the other Releasing Parties; and (m) each Related Party of each Entity in clause (a) through clause (l); provided that, in each case, an Entity shall not be a Released Party if it:  (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

"**Releasing Parties**" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the RCF Agent; (d) the QVC Notes Trustee; (e) the LINTA Notes Trustee; (f) the Consenting Stakeholders; (g) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (h) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (i) the Takeback Debt Agents; (j) the DIP LC Agent and other DIP LC Secured Parties; (k) Holders of Claims or Interests who vote to accept the Plan and do not affirmatively opt out of the releases set forth herein; (l) Holders of Claims or Interests who are presumed to accept the Plan and do not affirmatively opt out of the releases set forth herein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth herein; (n) Holders of Claims or Interests who vote to reject the Plan but do not affirmatively opt out of the releases set forth herein; (o) Holders of Claims or Interests who are deemed to reject the Plan and affirmatively opt into the releases provided by the Plan; (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q); and (q) each Related Party of each Entity in clause (a) through clause (p) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided* that, in each case, an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

A.      *Discharge of Claims and Termination of Interests*.

Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan or the Plan Supplement, the distributions, rights, and treatment that are provided herein shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims that the Reorganized Debtors resolve or compromise after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured and no longer continuing as of the Effective Date.  Without prejudice to the distributions, rights, and treatment that are provided by the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims (other than any Reinstated Claims) and Interests (other than any Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date, and, upon the Effective Date, all Holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim or Interest

14

against the Debtors, Reorganized Debtors, or any of their assets or property.

B.      *Release of Liens*.

**Except as otherwise provided in the New Debt Documents, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, benefit, title, and interest of any Holder (and the applicable Agents of such Holder, including the Agents/Trustees) of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert and, as applicable, be reassigned, surrendered, reconveyed, or retransferred to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder, including the Agents/Trustees) shall be authorized and directed, as soon as practicable on or after the Effective Date, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any possessory collateral) held by such Holder (and the applicable agents for such Holder, including the Agents/Trustees) and to take any and all steps as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. All fees and costs incurred by any Holder of any Claim, the RCF Agent, the QVC Notes Trustee, or the DIP LC Agent in connection with the release of liens pursuant to the Plan, shall be reimbursed by the applicable QVC Debtors or Reorganized QVC Debtors, as applicable, in full in Cash on or following the Effective Date as applicable.**

C.      *Releases by the Debtors*.

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, and subject to the completion of each of those certain investigations commenced by, and under the direction and authority of, each of the Disinterested Directors of QVCG, LINTA, QVC, and CBI, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors,**

15

assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission,

16

transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release, other than as specified above.

D.      *Releases by the Releasing Parties.*

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would

17

have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan;  (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.

E.      *Exculpation*.

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action and any claim arising from or related to any act or omission occurring from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Definitive Documents, the QVC New Equity Interests, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, or any wind-down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with the foregoing, any Avoidance Actions, the pursuit of Confirmation, the pursuit of consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date, except for claims or Causes of Action arising out of or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan,

19

including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and other applicable Laws, regulations, or rules protecting such Exculpated Parties from liability.  In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in the Plan, each of the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.

F.  *Injunction.*

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, liabilities, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such released Claims, Interests, liabilities, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action unless such Holder has timely Filed a motion expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder

of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan (as may be amended, restated, supplemented, or otherwise modified from time to time), shall be deemed to have consented to the injunction provisions set forth in the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Exculpated Parties, or the 1125(e) Exculpation Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, in whole or in part, a claim or Cause of Action, as applicable, subject to the release and exculpation provisions of Article VIII hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim not released or subject to exculpation under the Plan, and (b) specifically authorizing such Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party, or 1125(e) Exculpation Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunctions set forth above do not enjoin Claims or Causes of Action against the Exculpated Parties or the Released Parties, as applicable, that relate to (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Plan Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement), executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

[*Remainder of page intentionally left blank.*]

Dated:  April 17, 2026
Houston, Texas

*/s/ Jason Brookner*

| | |
|---|---|
| **GRAY REED** | **KIRKLAND & ELLIS LLP** |
| Jason S. Brookner (TX Bar No. 24033684) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Lydia R. Webb (TX Bar No. 24083758)Emily F. | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Shanks (TX Bar No. 24110350) | |
| 1300 Post Oak Blvd. | Aparna Yenamandra, P.C. (*pro hac vice* pending) |
| Suite 2000 | 601 Lexington Avenue |
| Houston, Texas 77056 | New York, New York 10022 |

Telephone:      (713) 986-7000      Telephone:      (212) 446-4800
Facsimile:      (713) 986-7100      Facsimile:      (212) 446-4900
Email:          jbrookner@grayreed.com      Email:          joshua.sussberg@kirkland.com
                lwebb@grayreed.com                          aparna.yenamandra@kirkland.com
          eshanks@grayreed.com

- and -

Chad J. Husnick, P.C. (*pro hac vice* pending)
Gabriela Zamfir Hensley (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          chad.husnick@kirkland.com
                gabriela.hensley@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**Exhibit 2**

**Publication Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QVC GROUP, INC., *et al.*,[1] | ) | Case No. 26-90447 (ARP) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF COMMENCEMENT OF PREPACKAGED CHAPTER 11
BANKRUPTCY CASES AND HEARING ON THE DISCLOSURE STATEMENT
AND CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN**

**PLEASE TAKE NOTICE THAT** on April 16, 2026 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") the *Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan") and proposed *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code"). Copies of the Plan, the Disclosure Statement, and any other publicly-filed documents in the Chapter 11 Cases are available free of charge, as applicable, by: (a) visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/QVC; (b) emailing QVCInfo@ra.kroll.com (with "QVC—Solicitation Inquiries"); or (c) calling the Claims and Noticing Agent at (888) 575-5337 (USA or Canada, toll-free) or +1 (347) 292-4386 (International, toll). You may also obtain copies of any pleadings filed in the Chapter 11 Cases via PACER at https://www.pacer.gov (for a fee).[2]

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Combined Hearing") will be held before the Honorable Judge Perez, United States Bankruptcy Judge, in Courtroom 400, 515 Rusk Street, Houston, Texas 77002, on **May 26, 2026**, at [**TIME**] prevailing Central Time, to

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC. The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, the Plan or the Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court.  Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

PLEASE TAKE FURTHER NOTICE THAT objections (each, an "Objection"), if any, must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such Objections, and, if practicable, a proposed modification to the Plan that would resolve such Objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

Objections must be filed with the Bankruptcy Court and served so as to be **actually received** no later than **May 19, 2026 at 11:59 p.m., prevailing Central Time**, by those parties who have filed a notice of appearance in the Debtors' Chapter 11 Cases as well as the following parties:

| | |
|---|---|
| **Debtors** | **QVC Group, Inc.**<br>1200 Wilson Drive<br>West Chester, Pennsylvania 19380<br>Attention: Bill Wafford, Chief Administrative Officer and Chief Financial Officer<br>Eve DelSoldo, Vice President and General Counsel<br>Email address: bill.wafford@qvcgrp.com, eve.delsoldo@qvc.com |
| **Proposed Counsel to the Debtors** | **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention: Joshua A. Sussberg, P.C.<br>Aparna Yenamandra, P.C.<br>Email address: joshua.sussberg@kirkland.com<br>aparna.yenamandra@kirkland.com<br><br>- and -<br><br>**Kirkland & Ellis LLP**<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Attention: Chad J. Husnick, P.C.<br>Gabriela Zamfir Hensley<br>Email address: chad.husnick@kirkland.com<br>gabriela.hensley@kirkland.com |

3

|  | - and - |
|---|---|
|  | **Gray Reed**<br>1300 Post Oak Boulevard, Suite 1200<br>Houston, Texas 77056<br>Attention:    Jason S. Brookner<br>                Lydia R. Webb<br>Email address:  jbrookner@grayreed.com<br>                lwebb@grayreed.com |
| **Counsel to the RCF Lender Group** | Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Attention:    Nicholas Baker<br>                Zachary Weiner<br>Email address:  NBaker@stblaw.com<br>                zachary.weiner@stblaw.com |
| **Counsel to the QVC Noteholder Group** | Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, New York 10017<br>Attention:    Damian S. Schaible<br>                Angela M. Libby<br>                Aryeh Ethan Falk<br>Email address:  damian.schaible@davispolk.com<br>                angela.libby@davispolk.com<br>                aryeh.falk@davispolk.com |
| **Counsel to the LINTA Noteholder Group** | Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, New York 10036<br>Attention:    Philip C. Dublin<br>                Brad M. Kahn<br>Email address:  pdublin@akingump.com<br>                bkahn@akingump.com |
| **United States Trustee** | **Office of the United States Trustee for the Southern District of Texas**<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Attention:  Jana Whitworth |

     **IF AN OBJECTION IS NOT TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT SHALL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE.  ACCORDINGLY, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE IT MIGHT AFFECT YOUR RIGHTS.

IF YOU ARE A HOLDER OF A CLAIM AND/OR INTEREST IN A NON-VOTING CLASS PRESUMED TO ACCEPT THE PLAN AND DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLES VIII.C OR VIII.D OF THE PLAN OR (Y) TIMELY FILE AN OBJECTION TO SUCH RELEASES (WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES) THAT IS UNRESOLVED AT CONFIRMATION YOU WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL YOUR CLAIMS, INTERESTS, AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.

IF YOU ARE A HOLDER OF A CLAIM AND/OR INTEREST IN A NON-VOTING CLASS DEEMED TO REJECT THE PLAN AND WISH TO PARTICIPATE IN THE RELEASES CONTAINED IN ARTICLE VIII.C OR VIII.D OF THE PLAN, YOU MAY ELECT TO OPT IN TO SUCH RELEASES.

YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS THEREIN, AS YOUR RIGHTS MAY BE AFFECTED.

5

**Exhibit 3A**

**Form of Ballot
for Class B3 RCF Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QVC GROUP, INC., *et al.*,[1] | ) | Case No. 26-90447 (ARP) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**BALLOT FOR VOTING ON THE**
**JOINT PREPACKAGED CHAPTER 11 PLAN OF QVC GROUP, INC.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS B3:  RCF CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THE CLASS B3 BALLOT CAREFULLY *BEFORE* COMPLETING THIS CLASS B3 BALLOT.  THIS CLASS B3 BALLOT IS BEING DISTRIBUTED TO YOU TO SOLICIT VOTES ON THE PLAN (AS DEFINED BELOW) (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS B3 BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC ("KROLL" OR THE "CLAIMS AND NOTICING AGENT") BY TELEPHONE AT (888) 575-5337 (USA OR CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL TO QVCBALLOTS@ RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

**THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST NON-DEBTOR THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WILL BIND AFFECTED HOLDERS OF CLAIMS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS CLASS B3 BALLOT.  IF HOLDERS OF CLAIMS DO NOT OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN, THE RELEASES WILL BE BINDING ON THEM.**

**ANY VOTES INCLUDED ON THIS CLASS B3 BALLOT WILL NOT BE COUNTED UNLESS THIS CLASS B3 BALLOT IS COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY MAY 19, 2026, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC.  The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

QVC Group, Inc. and certain of its affiliates (collectively, the "Debtors," and together with their non-debtor affiliates, the "Company")  are soliciting votes with respect to the Plan as set forth in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Debtors may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Restructuring Transactions through the chapter 11 bankruptcy process and the Plan.  Votes are being solicited from Holders of Claims in Class B3, Class B4, and Class C3 (the "Voting Classes").

You are receiving this ballot (this "Class B3 Ballot") because you are a holder of a Class B3—RCF Claim as of April 13, 2026 (the "Voting Record Date").  Accordingly, you have a right to (a) vote to accept or reject the Plan and (b) subject to the limitations set forth herein, opt out of the releases set forth in Article VIII.D of the Plan.  **For additional discussion of the treatment and the rights of Holders of Class B3—RCF Claims under the Plan, please read the Disclosure Statement.**

**YOUR VOTE ON THIS CLASS B3 BALLOT WILL BE APPLIED, IN THE SAME MANNER AND AMOUNT, TO EACH DEBTOR AGAINST WHOM YOU HAVE CLASS B3—RCF CLAIMS.**

**Please review the detailed instructions regarding how to complete and submit this Class B3 Ballot attached hereto as Annex A (the "Class B3 Ballot Instructions").**  Once completed and returned in accordance with the attached Class B3 Ballot Instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two thirds in amount and more than one half in number of Claims that submit votes in that Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, the Plan will be binding on all Holders of Claims or Interests, among others, regardless of whether such Holders voted to or were presumed to accept, voted to or were deemed to reject, or abstained from voting on the Plan.  Subject to the terms and conditions of the Plan, you will receive the treatment identified in Article III.B.11 therein.

For answers to general questions about the solicitation of Plan votes and to request solicitation materials, please contact the Claims and Noticing Agent at (888) 575-5337 (U.S./Canada, toll-free) OR +1 (347) 292-4386 (International, toll) or by emailing QVCBallots@ra.kroll.com (with "QVC Group, Inc. Solicitation Inquiry" in the subject line).  Please be advised that the Claims and Noticing Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class B3—RCF Claim under the Plan.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Class B3 Ballot.  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional solicitation materials, you may obtain them from the Claims and Noticing Agent at no charge by:  (a) accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/QVC (after the Chapter 11 Cases are commenced); (b) writing to QVC Group Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (by first class mail, hand delivery, or overnight mail); (c) calling the Debtors' restructuring hotline at (888) 575-5337 (U.S./Canada, toll-free)   OR   +1 (347)   292-4386   (International,   toll);   or   (d) emailing QVCBallots@ra.kroll.com (with "QVC Group, Inc. Solicitation Inquiry" in the subject line).  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at:  http://ecf.txsd.uscourts.gov.

Your receipt of this Class B3 Ballot does not indicate that a Holder's Claim(s) has been or will be Allowed.  This Class B3 Ballot may not be used for any purpose other than to cast a vote to accept or reject the Plan and to make an election to opt out of the Third-Party Release contained in Article VIII.D of the Plan.  If you believe you have received this Class B3 Ballot in error, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class B3—RCF Claims under the Plan.

If a Class B3 Ballot recording your vote is not **actually received** by the Claims and Noticing Agent by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

> **PLEASE COMPLETE AND/OR REVIEW ITEMS 1 THROUGH 4 AND <u>ANNEX A</u>.  IF THIS CLASS B3 BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

<u>Item 1.</u>     **Vote on Plan.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of a Class B3—RCF Claim in the aggregate unpaid amount set forth below (insert amount in box below;

You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan in order to have your vote counted.  Please note that you must vote all of your Class B3—RCF Claims either to accept or reject the Plan.  You may not split your vote.  If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote on account of your Class B3—RCF Claims will not be counted.  If you indicate that you both accept and reject the Plan for your Class B3—RCF Claims by checking both boxes below, your vote on account of your Class B3—RCF Claims will not be counted.

The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor.

The undersigned Holder of the Class B3—RCF Claims against the Debtors votes to (*please check <u>one and only one box</u>*):

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class B3 | RCF Claims | $_____ | ☐ **ACCEPT** (VOTE FOR) THE PLAN<br>☐ **REJECT** (VOTE AGAINST) THE PLAN |

<u>Item 2.</u>     **Releases Under the Plan.**

**Please be advised that <u>Article VIII</u> of the Plan contains the following release provisions:**

<u>Article VIII.C</u> of the Plan contains the following release by the Debtors (the "<u>Debtor Release</u>"):

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, and subject to the completion of each of those certain investigations commenced by, and under the direction and authority of, each of the Disinterested Directors of QVCG, LINTA, QVC, and CBI, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or**

3

unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release, other than as specified above.

4

Article VIII.D of the Plan contains the following third-party release by the Releasing Parties (the "Third-Party Release"):

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or**

5

**(c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.**

Definitions related to the Debtor Release and the Third-Party Release:

**Under the Plan, "*Released Parties*"** means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Disinterested Directors; (d) the RCF Agent; (e) the QVC Notes Trustee; (f) the LINTA Notes Trustee; (g) the Consenting Stakeholders; (h) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (i) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (j) the Takeback Debt Agents; (k) the DIP LC Agent and other DIP LC Secured Parties; (*l*) the other Releasing Parties; and (m) each Related Party of each Entity in clause (a) through clause (*l*); *provided* that, in each case, an Entity shall not be a Released Party if it:  (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

**Under the Plan, "*Releasing Parties*"** means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the RCF Agent; (d) the QVC Notes Trustee; (e) the LINTA Notes Trustee; (f) the Consenting Stakeholders; (g) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (h) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (i) the Takeback Debt Agents; (j) the DIP LC Agent and other DIP LC Secured Parties; (k) Holders of Claims or Interests who vote to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (*l*) Holders of Claims or Interests who are presumed to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth in the Plan; (n) Holders of Claims or Interests who vote to reject the Plan but do not affirmatively opt out of the releases set forth in the Plan; (o) Holders of Claims or Interests who are deemed to reject the Plan and affirmatively opt into the releases provided by the Plan; (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q); and (q) each Related Party of each Entity in clause (a) through clause (p) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided* that, in each case, an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

### Important Information Regarding the Releases

**As a "Releasing Party" under the Plan, you are deemed to provide the releases contained in Article VIII.D of the Plan, as set forth above.  The election to withhold consent to grant such release is at your option.  By opting out of the releases set forth in Article VIII.D of the Plan, you will forego the benefit of obtaining the releases set forth in Article VIII of the Plan if you are a Released Party in connection therewith.  You will receive the same treatment on account of your Claim(s) or Interest(s) under the Plan regardless of whether you elect to not grant the release contained in Article VIII.D of the Plan.**

**You may elect to opt out of the releases contained in Article VIII.D of the Plan if you check the box below and (a) timely submit the Class B3 Ballot but abstain from voting to accept or reject the Plan, (b) vote to reject the Plan, or (c) vote to accept the Plan.  If you (x) fail to timely submit a Class B3 Ballot either to your Nominee or the Claims and Noticing Agent, (y) submit the Class B3 Ballot but abstain from voting to accept or reject the**

6

**Plan without checking the box below, or (z) vote to accept or reject the Plan without checking the box below, in each case you will be deemed to consent to the releases set forth in Article VIII.D of the Plan.**

**You may also opt out of the releases by timely objecting to the releases contained in the Plan, either by means of (i) a formal objection filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before confirmation.**

**OPTIONAL RELEASE ELECTION.**

☐ **By checking this box, you elect to opt OUT of the Third-Party Release**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation"):

> **Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action and any claim arising from or related to any act or omission occurring from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Definitive Documents, the QVC New Equity Interests, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, or any wind-down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with the foregoing, any Avoidance Actions, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date, except for claims or Causes of Action arising out of or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

> **The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and other applicable Laws, regulations, or rules protecting such Exculpated Parties from liability.  In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

> **Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in the Plan, each of the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the**

7

Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.

Article VIII.F of the Plan establishes an injunction (the "Injunction"):

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, liabilities, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such released Claims, Interests, liabilities, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action unless such Holder has timely Filed a motion expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan (as may be amended, restated, supplemented, or otherwise modified from time to time), shall be deemed to have consented to the injunction provisions set forth in the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Exculpated Parties or the 1125(e) Exculpation Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, in whole or in part, a claim or Cause of Action, as applicable, subject to the release and exculpation provisions of Article VIII hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim not released or subject to exculpation under the Plan, and (b) specifically authorizing such Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party or 1125(e) Exculpation Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunctions set forth above do not enjoin Claims or Causes of Action against the Exculpated Parties or the Released Parties, as applicable, that relate to (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement), executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

8

**Item 3.**  **Certifications**.

By signing this Class B3 Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Class B3—RCF Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Class B3 Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

**Item 4.**  **Holder Information and Signature.**

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
Email Address

**ANNEX A**

**INSTRUCTIONS FOR COMPLETING THIS CLASS B3 BALLOT**

1. Class B3 Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Claims and Noticing Agent will tabulate all properly completed Class B3 Ballots received on or before the Voting Deadline.**

2. Complete the Class B3 Ballot by providing all the information requested, signing, dating, and returning the Class B3 Ballot according to submission instructions below. Any Class B3 Ballot that is illegible, contains insufficient information to identify the Holder or to indicate whether the Holder intends to vote all of such Holder's Claims to accept or reject the Plan or is unsigned will not be counted. If neither the "**accept**" nor "**reject**" box is checked in Item 1, both boxes are checked in Item 1, or the Class B3 Ballot is otherwise not properly completed, executed, or timely returned, then the Class B3 Ballot shall not be counted in determining acceptance or rejection of the Plan.

3. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Class B3 Ballot voting different or inconsistent Claims within a single Class under the Plan, the Class B3 Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Class B3 Ballots will not be counted. An otherwise properly executed Class B3 Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4. The Class B3 Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5. The Class B3 Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6. If you cast more than one Class B3 Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Class B3 Ballot submitted to the Claims and Noticing Agent, as applicable, will supersede any prior Class B3 Ballot.

7. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Class B3 Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS CLASS B3 BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. **IF YOU HAVE RECEIVED A DAMAGED CLASS B3 BALLOT OR HAVE LOST YOUR CLASS B3 BALLOT, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS B3 BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (888) 575-5337 (U.S./CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.**

11. THE CLAIMS AND NOTICING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**PLEASE RETURN YOUR CLASS B3 BALLOT PROMPTLY**

| |
|---|
| **THIS CLASS B3 BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS <u>MAY 19, 2026, AT 11:59 P.M., PREVAILING CENTRAL TIME</u>.** |
| **PLEASE SUBMIT THIS CLASS B3 BALLOT AS SET FORTH BELOW SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE VOTING DEADLINE.** |
| **<u>Submit your completed and signed Class B3 Ballot in .pdf format by electronic mail to the Claims and Noticing Agent at:</u>** <br><br> **<u>QVCBallots@ra.kroll.com</u> (with "QVC Group Ballot Submission" in the subject line)** |
| **Delivery by electronic mail, as set forth above, is the only acceptable means of submission of your Class B3 Ballot.  <u>Class B3 Ballots submitted in hard copy (whether by regular mail, overnight courier, or hand delivery) or via facsimile will not be counted.</u>** |
| **IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS B3 BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (888) 575-5337 (U.S./CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.** <br><br> **ANY CLASS B3 BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE CONDITIONAL DISCLOSURE STATEMENT ORDER OR THE CLASS B3 BALLOT INSTRUCTIONS WILL NOT BE COUNTED.** <br><br> **THIS CLASS B3 BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.** |

**Exhibit 3B**

**Form of Master Ballot**
**for Class B4 QVC Notes Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QVC GROUP, INC., *et al.*,[2] | ) | Case No. 26-90447 (ARB) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**MASTER BALLOT FOR VOTING ON**
**THE JOINT PREPACKAGED CHAPTER 11 PLAN OF QVC GROUP, INC.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS B4:  QVC NOTES CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT CAREFULLY *BEFORE* COMPLETING THIS MASTER BALLOT.  THIS MASTER BALLOT IS BEING DISTRIBUTED TO YOU TO SOLICIT VOTES ON THE PLAN (AS DEFINED BELOW) (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION ("KROLL" OR THE "CLAIMS AND NOTICING AGENT") BY TELEPHONE AT (888) 575-5337 (USA OR CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL TO QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

**THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST NON-DEBTOR THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WILL BIND AFFECTED HOLDERS OF CLAIMS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS MASTER BALLOT.  IF HOLDERS OF CLAIMS DO NOT OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN, THE RELEASES WILL BE BINDING ON THEM.**

**ANY VOTES INCLUDED ON THIS MASTER BALLOT WILL NOT BE COUNTED, UNLESS THIS MASTER BALLOT IS COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY MAY 19, 2026, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

---

[2]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC.  The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

PRIOR TO COMMENCEMENT OF THE CHAPTER 11 CASES, ONLY HOLDERS OF CLASS B4 QVC NOTES CLAIMS WHO ARE ELIGIBLE HOLDERS (AS DEFINED BELOW) ARE ENTITLED TO VOTE PURSUANT TO THIS MASTER BALLOT.  ANY VOTE CAST ON THIS MASTER BALLOT PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER ON BEHALF OF A BENEFICIAL HOLDER WHO IS NOT ALSO AN ELIGIBLE HOLDER WILL NOT COUNT.

AN "ELIGIBLE HOLDER" IS A HOLDER OF A CLASS B4 QVC NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS (I) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT")), (II) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501 OF REGULATION D OF THE SECURITIES ACT), OR (III) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.

A "NON-ELIGIBLE HOLDER" IS A HOLDER OF A CLASS B4 QVC NOTES CLAIM THAT IS NOT AN ELIGIBLE HOLDER.

QVC Group, Inc. and certain of its affiliates (collectively, the "Debtors," and together with their non-debtor affiliates, the "Company")  are soliciting votes with respect to the Plan as set forth in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Debtors may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Restructuring Transactions through the chapter 11 bankruptcy process and the Plan.  Votes are being solicited from Holders of Claims in Class B3, Class B4, and Class C3 (the "Voting Classes").

This master ballot (the "Master Ballot") is being distributed to brokers, dealers, commercial banks, trust companies, or other agents or nominees (each a "Nominee") which hold positions in the Debtors' publicly traded securities in "street name" on behalf of the beneficial holders of such Claims identified on **Annex B** hereto (a "Beneficial Holder").

Specifically, this Master Ballot is being distributed to Nominees of Beneficial Holders of Claims against any of the Debtors, as of April 13, 2026 (the "Voting Record Date"), arising from or based on the QVC Notes, the CUSIPs and ISINs for which are indicated on **Annex B** hereto.  Nominees should use this Master Ballot to tabulate votes on behalf of Beneficial Holders of the QVC Notes to accept or reject the Plan.  **For additional discussion of the treatment and the rights of Holders of Class B4—QVC Notes Claims under the Plan, please read the Disclosure Statement.**

Upon receipt of these materials, you should immediately forward to the Beneficial Holders (a) the Disclosure Statement, (b) the form of ballot for such holders (the "Beneficial Holder Ballot"), (c) the remainder of the Solicitation Package except the Master Ballot, and (d) a return envelope addressed to you, or as provided in the attached instructions.  You may also transmit the Beneficial Holder Ballot and Disclosure Statement and collect votes from Beneficial Holders in accordance with your customary procedures to transmit materials to and solicit votes from Beneficial Holders, including the use of a voter information form ("VIF") in lieu of, or in addition to, a Beneficial Holder Ballot, electronic mail, telephone, and electronic website link (for access to solicitation materials and/or submission of vote).

**VOTES ON THIS MASTER BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOUR BENEFICIAL HOLDER CLIENTS HAVE CLASS B4—QVC NOTES CLAIMS.**

**Please review the detailed instructions regarding how to complete and submit this Master Ballot attached hereto as Annex A (the "Master Ballot Instructions").**  Once completed and returned in accordance with the attached Master Ballot Instructions, your Beneficial Holder clients' votes on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two thirds in amount and more than one half in

number of Claims that submit votes in that Voting Class vote to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, the Plan will be binding on all Holders of Claims or Interests, among others, regardless of whether such Holders voted to or were presumed to accept, voted to or were deemed to reject, or abstained from voting on the Plan. Subject to the terms and conditions of the Plan, you will receive the treatment identified in Article III.B.12 therein.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Master Ballot. If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional solicitation materials, you may obtain them from the Claims and Noticing Agent at no charge by: (a) accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/QVC (after the commencement of the Chapter 11 Cases); (b) writing to QVC Group Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (by first class mail, hand delivery, or overnight mail); (c) calling the Claims and Noticing Agent at (888) 5754386 (U.S./Canada, toll-free) OR +1 (347) 292-4386 (International, toll); or (d) emailing QVCBallots@ra.kroll.com (with "QVC Group, Inc. Solicitation Inquiry" in the subject line). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://ecf.txsd.uscourts.gov.

Your receipt of this Master Ballot does not indicate that a Beneficial Holder's Claim(s) has been or will be Allowed. This Master Ballot may not be used for any purpose other than to cast a vote to accept or reject the Plan and to make an election to opt out of the Third-Party Release contained in Article VIII.D of the Plan, each on behalf of the Beneficial Holders of the QVC Notes Claims. If you believe you have received this Master Ballot in error, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or e-mail address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class B4—QVC Notes Claims under the Plan.

---

**PLEASE COMPLETE AND/OR REVIEW ITEMS 1 THROUGH 6, ANNEX A, AND ANNEX B, AS APPLICABLE. IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR BENEFICIAL HOLDER CLIENTS' VOTES MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.** **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a Nominee for the Beneficial Holders of the aggregate principal amount of the Claims indicated on **Annex B** hereto, and is the record holder of such notes;

☐ is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a Nominee that is the registered holder of the aggregate principal amount of the Claims indicated on **Annex B** hereto; or

☐ has been granted a proxy (an original of which is submitted herewith) from a Nominee or a Beneficial Holder that is the registered holder of the aggregate principal amount of the Claims indicated on **Annex B** hereto, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Claims indicated on **Annex B** hereto.

**Item 2.** **Vote on Plan.**

The undersigned transmits the following votes of Beneficial Holders in respect of their Class B4—QVC Notes Claims and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have submitted their Plan votes to the

3

undersigned, as Nominee, according to the Nominee's voting instructions (whether by Beneficial Holder Ballot or otherwise in accordance with their Nominee's instructions).[3]

| CLASS B4 – QVC NOTES CLAIMS | | | | | |
|---|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder Who Voted in the Plan Class** | **Principal Amount Held as of the Voting Record Date** | **Item 2**<br><br>**Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below.** | | | **Item 3**<br><br>**If the box in Item 2 of the Beneficial Holder Ballot was completed, place an "X" in the column below.**<br><br>**OPT OUT of the Third-Party Release** |
| | | **Accept the Plan** | **or** | **Reject the Plan** | |
| 1. | $ | | | | |
| 2. | $ | | | | |
| 3. | $ | | | | |
| 4. | $ | | | | |
| 5. | $ | | | | |
| 6. | $ | | | | |
| **TOTALS** | $ | | | | |

**The vote on the Plan cast above will be applied to each applicable Debtor in the same manner and in the same amount as indicated above.**

**Item 3.    Releases Under the Plan.**

**Please be advised that Article VIII of the Plan contains the following release provisions:**

Article VIII.C of the Plan contains the following release by the Debtors (the "Debtor Release"):

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, and subject to the completion of each of those certain investigations commenced by, and under the direction and authority of,**

---

[3]    Indicate in the appropriate column the principal amount of the QVC Notes Claims voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

4

each of the Disinterested Directors of QVCG, LINTA, QVC, and CBI, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act

5

or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release, other than as specified above.

Article VIII.D of the Plan contains the following third-party release by the Releasing Parties (the "Third-Party Release"):

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before

6

or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.

Definitions related to the Debtor Release and the Third-Party Release:

Under the Plan, "*Released Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Disinterested Directors; (d) the RCF Agent; (e) the QVC Notes Trustee; (f) the LINTA Notes Trustee; (g) the Consenting Stakeholders; (h) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (i) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (j) the Takeback Debt Agents; (k) the DIP LC Agent and other DIP LC Secured Parties; (*l*) the other Releasing Parties; and (m) each Related Party of each Entity in clause (a) through clause (*l*); *provided* that, in each case, an Entity shall not be a Released Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the RCF Agent; (d) the QVC Notes Trustee; (e) the LINTA Notes Trustee; (f) the Consenting Stakeholders; (g) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (h) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (i) the Takeback Debt Agents; (j) the DIP LC Agent and other DIP LC Secured Parties; (k) Holders of Claims or Interests who vote to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (*l*) Holders of Claims or Interests who are presumed to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth in the Plan; (n) Holders of Claims or Interests who vote to reject the Plan but do not affirmatively opt out of the releases set forth in the Plan; (o) Holders of Claims or Interests who are deemed to reject the Plan and affirmatively opt into the releases provided by the Plan; (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q); and (q) each Related Party of each Entity in clause (a) through clause (p) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided* that, in each case,

an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation"):

**Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action and any claim arising from or related to any act or omission occurring from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Definitive Documents, the QVC New Equity Interests, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, or any wind-down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with the foregoing, any Avoidance Actions, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date, except for claims or Causes of Action arising out of or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and other applicable Laws, regulations, or rules protecting such Exculpated Parties from liability.  In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in the Plan, each of the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.**

Article VIII.F of the Plan establishes an injunction (the "Injunction"):

**Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, liabilities, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such released Claims, Interests, liabilities, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or**

means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action unless such Holder has timely Filed a motion expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan (as may be amended, restated, supplemented, or otherwise modified from time to time), shall be deemed to have consented to the injunction provisions set forth in the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Exculpated Parties or the 1125(e) Exculpation Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, in whole or in part, a claim or Cause of Action, as applicable, subject to the release and exculpation provisions of **Article VIII** hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim not released or subject to exculpation under the Plan, and (b) specifically authorizing such Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party or 1125(e) Exculpation Party. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunctions set forth above do not enjoin Claims or Causes of Action against the Exculpated Parties or the Released Parties, as applicable, that relate to (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement), executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

**Item 4.** **Certification as to Transcription of Information from Item 3 of the Beneficial Holder Ballots as to the QVC Notes Voted Through Other Ballots.** The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 3 of the Beneficial Holder Ballot, identifying any Interests in QVC Notes Claims for which such Beneficial Holders have submitted other Ballots (other than to the undersigned):

| Your Customer Account Number for Each Beneficial Holder that Completed Item 3 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL HOLDER BALLOTS: | | | Plan Vote of Other QVC Notes Claims (Accept or Reject) | Opt-Out of Third-Party Release (Yes or No) |
|---|---|---|---|---|---|
| | Account Number with Other Nominee | DTC Participant Number and Name of Other Nominee | Principal Amount of Other QVC Notes Claims Voted as of the Voting Record Date | | |
| | | | | | |

9

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Item 5.** **Certifications.**

Upon execution of this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a) (i) it has received a copy of the Disclosure Statement, Master Ballot, Beneficial Holder Ballot, and the remainder of the Solicitation Package and has delivered the Disclosure Statement, Beneficial Holder Ballot, and the remainder of the Solicitation Package except the Master Ballot to the Beneficial Holders holding Class B4—QVC Notes Claims through the undersigned; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered Holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b) the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class B4—QVC Notes Claims through the undersigned; (ii) the respective amounts of QVC Notes Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

(c) if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class B4—QVC Notes Claims, the undersigned confirms and attests to each of the certifications in Item 3 of the Beneficial Holder Ballot;

(d) each such Beneficial Holder has certified to the undersigned that such Beneficial Holder is a Beneficial Holder and is otherwise eligible to vote on the Plan;

(e) all votes cast on this Master Ballor prior to the commencement of the chapter 11 cases are on behalf of Eligible Holders; and

(f) the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

**Item 6.**   **Nominee Information and Signature**

Name of Nominee:_____

(<em>print or type</em>)

DTC Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____

(<em>print or type</em>)

Signature:_____

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Email Address:_____

Date Completed:_____

11

<u>**ANNEX A**</u>

<u>**INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT**</u>

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Master Ballot or in these Master Ballot instructions but not otherwise defined therein or herein shall have the meanings set forth in the Plan.

    **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

2.  To have the votes of your Beneficial Holders count, you should already have delivered to each such Holder (a) a copy of the Disclosure Statement, (b) a Beneficial Holder Ballot (which may be a pre-validated Ballot, as described in paragraph 3 below), (c) the remainder of the Solicitation Package (except the Master Ballot), and (d) a return envelope addressed to you (or the Claims and Noticing Agent in the case of a pre-validated Ballot), so such Holder may (i) return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Claims and Noticing Agent, so that the Claims and Noticing Agent actually receives the Master Ballot before the Voting Deadline or (ii) in the case of a pre-validated Ballot, return their Beneficial Holder Ballot to the Claims and Noticing Agent before the Voting Deadline.  Notwithstanding the foregoing, you may transmit the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders in accordance with your customary procedures to transmit materials to and collect votes from Beneficial Holders.

3.  You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (a) name and DTC Participant Number of the Nominee and (b) the principal amount of the Class B4—QVC Notes Claims held by the Nominee for the Beneficial Holder, (ii) applying a medallion guarantee stamp to the Beneficial Holder Ballot to certify the principal amount of the Class B4—QVC Notes Claims owned by the Beneficial Holder as of the Voting Record Date (in lieu of a medallion guarantee stamp a list of authorized signers may be provided), and (iii) forwarding such Beneficial Holder Ballot, together with the Solicitation Package, including a preaddressed, postage-paid return envelope addressed to, and provided by, the Claims and Noticing Agent, to the Beneficial Holder.  The Beneficial Holder will be required to complete and/or review the information requested and/or contained in Items 1, 2, 3, 4, and 5 of the Beneficial Holder Ballot and return the pre-validated Beneficial Holder Ballot directly to the Claims and Noticing Agent so that it is actually received before the Voting Deadline.

4.  With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must:  (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Claims and Noticing Agent in accordance with these instructions.  Prior to the entry of the solicitation procedures order, **any Beneficial Holder Ballot received from a Beneficial Holder who has not certified therein that it is an Eligible Holder should not be included in this Master Ballot, and will not be counted.**

5.  Please keep any records of Beneficial Holder Ballots, including records of the Beneficial Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court).  You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

6.  For the avoidance of doubt, if it is your customary practice to disseminate solicitation materials and information to, and collect votes from, your Beneficial Holder clients via voter information form, e-mail, telephone, or other means, including electronic website link, you may employ those customary practices to distribute solicitation information to, and collect votes from, the Beneficial Holders in lieu of hard copies of Beneficial Holder Ballots and related solicitation documents.

7.  If you are both the Nominee and Beneficial Holder, and you wish to vote such QVC Notes Claims for which you are a Beneficial Holder, please return a Master Ballot for such Claims.

8.  In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

9.  The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

10.  The Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

11.  The following Master Ballots or Beneficial Holder Ballots (each, a "Ballot") shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned Ballot, (d) any Ballot not marked to accept or reject the Plan, marked both to accept and reject the Plan, or marked to partially accept and partially reject the Plan, and (e) prior to entry of the solicitation procedures order, any Beneficial Holder Ballot submitted by or on behalf of a non-Eligible Holder.

12.  If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Claims and Noticing Agent is at your election and risk.

13.  If a Beneficial Holder submits Ballots for multiple QVC Notes Claims, whether held in other accounts or other record names, and such Ballots indicate different or inconsistent votes to accept or reject the Plan, then all such Ballots will not be counted.

14.  If a Beneficial Holder submits more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Nominee or Claims and Noticing Agent, as applicable, will supersede any prior Ballot.

15.  If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Ballot belonging to a Beneficial Holder of a Claim, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot.

16.  To the extent that conflicting votes or "over votes" are submitted by a Nominee, the Claims and Noticing Agent, in good faith, will attempt to reconcile discrepancies with the Nominee.  To the extent that any over votes are not reconcilable prior to the preparation of the vote certification, the Claims and Noticing Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or pre-validated Beneficial Holder Ballots that contained the over vote, but only to the extent of the Nominee's position in the applicable security, as reflected in the security position report provided by The Depository Trust Company as of the Voting Record Date.

17.  The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

18.  There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

19.  Please be sure to sign and date your Master Ballot.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

2

20. <u>NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.</u>

21. **IF YOU HAVE RECEIVED A DAMAGED MASTER BALLOT OR HAVE LOST YOUR MASTER BALLOT, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (888) 575-5337 (U.S./CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.**

22. **THE CLAIMS AND NOTICING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

<u>**PLEASE RETURN YOUR MASTER BALLOT PROMPTLY**</u>

---

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS <u>MAY 19, 2026, AT 11:59 P.M., PREVAILING CENTRAL TIME.</u>**

**PLEASE SUBMIT THIS MASTER BALLOT BY *ONE* OF THE FOLLOWING METHODS SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE VOTING DEADLINE.**

---

**<u>If Submitting Your Master Ballot via E-mail:</u>**

**Please send your completed and signed Master Ballot to <u>QVCBallots@ra.kroll.com</u> (with "QVC Group Master Ballot" in the subject line).**

---

**<u>If Submitting Your Master Ballot via First Class Mail, Overnight Courier or Hand Delivery:</u>**

**Submit your completed and signed Master Ballot by first class mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:**

**QVC Group Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

**(To arrange hand delivery of your Ballot, please email QVCballots@ra.kroll.com (with "QVC Ballot Submission" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.)**

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (888) 575-5337 (U.S./CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

3

**ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE CONDITIONAL DISCLOSURE STATEMENT ORDER OR THE MASTER BALLOT INSTRUCTIONS WILL NOT BE COUNTED.**

**THIS MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**ANNEX B**

Please check one, and only one, box below to indicate the CUSIP / ISIN to which this Master Ballot pertains.  If you check more than one box below the Beneficial Holders' votes submitted on this Master Ballot may be invalidated.

| | Class B4 – QVC Notes Claims | |
|---|---|---|
| | **Notes Description** | **CUSIP / ISIN** |
| ☐ | 4.750% QVC Notes due 2027 | 747262AY9 / US747262AY90 |
| ☐ | 4.375% QVC Notes due 2028 | 747262AZ6 / US747262AZ65 |
| ☐ | 6.875% QVC Notes due 2029 (144A) | 747262BA0 / US747262BA06 |
| ☐ | 6.875% QVC Notes due 2029 (REGS) | U74900AM0 / USU74900AM03 |
| ☐ | 5.450% QVC Notes due 2034 | 747262AW3 / US747262AW35 |
| ☐ | 5.450% QVC Notes due 2034 (144A) | 747262AV5 / US747262AV51 |
| ☐ | 5.450% QVC Notes due 2034 (REGS) | U74900AK4 / USU74900AK47 |
| ☐ | 5.950% QVC Notes due 2043 | 747262AM5 / US747262AM52 |
| ☐ | 5.950% Senior Secured Note due 2043 (REGS) | U74900AL2 / USU74900AL20 |
| ☐ | 5.950% Senior Secured Note due 2043 (144A) | 747262AX1 / US747262AX18 |
| ☐ | 5.950% Senior Secured Note due 2043 (REGS) | U74900AE8 / USU74900AE86 |
| ☐ | 5.950% Senior Secured Note due 2043 (144A) | 747262AL7 / US747262AL79 |
| ☐ | 6.375% QVC Notes due 2067 | 747262301 / US7472623013 |
| ☐ | 6.250% QVC Notes due 2068 | 747262400 / US7472624003 |

**Exhibit 3C**

**Form of Beneficial Holder Ballot
for Class B4 QVC Notes Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| QVC GROUP, INC., *et al.*,[4] | Case No. 26-90447 (ARP) |
| Debtors. | (Joint Administration Requested) |

**BENEFICIAL HOLDER BALLOT FOR VOTING ON**
**THE JOINT PREPACKAGED CHAPTER 11 PLAN OF QVC GROUP, INC.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS B4: QVC NOTES CLAIMS**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THE BENEFICIAL HOLDER BALLOT CAREFULLY *BEFORE* COMPLETING THIS BENEFICIAL HOLDER BALLOT.  THIS BENEFICIAL HOLDER BALLOT IS BEING DISTRIBUTED TO YOU TO SOLICIT YOUR VOTE ON THE PLAN (AS DEFINED BELOW) (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).**
>
> **IF YOU HAVE ANY GENERAL QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT OR THE SOLICITATION MATERIALS, INCLUDING THE DISCLOSURE STATEMENT AND PLAN (BOTH AS DEFINED BELOW) PROVIDED HEREWITH, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION ("KROLL" OR THE "CLAIMS AND NOTICING AGENT") BY TELEPHONE AT (888) 575-5337 (U.S./CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL TO QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE REFER SPECIFIC QUESTIONS ABOUT VOTING INSTRUCTIONS AND PROCEDURES PROVIDED BY YOUR NOMINEE TO YOUR NOMINEE (AS DEFINED BELOW).**
>
> **THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST NON-DEBTOR THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WILL BIND AFFECTED HOLDERS OF CLAIMS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BENEFICIAL HOLDER BALLOT.  IF HOLDERS OF CLAIMS DO NOT OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN, THE RELEASES WILL BE BINDING ON THEM.**

---

[4]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC.  The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

**TO BE COUNTED, YOUR VOTE, WHETHER SUBMITTED USING THIS BENEFICIAL HOLDER BALLOT OR OTHERWISE ACCORDING TO YOUR NOMINEE'S INSTRUCTIONS, MUST BE RECEIVED IN TIME TO ALLOW YOUR NOMINEE TO ENTER YOUR VOTE IN A MASTER BALLOT AND SUBMIT SUCH MASTER BALLOT SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY May 19, 2026, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").  PLEASE NOTE THAT YOUR NOMINEE'S INTERNAL DEADLINE FOR SUBMISSION OF PLAN VOTES WILL LIKELY BE AT MINIMUM ONE OR TWO BUSINESS DAYS PRIOR TO THE COURT-MANDATED VOTING DEADLINE REFERENCED ABOVE.**

**PRIOR TO COMMENCEMENT OF THE CHAPTER 11 CASES, ONLY HOLDERS OF CLASS B4 QVC NOTES CLAIMS WHO ARE ELIGIBLE HOLDERS (AS DEFINED BELOW) ARE ENTITLED TO VOTE PURSUANT TO THIS BENEFICIAL HOLDER BALLOT.  ANY VOTE CAST ON THIS BENEFICIAL BALLOT PRIOR TO ENTRY OF THE SOLICITATION PROCEDURES ORDER BY A NON-ELIGIBLE HOLDER WILL NOT COUNT.**

**AN "ELIGIBLE HOLDER" IS A HOLDER OF A CLASS B4 QVC NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS (I) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT")), (II) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501 OF REGULATION D OF THE SECURITIES ACT), OR (III) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.**

**A "NON-ELIGIBLE HOLDER" IS A HOLDER OF A CLASS B4 QVC NOTES CLAIM THAT IS NOT AN ELIGIBLE HOLDER.**

QVC Group, Inc. and certain of its affiliates (collectively, the "Debtors," and together with their non-debtor affiliates, the "Company")  are soliciting votes with respect to the *Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement").  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or the Disclosure Statement, as applicable.  Votes are being solicited from Holders of Claims in Class B3, Class B4, and Class C3 (the "Voting Classes").

You are receiving this ballot (this "Beneficial Holder Ballot") because you are a beneficial holder (a "Beneficial Holder") of a Class B4—QVC Notes Claim as of April 13, 2026 (the "Voting Record Date"), arising from or based on your beneficial ownership of the QVC Notes and the QVC Notes held through your broker, dealer, commercial bank, trust company, or other agent or nominee (each of the foregoing, a "Nominee").  The CUSIPs and ISINs for the QVC Notes are set forth in **Annex B** hereto.  Accordingly, you have a right to (a) vote to accept or reject the Plan and (b) subject to the limitations set forth herein, opt out of the releases set forth in Article VIII.D of the Plan.  **For additional discussion of the treatment and the rights of Holders of Class B4—QVC Notes Claims under the Plan, please read the Disclosure Statement.**

You can cast your vote (i) through this Beneficial Holder Ballot and return it to the Nominee through which you hold your QVC Notes Claims, who will then submit a Master Ballot (the "Master Ballot") on behalf of its Beneficial Holders of the Class B4—QVC Notes Claims, or (ii) otherwise in accordance with the instructions provided by your Nominee.

**YOUR VOTE ON THIS BENEFICIAL HOLDER BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE CLASS B4—QVC NOTES CLAIMS.**

3

**Please review the detailed instructions regarding how to complete and submit this Beneficial Holder Ballot attached hereto as Annex A (the "Beneficial Holder Ballot Instructions").** Once completed and returned in accordance with the attached Beneficial Holder Ballot Instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two thirds in amount and more than one half in number of Claims that submit votes in that Voting Class vote to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, the Plan will be binding on all Holders of Claims or Interests, among others, regardless of whether such Holders voted to or were presumed to accept, voted to or were deemed to reject, or abstained from voting on the Plan. Subject to the terms and conditions of the Plan, you will receive the treatment identified in Article III.B.12 therein.

If you have any questions on how to properly complete this Beneficial Holder Ballot, the voting procedures, or the voting instructions you received from your Nominee, please contact your Nominee. For answers to general questions about the solicitation of Plan votes and to request solicitation materials, please contact the Claims and Noticing Agent at (888) 575-5337 (U.S./Canada, toll-free) OR +1 (347) 292-4386 (International, toll) or by emailing QVCBallots@ra.kroll.com (with "QVC Group, Inc. Solicitation Inquiry" in the subject line). Please be advised that the Claims and Noticing Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class B—QVC Notes Claim under the Plan.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Beneficial Holder Ballot. If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional solicitation materials, you may obtain them from the Claims and Noticing Agent at no charge by: (a) accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/QVC (after the commencement of these Chapter 11 Cases); (b) writing to QVC Group, Inc. Ballot and Claims Processing, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (by first class mail, hand delivery, or overnight mail); (c) calling the Debtors' restructuring hotline at (888) 575-5337 (U.S./Canada, toll-free) OR +1 (347) 292-4386 (International, toll); or (d) emailing QVCBallots@ra.kroll.com (with "QVC Group, Inc. Solicitation Inquiry" in the subject line). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://ecf.txsd.uscourts.gov.

Your receipt of this Beneficial Holder Ballot does not indicate that a Beneficial Holder's Claim(s) has been or will be Allowed. This Beneficial Holder Ballot may not be used for any purpose other than to cast a vote to accept or reject the Plan and to make an election to opt out of the Third-Party Release contained in Article VIII.D of the Plan. If you believe you have received this Beneficial Holder Ballot in error, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class B4—QVC Notes Claims under the Plan.

Unless otherwise instructed by your Nominee, in order for your vote to count, your Nominee must receive your vote, whether by this Beneficial Holder Ballot or otherwise according to your Nominee's voting instructions, in sufficient time for your Nominee to include your vote on a Master Ballot that must be received by the Claims and Noticing Agent on or before the Voting Deadline. Please allow sufficient time for your vote to be included on the Master Ballot completed by your Nominee. If a Master Ballot recording your vote is not **actually received** by the Claims and Noticing Agent by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

Your Nominee may choose to "pre-validate" your Beneficial Holder Ballot by signing the Beneficial Holder Ballot and adding (i) the Nominee's DTC participant number and a medallion guarantee stamp confirming the amount of your Class B4 QVC Notes as of the Voting Record Date, (ii) the Beneficial Holder's account number, and (iii) the amount of Claims held by the Beneficial Holder as of the Voting Record Date. As part of the pre-validation process, your Nominee will instruct you to submit your pre-validated Beneficial Holder Ballot directly to the Claims and Noticing Agent on or before the Voting Deadline.

> **PLEASE COMPLETE AND/OR REVIEW ITEMS 1 THROUGH 5, <u>ANNEX A</u>, AND <u>ANNEX B</u>, AS APPLICABLE. IF THIS BENEFICIAL HOLDER BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**<u>Item 1</u>.    Vote on Plan.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of a Class B4—QVC Notes Claim, the CUSIP / ISIN for which is indicated by your Nominee on **Annex B** hereto, in the aggregate unpaid principal amount set forth below (insert amount in box below, unless otherwise completed by your Nominee; if the Amount of Claim has not been prefilled and you do not know the amount of your Class B4—QVC Notes Claims as of the Voting Record Date, please contact your Nominee for this information).

You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan in order to have your vote counted.  Please note that you must vote all of your Class B4—QVC Notes Claims either to accept or reject the Plan.  You may not split your vote.  If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote on account of your Class B4—QVC Notes Claims will not be counted.  If you indicate that you both accept and reject the Plan for your Class B4—QVC Notes Claims by checking both boxes below, your vote on account of your Class B4—QVC Notes Claims will not be counted.

The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor.

The undersigned Holder of the Class B4—QVC Notes Claims against the Debtors votes to (*please check <u>one and only one box</u>*):

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class B4 | QVC Notes Claims | $_____ | ☐ **ACCEPT** (VOTE FOR) THE PLAN<br>☐ **REJECT** (VOTE AGAINST) THE PLAN |

**<u>Item 2</u>.    Releases Under the Plan.**

**Please be advised that <u>Article VIII</u> of the Plan contains the following release provisions:**

<u>Article VIII.C</u> of the Plan contains the following release by the Debtors (the "<u>Debtor Release</u>"):

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, and subject to the completion of each of those certain investigations commenced by, and under the direction and authority of, each of the Disinterested Directors of QVCG, LINTA, QVC, and CBI, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or**

5

unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release, other than as specified above.

6

Article VIII.D of the Plan contains the following third-party release by the Releasing Parties (the "Third-Party Release"):

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or**

7

**(c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.**

Definitions related to the Debtor Release and the Third-Party Release:

**Under the Plan, "*Released Parties*"** means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Disinterested Directors; (d) the RCF Agent; (e) the QVC Notes Trustee; (f) the LINTA Notes Trustee; (g) the Consenting Stakeholders; (h) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (i) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (j) the Takeback Debt Agents; (k) the DIP LC Agent and other DIP LC Secured Parties; (*l*) the other Releasing Parties; and (m) each Related Party of each Entity in clause (a) through clause (*l*); *provided* that, in each case, an Entity shall not be a Released Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

**Under the Plan, "*Releasing Parties*"** means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the RCF Agent; (d) the QVC Notes Trustee; (e) the LINTA Notes Trustee; (f) the Consenting Stakeholders; (g) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (h) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (i) the Takeback Debt Agents; (j) the DIP LC Agent and other DIP LC Secured Parties; (k) Holders of Claims or Interests who vote to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (*l*) Holders of Claims or Interests who are presumed to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth in the Plan; (n) Holders of Claims or Interests who vote to reject the Plan but do not affirmatively opt out of the releases set forth in the Plan; (o) Holders of Claims or Interests who are deemed to reject the Plan and affirmatively opt into the releases provided by the Plan; (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q); and (q) each Related Party of each Entity in clause (a) through clause (p) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided* that, in each case, an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

<u>**Important Information Regarding the Releases**</u>

**As a "Releasing Party" under the Plan, you are deemed to provide the releases contained in <u>Article VIII.D</u> of the Plan, as set forth above. The election to withhold consent to grant such release is at your option. By opting out of the releases set forth in <u>Article VIII.D</u> of the Plan, you will forego the benefit of obtaining the releases set forth in <u>Article VIII</u> of the Plan if you are a Released Party in connection therewith. You will receive the same treatment on account of your Claim(s) or Interest(s) under the Plan regardless of whether you elect to not grant the release contained in <u>Article VIII.D</u> of the Plan.**

**You may elect to opt out of the releases contained in <u>Article VIII.D</u> of the Plan if you check the box below and (a) timely submit the Beneficial Holder Ballot but abstain from voting to accept or reject the Plan or (b) vote to reject the Plan. If you (x) fail to timely submit a Beneficial Holder Ballot either to your Nominee or the Claims and Noticing Agent, (y) submit the Beneficial Holder Ballot but abstain from voting to accept or reject**

8

the Plan without checking the box below, or (z) vote to accept or reject the Plan without checking the box below, in each case you will be deemed to consent to the releases set forth in Article VIII.D of the Plan.

You may also opt out of the releases by timely objecting to the releases contained in the Plan, either by means of (i) a formal objection filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before confirmation.

OPTIONAL RELEASE ELECTION.

☐ By checking this box, you elect to opt OUT of the Third-Party Release

Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation"):

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action and any claim arising from or related to any act or omission occurring from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Definitive Documents, the QVC New Equity Interests, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, or any wind-down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with the foregoing, any Avoidance Actions, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date, except for claims or Causes of Action arising out of or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and other applicable Laws, regulations, or rules protecting such Exculpated Parties from liability. In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in the Plan, each of the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the

9

Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.

Article VIII.F of the Plan establishes an injunction (the "Injunction"):

Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, liabilities, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such released Claims, Interests, liabilities, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action unless such Holder has timely Filed a motion expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan (as may be amended, restated, supplemented, or otherwise modified from time to time), shall be deemed to have consented to the injunction provisions set forth in the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Exculpated Parties or the 1125(e) Exculpation Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, in whole or in part, a claim or Cause of Action, as applicable, subject to the release and exculpation provisions of Article VIII hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim not released or subject to exculpation under the Plan, and (b) specifically authorizing such Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party or 1125(e) Exculpation Party. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunctions set forth above do not enjoin Claims or Causes of Action against the Exculpated Parties or the Released Parties, as applicable, that relate to (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement), executed to implement the Plan or any claim or obligation arising under the Plan; or

10

**(c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**Item 3.** **Other Class B4 QVC Notes Claims Beneficial Holder Ballots Submitted.**

By returning this Beneficial Holder Ballot, the undersigned Holder of the Class B4—QVC Notes Claim certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Class B4—QVC Notes Claims owned by such Beneficial Holder, except as identified in the following table, and (b) *all* Beneficial Holder Ballots submitted by the Beneficial Holder for Class B4—QVC Notes Claims indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 1 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

| Account Number with Other Nominee | DTC Participant Number and Name of Other Nominee | Principal Amount of Class B4 QVC Notes Claims Voted through Other Nominee | CUSIP of Class B4 QVC Notes Claims Voted through Other Nominee | Plan Vote of Other Class B4 QVC Notes Claims (Accept or Reject) | Opt-Out of Third-Party Release (Yes or No) |
|---|---|---|---|---|---|
| | | $ | | | |
| | | $ | | | |
| | | $ | | | |
| | | $ | | | |

**Item 4.** **Certifications**.

By signing this Beneficial Holder Ballot, the Beneficial Holder (or authorized signatory of such Beneficial Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Beneficial Holder (or is entitled to vote on behalf of such Beneficial Holder) of the Class B4—QVC Notes Claims described in Item 1 as of the Voting Record Date, (iii) it is an Eligible Holder (if voting prior to the commencement of the chapter 11 cases), and (iv) all authority conferred, or agreed to be conferred, pursuant to this Beneficial Holder Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

**Item 5.** **Beneficial Holder Information and Signature.**

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

11

12

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

_____

Email Address

**ANNEX A**

**INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT**

1.  Beneficial Holder Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Claims and Noticing Agent will tabulate all properly completed Beneficial Holder Ballots received on or before the Voting Deadline.**

2.  Complete the Beneficial Holding Ballot by providing all the information requested, signing, dating, and returning the Beneficial Holder Ballot directed by your Nominee. Any Beneficial Holder Ballot that is illegible, contains insufficient information to identify the Holder or to indicate whether the Holder intends to vote all of such Holder's Claims to accept or reject the Plan, is unsigned, or is submitted by or on behalf of a non-Eligible Holder prior to entry of the solicitation procedures order will not be counted. Beneficial Holder Ballots may not be submitted to the Claims and Noticing Agent by facsimile or email; *provided* that Master Ballots from Nominees and pre-validated Beneficial Holder Ballots from Beneficial Holders may be submitted directly to the Claims and Noticing Agent by email. If neither the "**accept**" nor "**reject**" box is checked in Item 1, both boxes are checked in Item 1, or the Beneficial Holder Ballot is otherwise not properly completed, executed, or timely returned, then the Beneficial Holder Ballot shall not be counted in determining acceptance or rejection of the Plan. Notwithstanding the foregoing, if your Nominee is collecting your vote through other customary methods, including (but not limited to) via a "voting information form," please follow the instructions set forth by your Nominee.

3.  Please vote, whether by this Beneficial Holder Ballot or otherwise, as directed by your Nominee. **The Claims and Noticing Agent will tabulate all properly completed pre-validated Beneficial Holder Ballots and Master Ballots received on or before the Voting Deadline. IF YOU ARE RETURNING YOUR BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**

4.  **IF, AND ONLY IF, YOU RECEIVED A "PRE-VALIDATED" BENEFICIAL HOLDER BALLOT FROM YOUR NOMINEE (AS DESCRIBED AT PAGE 4, ABOVE), YOU MAY SUBMIT SUCH PRE-VALIDATED BENEFICIAL HOLDER BALLOT DIRECTLY TO THE CLAIMS AND NOTICING AGENT BY ONLY ONE OF THE FOLLOWING METHODS:**

    **I.** Return your completed and signed "pre-validated" Beneficial Holder Ballot in the return envelope provided, if any, or otherwise by regular mail, overnight mail, or hand delivery to:

    **QVC Group Inc. Ballot Processing Center**
    **c/o Kroll Restructuring Administration LLC**
    **850 3rd Avenue, Suite 412**
    **Brooklyn, NY 11232**

    **(To arrange hand delivery of your Beneficial Holder Ballot, please email QVCballots@ra.kroll.com (with "QVC Ballot Submission" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.)**

    **OR**

    **II.** Return your completed and signed "pre-validated" Beneficial Holder Ballot by email to QVCBallots@ra.kroll.com (with "QVC Group Beneficial Holder Ballot" in the subject line).

5.  If it is your Nominee's customary practice to collect your vote via voter information form, email, telephone, electronic website link or other means in lieu of this Beneficial Holder Ballot, you may follow your Nominee's instructions regarding the submission of your vote.

3

6.   You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Beneficial Holder Ballot voting different or inconsistent Claims within a single Class under the Plan, the Beneficial Holder Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Beneficial Holder Ballots will not be counted.  An otherwise properly executed Beneficial Holder Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

7.   The Beneficial Holder Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

8.   The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

9.   If you cast more than one Beneficial Holder Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Beneficial Holder Ballot submitted to your Nominee or the Claims and Noticing Agent, as applicable, will supersede any prior Beneficial Holder Ballot.

10.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Beneficial Holder Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BENEFICIAL HOLDER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

13.  **IF YOU HAVE RECEIVED A DAMAGED BENEFICIAL HOLDER BALLOT, OR HAVE LOST YOUR BENEFICIAL HOLDER BALLOT, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (888) 575-5337 (U.S./CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.**

14.  THE CLAIMS AND NOTICING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

<u>**PLEASE RETURN YOUR BENEFICIAL HOLDER BALLOT PROMPTLY**</u>

**Please complete, sign, and date this Beneficial Holder Ballot and return it in accordance with the instructions of your Nominee.  For your vote to be counted, your voting instructions, whether in the form of a Beneficial Holder Ballot or otherwise according to directions received from your Nominee, must be <u>actually received</u> by your Nominee in sufficient time to be included on a timely submitted Master Ballot or your "pre-validated" Beneficial Holder Ballot must be actually received by the Claims and Noticing Agent by no later than the Voting Deadline, unless such Voting Deadline is extended by the Debtors.**

**ANNEX B**

Please check one, and only one, box below to indicate the CUSIP / ISIN to which this Beneficial Ballot pertains.  If you check more than one box below you risk having your vote invalidated.

| | Class B4 – QVC Notes Claims | |
|---|---|---|
| | **Notes Description** | **CUSIP / ISIN** |
| ☐ | 4.750% QVC Notes due 2027 | 747262AY9 / US747262AY90 |
| ☐ | 4.375% QVC Notes due 2028 | 747262AZ6 / US747262AZ65 |
| ☐ | 6.875% QVC Notes due 2029 (144A) | 747262BA0 / US747262BA06 |
| ☐ | 6.875% QVC Notes due 2029 (REGS) | U74900AM0 / USU74900AM03 |
| ☐ | 5.450% QVC Notes due 2034 | 747262AW3 / US747262AW35 |
| ☐ | 5.450% QVC Notes due 2034 (144A) | 747262AV5 / US747262AV51 |
| ☐ | 5.450% QVC Notes due 2034 (REGS) | U74900AK4 / USU74900AK47 |
| ☐ | 5.950% QVC Notes due 2043 | 747262AM5 / US747262AM52 |
| ☐ | 5.950% Senior Secured Note due 2043 (REGS) | U74900AL2 / USU74900AL20 |
| ☐ | 5.950% Senior Secured Note due 2043 (144A) | 747262AX1 / US747262AX18 |
| ☐ | 5.950% Senior Secured Note due 2043 (REGS) | U74900AE8 / USU74900AE86 |
| ☐ | 5.950% Senior Secured Note due 2043 (144A) | 747262AL7 / US747262AL79 |
| ☐ | 6.375% QVC Notes due 2067 | 747262301 / US7472623013 |
| ☐ | 6.250% QVC Notes due 2068 | 747262400 / US7472624003 |

**<u>Exhibit 3D</u>**

**Form of Master Ballot
for Class C3 LINTA Notes Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QVC GROUP, INC., *et al.*,[5] | ) | Case No. 26-90447 (ARP) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**MASTER BALLOT FOR VOTING ON THE JOINT**
**PREPACKAGED CHAPTER 11 PLAN OF QVC GROUP, INC.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS C3:  LINTA NOTES CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT CAREFULLY *BEFORE* COMPLETING THIS MASTER BALLOT.  THIS MASTER BALLOT IS BEING DISTRIBUTED TO YOU TO SOLICIT VOTES ON THE PLAN (AS DEFINED BELOW) (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION ("KROLL" OR THE "CLAIMS AND NOTICING AGENT") BY TELEPHONE AT (888) 575-5337 (USA OR CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL TO QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

**THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST NON-DEBTOR THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WILL BIND AFFECTED HOLDERS OF CLAIMS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS MASTER BALLOT.  IF HOLDERS OF CLAIMS DO NOT OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN, THE RELEASES WILL BE BINDING ON THEM.**

**ANY VOTES INCLUDED ON THIS MASTER BALLOT WILL NOT BE COUNTED, UNLESS THIS MASTER BALLOT IS COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY MAY 19, 2026, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

---

[5]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC.  The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

PRIOR TO COMMENCEMENT OF THE CHAPTER 11 CASES, ONLY HOLDERS OF CLASS C3 LINTA NOTES CLAIMS WHO ARE ELIGIBLE HOLDERS (AS DEFINED BELOW) ARE ENTITLED TO VOTE PURSUANT TO THIS MASTER BALLOT. ANY VOTE CAST ON THIS MASTER BALLOT PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER ON BEHALF OF A BENEFICIAL HOLDER WHO IS NOT ALSO AN ELIGIBLE HOLDER WILL NOT COUNT.

AN "ELIGIBLE HOLDER" IS A HOLDER OF A CLASS C3 LINTA NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS (I) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT")), (II) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501 OF REGULATION D  OF THE SECURITIES ACT), OR (III) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.

A "NON-ELIGIBLE HOLDER" IS A HOLDER OF A CLASS C3 LINTA NOTES CLAIM THAT IS NOT AN ELIGIBLE HOLDER.

QVC Group, Inc. and certain of its affiliates (collectively, the "Debtors," and together with their non-debtor affiliates, the "Company") are soliciting votes with respect to the Plan as set forth in the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). The Debtors may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Restructuring Transactions through the chapter 11 bankruptcy process and the Plan. Votes are being solicited from Holders of Claims in Class B3, Class B4, and Class C3 (the "Voting Classes").

This master ballot (the "Master Ballot") is being distributed to brokers, dealers, commercial banks, trust companies, or other agents or nominees (each a "Nominee") which hold positions in the Debtors' publicly traded securities in "street name" on behalf of the beneficial holders of such Claims identified on **Annex B** hereto (a "Beneficial Holder").

Specifically, this Master Ballot is being distributed to Nominees of Beneficial Holders of Claims against any of the Debtors, as of April 13, 2026 (the "Voting Record Date"), arising from or based on the LINTA Notes, the CUSIPs and ISINs for which are indicated on **Annex B** hereto. Nominees should use this Master Ballot to tabulate votes on behalf of Beneficial Holders of the LINTA Notes to accept or reject the Plan. **For additional discussion of the treatment and the rights of Holders of Class C3—LINTA Notes Claims under the Plan, please read the Disclosure Statement.**

Upon receipt of these materials, you should immediately forward to the Beneficial Holders (a) the Disclosure Statement, (b) the form of ballot for such holders (the "Beneficial Holder Ballot"), (c) the remainder of the Solicitation Package except the Master Ballot, and (d) a return envelope addressed to you, or as provided in the attached instructions. You may also transmit the Beneficial Holder Ballot and Disclosure Statement and collect votes from Beneficial Holders in accordance with your customary procedures to transmit materials to and solicit votes from Beneficial Holders, including the use of a voter information form ("VIF") in lieu of, or in addition to, a Beneficial Holder Ballot, electronic mail, telephone, and electronic website link (for access to solicitation materials and/or submission of vote).

**VOTES ON THIS MASTER BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOUR BENEFICIAL HOLDER CLIENTS HAVE CLASS C3—LINTA NOTES CLAIMS.**

**Please review the detailed instructions regarding how to complete and submit this Master Ballot attached hereto as Annex A (the "Master Ballot Instructions").** Once completed and returned in accordance with the attached Master Ballot Instructions, your Beneficial Holder clients' votes on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two thirds in amount and more than one half in

number of Claims that submit votes in that Voting Class vote to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, the Plan will be binding on all Holders of Claims or Interests, among others, regardless of whether such Holders voted to or were presumed to accept, voted to or were deemed to reject, or abstained from voting on the Plan. Subject to the terms and conditions of the Plan, you will receive the treatment identified in Article III.B.19 therein.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Master Ballot. If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional solicitation materials, you may obtain them from the Claims and Noticing Agent at no charge by: (a) accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/QVC (after the commencement of these Chapter 11 Cases); (b) writing to QVC Group Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (by first class mail, hand delivery, or overnight mail); (c) calling the Claims and Noticing Agent at (888) 575-5337 (USA or Canada, toll-free) or +1 (347) 292-4386 (international, toll); or (d) emailing QVCBallots@ra.kroll.com (with "QVC Group, Inc. Solicitation Inquiry" in the subject line). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: http://ecf.txsd.uscourts.gov.

Your receipt of this Master Ballot does not indicate that a Beneficial Holder's Claim(s) has been or will be Allowed. This Master Ballot may not be used for any purpose other than to cast a vote to accept or reject the Plan and to make an election to opt out of the Third-Party Release contained in Article VIII.D of the Plan, each on behalf of the Beneficial Holders of the LINTA Notes Claims. If you believe you have received this Master Ballot in error, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or e-mail address set forth above.

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class C3—LINTA Notes Claims under the Plan.

---

**PLEASE COMPLETE AND/OR REVIEW ITEMS 1 THROUGH 6, ANNEX A, AND ANNEX B, AS APPLICABLE. IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR BENEFICIAL HOLDER CLIENTS' VOTES MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.** **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a Nominee for the Beneficial Holders of the aggregate principal amount of the Claims indicated on **Annex B** hereto, and is the record holder of such notes;

☐ is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a Nominee that is the registered holder of the aggregate principal amount of the Claims indicated on **Annex B** hereto; or

☐ has been granted a proxy (an original of which is submitted herewith) from a Nominee or a Beneficial Holder that is the registered holder of the aggregate principal amount of the Claims indicated on **Annex B** hereto, and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Claims indicated on **Annex B** hereto.

**Item 2.** **Vote on Plan.**

The undersigned transmits the following votes of Beneficial Holders in respect of their Class C3—LINTA Notes Claims and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have submitted their Plan votes to the

3

undersigned, as Nominee, according to the Nominee's voting instructions (whether by Beneficial Holder Ballot or otherwise in accordance with their Nominee's instructions).[6]

| CLASS C3 – LINTA NOTES CLAIMS | | | | | |
|---|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder Who Voted in the Plan Class** | **Principal Amount Held as of the Voting Record Date** | **Item 2**<br>**Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below.** | | | **Item 3**<br>**If the box in Item 2 of the Beneficial Holder Ballot was completed, place an "X" in the column below.**<br><br>**OPT OUT of the Third-Party Release** |
| | | **Accept the Plan** | **or** | **Reject the Plan** | |
| 1. | $ | | | | |
| 2. | $ | | | | |
| 3. | $ | | | | |
| 4. | $ | | | | |
| 5. | $ | | | | |
| 6. | $ | | | | |
| **TOTALS** | $ | | | | |

**The vote on the Plan cast above will be applied to each applicable Debtor in the same manner and in the same amount as indicated above.**

**Item 3.    Releases Under the Plan.**

**Please be advised that Article VIII of the Plan contains the following release provisions:**

Article VIII.C of the Plan contains the following release by the Debtors (the "Debtor Release"):

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, and subject to the completion of each of those certain investigations commenced by, and under the direction and authority of,**

---

[6]   Indicate in the appropriate column the principal amount of the LINTA Notes Claims voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

4

each of the Disinterested Directors of QVCG, LINTA, QVC, and CBI, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act

5

or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release, other than as specified above.

Article VIII.D of the Plan contains the following third-party release by the Releasing Parties (the "Third-Party Release"):

Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before

6

or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.

Definitions related to the Debtor Release and the Third-Party Release:

Under the Plan, "*Released Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Disinterested Directors; (d) the RCF Agent; (e) the QVC Notes Trustee; (f) the LINTA Notes Trustee; (g) the Consenting Stakeholders; (h) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (i) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (j) the Takeback Debt Agents; (k) the DIP LC Agent and other DIP LC Secured Parties; (*l*) the other Releasing Parties; and (m) each Related Party of each Entity in clause (a) through clause (*l*); *provided* that, in each case, an Entity shall not be a Released Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

Under the Plan, "*Releasing Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the RCF Agent; (d) the QVC Notes Trustee; (e) the LINTA Notes Trustee; (f) the Consenting Stakeholders; (g) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (h) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (i) the Takeback Debt Agents; (j) the DIP LC Agent and other DIP LC Secured Parties; (k) Holders of Claims or Interests who vote to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (*l*) Holders of Claims or Interests who are presumed to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth in the Plan; (n) Holders of Claims or Interests who vote to reject the Plan but do not affirmatively opt out of the releases set forth in the Plan; (o) Holders of Claims or Interests who are deemed to reject the Plan and affirmatively opt into the releases provided by the Plan; (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q); and (q) each Related Party of each Entity in clause (a) through clause (p) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided* that, in each case,

7

an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation"):

**Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action and any claim arising from or related to any act or omission occurring from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Definitive Documents, the QVC New Equity Interests, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, or any wind-down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with the foregoing, any Avoidance Actions, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date, except for claims or Causes of Action arising out of or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and other applicable Laws, regulations, or rules protecting such Exculpated Parties from liability.  In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in the Plan, each of the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.**

Article VIII.F of the Plan establishes an injunction (the "Injunction"):

**Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, liabilities, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such released Claims, Interests, liabilities, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or**

means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action unless such Holder has timely Filed a motion expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan (as may be amended, restated, supplemented, or otherwise modified from time to time), shall be deemed to have consented to the injunction provisions set forth in the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Exculpated Parties or the 1125(e) Exculpation Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, in whole or in part, a claim or Cause of Action, as applicable, subject to the release and exculpation provisions of **Article VIII** hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim not released or subject to exculpation under the Plan, and (b) specifically authorizing such Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party or 1125(e) Exculpation Party. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunctions set forth above do not enjoin Claims or Causes of Action against the Exculpated Parties or the Released Parties, as applicable, that relate to (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement), executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

**Item 4.** **Certification as to Transcription of Information from Item 3 of the Beneficial Holder Ballots as to the LINTA Notes Voted Through Other Ballots.** The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 3 of the Beneficial Holder Ballot, identifying any Interests in LINTA Notes Claims for which such Beneficial Holders have submitted other Ballots (other than to the undersigned):

| Your Customer Account Number for Each Beneficial Holder that Completed Item 3 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL HOLDER BALLOTS: | | Principal Amount of Other LINTA Notes Claims Voted as of the Voting Record Date | Plan Vote of Other LINTA Notes Claims (Accept or Reject) | Opt-Out of Third-Party Release (Yes or No) |
|---|---|---|---|---|---|
| | Account Number with Other Nominee | DTC Participant Number and Name of Other Nominee | | | |
| | | | | | |

9

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Item 5.**     **Certifications.**

Upon execution of this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(g)   (i) it has received a copy of the Disclosure Statement, Master Ballot, Beneficial Holder Ballot, and the remainder of the Solicitation Package and has delivered the Disclosure Statement, Beneficial Holder Ballot, and the remainder of the Solicitation Package except the Master Ballot to the Beneficial Holders holding Class C3—LINTA Notes Claims through the undersigned; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered Holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(h)   the undersigned has properly disclosed:  (i) the number of Beneficial Holders voting Class C3—LINTA Notes Claims through the undersigned; (ii) the respective amounts of Class C3—LINTA Notes Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

(i)   if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class C3—LINTA Notes Claims, the undersigned confirms and attests to each of the certifications in Item 3 of the Beneficial Holder Ballot;

(j)   each such Beneficial Holder has certified to the undersigned that such Beneficial Holder is a Beneficial Holder and is otherwise eligible to vote on the Plan;

(k)   all votes cast on this Master Ballor prior to the commencement of the chapter 11 cases are on behalf of Eligible Holders; and

(l)   the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

**Item 6.**   **Nominee Information and Signature**

Name of Nominee:_____
(*print or type*)

DTC Participant Number:_____

Name of proxy holder or agent for Nominee (if applicable):

_____
(*print or type*)

Signature:_____

Name of Signatory:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Email Address:_____

Date Completed:_____

**ANNEX A**

**INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT**

1.   The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Master Ballot or in these Master Ballot instructions but not otherwise defined therein or herein shall have the meanings set forth in the Plan.

   **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

2.   To have the votes of your Beneficial Holders count, you should already have delivered to each such Holder (a) a copy of the Disclosure Statement, (b) a Beneficial Holder Ballot (which may be a pre-validated Beneficial Holder Ballot, as described in paragraph 3 below), (c) the remainder of the Solicitation Package (except the Master Ballot), and (d) a return envelope addressed to you (or the Claims and Noticing Agent in the case of a pre-validated Beneficial Holder Ballot), so such Holder may (i) return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Claims and Noticing Agent, so that the Claims and Noticing Agent actually receives the Master Ballot before the Voting Deadline or (ii) in the case of a pre-validated Beneficial Holder Ballot, return their Beneficial Holder Ballot to the Claims and Noticing Agent before the Voting Deadline.  Notwithstanding the foregoing, you may transmit the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders in accordance with your customary procedures to transmit materials to and collect votes from Beneficial Holders.

3.   You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (a) name and DTC Participant Number of the Nominee and (b) the principal amount of the Class C3—LINTA Notes Claims held by the Nominee for the Beneficial Holder, (ii) applying a medallion guarantee stamp to the Beneficial Holder Ballot to certify the principal amount of the Class C3—LINTA Notes Claims owned by the Beneficial Holder as of the Voting Record Date (in lieu of a medallion guarantee stamp a list of authorized signers may be provided), and (iii) forwarding such Beneficial Holder Ballot, together with the Solicitation Package, including a preaddressed, postage-paid return envelope addressed to, and provided by, the Claims and Noticing Agent, to the Beneficial Holder.  The Beneficial Holder will be required to complete and/or review the information requested and/or contained in Items 1, 2, 3, 4, and 5 of the Beneficial Holder Ballot and return the pre-validated Beneficial Holder Ballot directly to the Claims and Noticing Agent so that it is actually received before the Voting Deadline.

4.   With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must:  (a) retain such Beneficial Holder Ballots in your files and transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (b) execute the Master Ballot; and (c) deliver the Master Ballot to the Claims and Noticing Agent in accordance with these instructions.  Prior to the entry of the solicitation procedures order, **any Beneficial Holder Ballot received from a Beneficial Holder who has not certified therein that it is an Eligible Holder should not be included in this Master Ballot, and will not be counted.**

5.   Please keep any records of Beneficial Holder Ballots, including records of the Beneficial Holders to whom pre-validated Beneficial Holder Ballots were delivered, for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court).  You may be ordered to produce the Beneficial Holder Ballots to the Debtors or the Bankruptcy Court.

6.   For the avoidance of doubt, if it is your customary practice to disseminate solicitation materials and information to, and collect votes from, your Beneficial Holder clients via voter information form, e-mail, telephone, or other means, including electronic website link, you may employ those customary practices to distribute solicitation information to, and collect votes from, the Beneficial Holders in lieu of hard copies of Beneficial Holder Ballots and related solicitation documents.

7.   If you are both the Nominee and Beneficial Holder, and you wish to vote such LINTA Notes Claims for which you are a Beneficial Holder, please return a Master Ballot for such Claims.

8.  In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

9.  The Master Ballot may not be used for any purpose other than to vote to accept or reject the Plan.

10. The Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

11. The following Master Ballots or Beneficial Holder Ballots (each, a "Ballot") shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (b) any Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (c) any unsigned Ballot, (d) any Ballot not marked to accept or reject the Plan, marked both to accept and reject the Plan, or marked to partially accept and partially reject the Plan, and (e) prior to entry of the solicitation procedures order, any Beneficial Holder Ballot submitted by or on behalf of a non-Eligible Holder.

12. If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors.  The method of delivery of the Master Ballot to the Claims and Noticing Agent is at your election and risk.

13. If a Beneficial Holder submits Ballots for multiple LINTA Notes Claims, whether held in other accounts or other record names, and such Ballots indicate different or inconsistent votes to accept or reject the Plan, then all such Ballots will not be counted.

14. If a Beneficial Holder submits more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Nominee or Claims and Noticing Agent, as applicable, will supersede any prior Ballot.

15. If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Ballot belonging to a Beneficial Holder of a Claim, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot.

16. To the extent that conflicting votes or "over votes" are submitted by a Nominee, the Claims and Noticing Agent, in good faith, will attempt to reconcile discrepancies with the Nominee.  To the extent that any over votes are not reconcilable prior to the preparation of the vote certification, the Claims and Noticing Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or pre-validated Beneficial Holder Ballots that contained the over vote, but only to the extent of the Nominee's position in the applicable security, as reflected in the security position report provided by The Depository Trust Company as of the Voting Record Date.

17. The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

18. There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

19. Please be sure to sign and date your Master Ballot.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

2

20. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

21. **IF YOU HAVE RECEIVED A DAMAGED MASTER BALLOT OR HAVE LOST YOUR MASTER BALLOT, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (888) 575-5337 (USA OR CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.**

22. **THE CLAIMS AND NOTICING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**PLEASE RETURN YOUR MASTER BALLOT PROMPTLY**

| |
|---|
| **THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS MAY 19, 2026, AT 11:59 P.M., PREVAILING CENTRAL TIME.**<br><br>**PLEASE SUBMIT THIS MASTER BALLOT BY *ONE* OF THE FOLLOWING METHODS SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE VOTING DEADLINE.** |
| **If Submitting Your Master Ballot via E-mail:**<br><br>Please send your completed and signed Master Ballot to QVCBallots@ra.kroll.com (with "QVC Group Master Ballot" in the subject line). |
| **If Submitting Your Master Ballot via First Class Mail, Overnight Courier or Hand Delivery:**<br><br>Submit your completed and signed Master Ballot by first class mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:<br><br>QVC Group Inc. Ballot Processing Center<br>c/o Kroll Restructuring Administration LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, NY 11232<br><br>(To arrange hand delivery of your Ballot, please email QVCballots@ra.kroll.com (with "QVC Ballot Submission" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.) |
| IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (888) 575-5337 (USA OR CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE. |

3

**ANY MASTER BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE CONDITIONAL DISCLOSURE STATEMENT ORDER OR THE MASTER BALLOT INSTRUCTIONS WILL NOT BE COUNTED.**

**THIS MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

4

**ANNEX B**

Please check one, and only one, box below to indicate the CUSIP / ISIN to which this Master Ballot pertains.  If you check more than one box below the Beneficial Holders' votes submitted on this Master Ballot may be invalidated.

| | Class C3 – LINTA Notes Claims | |
|---|---|---|
| | **Notes Description** | **CUSIP / ISIN** |
| ☐ | 8.500% LINTA Notes due 2029 | 530715AD3 / US530715AD31 |
| ☐ | 4.000% LINTA Exchangeable Notes due 2029 | 530715AG6 / US530715AG61 |
| ☐ | 4.000% LINTA Exchangeable Notes due 2029 (144A) | 530715AF8 / US530715AF88 |
| ☐ | 4.000% LINTA Exchangeable Notes due 2029 (REGS) | EC1980720 / USEC19807207 |
| ☐ | 8.250% Senior Secured LINTA Notes due 2030 | 530715AJ0 / US530715AJ01 |
| ☐ | 3.750% LINTA Exchangeable Notes due 2030 | 530715AL5 / US530715AL56 |
| ☐ | 3.750% LINTA Exchangeable Notes due 2030 (144A) | 530715AK7 / US530715AK73 |

## Exhibit 3E

## Form of Beneficial Holder Ballot
## for Class C3 LINTA Notes Claims

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QVC GROUP, INC., *et al.*,[7] | ) | Case No. 26-90447 (ARP) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**BENEFICIAL HOLDER BALLOT FOR VOTING ON**
**THE JOINT PREPACKAGED CHAPTER 11 PLAN OF QVC GROUP, INC.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS C3: LINTA NOTES CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THE BENEFICIAL HOLDER BALLOT CAREFULLY *BEFORE* COMPLETING THIS BENEFICIAL HOLDER BALLOT.  THIS BENEFICIAL HOLDER BALLOT IS BEING DISTRIBUTED TO YOU TO SOLICIT YOUR VOTE ON THE PLAN (AS DEFINED BELOW) (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).**

**IF YOU HAVE ANY GENERAL QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT OR THE SOLICITATION MATERIALS, INCLUDING THE DISCLOSURE STATEMENT AND PLAN (BOTH AS DEFINED BELOW) PROVIDED HEREWITH, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION ("KROLL" OR THE "CLAIMS AND NOTICING AGENT") BY TELEPHONE AT (888) 575-5337 (USA OR CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE REFER SPECIFIC QUESTIONS ABOUT VOTING INSTRUCTIONS AND PROCEDURES PROVIDED BY YOUR NOMINEE TO YOUR NOMINEE (AS DEFINED BELOW).**

**THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST NON-DEBTOR THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE BANKRUPTCY COURT, WILL BIND AFFECTED HOLDERS OF CLAIMS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BENEFICIAL HOLDER BALLOT.  IF HOLDERS OF CLAIMS DO NOT OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN, THE RELEASES WILL BE BINDING ON THEM.**

---

[7]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC.  The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

**TO BE COUNTED, YOUR VOTE, WHETHER SUBMITTED USING THIS BENEFICIAL HOLDER BALLOT OR OTHERWISE ACCORDING TO YOUR NOMINEE'S INSTRUCTIONS, MUST BE RECEIVED IN TIME TO ALLOW YOUR NOMINEE TO ENTER YOUR VOTE IN A MASTER BALLOT AND SUBMIT SUCH MASTER BALLOT SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY MAY 19, 2026, AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE"). PLEASE NOTE THAT YOUR NOMINEE'S INTERNAL DEADLINE FOR SUBMISSION OF PLAN VOTES WILL LIKELY BE AT MINIMUM ONE OR TWO BUSINESS DAYS PRIOR TO THE COURT-MANDATED VOTING DEADLINE REFERENCED ABOVE.**

**PRIOR TO COMMENCEMENT OF THE CHAPTER 11 CASES, ONLY HOLDERS OF CLASS C3 LINTA NOTES CLAIMS WHO ARE ELIGIBLE HOLDERS (AS DEFINED BELOW) ARE ENTITLED TO VOTE PURSUANT TO THIS BENEFICIAL HOLDER BALLOT. ANY VOTE CAST ON THIS BENEFICIAL BALLOT PRIOR TO ENTRY OF THE SOLICITATION PROCEDURES ORDER BY A NON-ELIGIBLE HOLDER WILL NOT COUNT.**

**AN "ELIGIBLE HOLDER" IS A HOLDER OF A CLASS C3 LINTA NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS (I) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT")), (II) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501 OF REGULATION D  OF THE SECURITIES ACT), OR (III) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.**

**A "NON-ELIGIBLE HOLDER" IS A HOLDER OF A CLASS C3 LINTA NOTES CLAIM THAT IS NOT AN ELIGIBLE HOLDER.**

QVC Group, Inc. and certain of its affiliates (collectively, the "Debtors," and together with their non-debtor affiliates, the "Company")  are soliciting votes with respect to the *Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or the Disclosure Statement, as applicable. Votes are being solicited from Holders of Claims in Class B3, Class B4, and Class C3 (the "Voting Classes").

You are receiving this ballot (this "Beneficial Holder Ballot") because you are a beneficial holder (a "Beneficial Holder") of a Class C3—LINTA Notes Claim as of April 13, 2026 (the "Voting Record Date"), arising from or based on your beneficial ownership of the LINTA Notes and the LINTA Notes through your broker, dealer, commercial bank, trust company, or other agent or nominee (each of the foregoing, a "Nominee"). The CUSIPs and ISINs for the LINTA Notes are set forth in **Annex B** hereto. Accordingly, you have a right to (a) vote to accept or reject the Plan and (b) subject to the limitations set forth herein, opt out of the releases set forth in Article VIII.D of the Plan. **For additional discussion of the treatment and the rights of Holders of Class C3—LINTA Notes Claims under the Plan, please read the Disclosure Statement.**

You can cast your vote (i) through this Beneficial Holder Ballot and return it to the Nominee through which you hold your LINTA Notes Claims, who will then submit a Master Ballot (the "Master Ballot") on behalf of its Beneficial Holders of the Class C3—LINTA Notes Claims, or (ii) otherwise in accordance with the instructions provided by your Nominee.

**YOUR VOTE ON THIS BENEFICIAL HOLDER BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHOM YOU HAVE CLASS C3—LINTA NOTES CLAIMS.**

2

**Please review the detailed instructions regarding how to complete and submit this Beneficial Holder Ballot attached hereto as <u>Annex A</u> (the "<u>Beneficial Holder Ballot Instructions</u>").**  Once completed and returned in accordance with the attached Beneficial Holder Ballot Instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two thirds in amount and more than one half in number of Claims that submit votes in that Voting Class vote to accept the Plan.  The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, the Plan will be binding on all Holders of Claims or Interests, among others, regardless of whether such Holders voted to or were presumed to accept, voted to or were deemed to reject, or abstained from voting on the Plan.  Subject to the terms and conditions of the Plan, you will receive the treatment identified in <u>Article III.B.19</u> therein.

If you have any questions on how to properly complete this Beneficial Holder Ballot, the voting procedures, or the voting instructions you received from your Nominee, please contact your Nominee.  For answers to general questions about the solicitation of Plan votes and to request solicitation materials, please contact the Claims and Noticing Agent at (888) 575-5337 (U.S./Canada, toll-free) OR +1 (347) 292-4386 (International, toll) or by emailing QVCBallots@ra.kroll.com (with "QVC Group, Inc. Solicitation Inquiry" in the subject line).  Please be advised that the Claims and Noticing Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class C3—LINTA Notes Claim under the Plan.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the package (the "<u>Solicitation Package</u>") you are receiving with this Beneficial Holder Ballot.  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional solicitation materials, you may obtain them from the Claims and Noticing Agent at no charge by:  (a) accessing the Debtors' restructuring website at <u>https://restructuring.ra.kroll.com/QVC</u> (after the commencement of these Chapter 11 Cases); (b) writing to QVC Group Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 (by first class mail, hand delivery, or overnight mail); (c) calling the Debtors' restructuring hotline at (888) 575-5337 (U.S./Canada, toll-free) OR +1 (347) 292-4386 (International, toll); or (d) emailing QVCBallots@ra.kroll.com (with "QVC Group, Inc. Solicitation Inquiry" in the subject line).  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at:  <u>http://ecf.txsd.uscourts.gov</u>.

Your receipt of this Beneficial Holder Ballot does not indicate that a Beneficial Holder's Claim(s) has been or will be Allowed.  This Beneficial Holder Ballot may not be used for any purpose other than to cast a vote to accept or reject the Plan and to make an election to opt out of the Third-Party Release contained in <u>Article VIII.D</u> of the Plan.  If you believe you have received this Beneficial Holder Ballot in error, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in Class C3—LINTA Notes Claims under the Plan.

Unless otherwise instructed by your Nominee, in order for your vote to count, your Nominee must receive your vote, whether by this Beneficial Holder Ballot or otherwise according to your Nominee's voting instructions, in sufficient time for your Nominee to include your vote on a Master Ballot that must be received by the Claims and Noticing Agent on or before the Voting Deadline.  Please allow sufficient time for your vote to be included on the Master Ballot completed by your Nominee.  If a Master Ballot recording your vote is not **actually received** by the Claims and Noticing Agent by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

Your Nominee may choose to "pre-validate" your Beneficial Holder Ballot by signing the Beneficial Holder Ballot and adding (i) the Nominee's DTC participant number and a medallion guarantee stamp confirming the amount of your Class C3—LINTA Notes as of the Voting Record Date, (ii) the Beneficial Holder's account number, and (iii) the amount of Claims held by the Beneficial Holder as of the Voting Record Date.  As part of the pre-validation process, your Nominee will instruct you to submit your pre-validated Beneficial Holder Ballot directly to the Claims and Noticing Agent on or before the Voting Deadline.

PLEASE COMPLETE AND/OR REVIEW ITEMS 1 THROUGH 5, **ANNEX A**, AND **ANNEX B**, AS APPLICABLE. IF THIS BENEFICIAL HOLDER BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.    Vote on Plan.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of a Class—C3 LINTA Notes Claim, the CUSIP / ISIN for which is indicated by your Nominee on **Annex B** hereto, in the aggregate unpaid principal amount set forth below (insert amount in box below, unless otherwise completed by your Nominee; if the Amount of Claim has not been prefilled and you do not know the amount of your Class C3—LINTA Notes Claims as of the Voting Record Date, please contact your Nominee for this information).

You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan in order to have your vote counted.  Please note that you must vote all of your Class C3—LINTA Notes Claims either to accept or reject the Plan.  You may not split your vote.  If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote on account of your Class C3—LINTA Notes Claims will not be counted.  If you indicate that you both accept and reject the Plan for your Class C3—LINTA Notes Claims by checking both boxes below, your vote on account of your Class C3—LINTA Notes Claims will not be counted.

The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor.

The undersigned Holder of the Class C3—LINTA Notes Claims against the Debtors votes to (*please check one and only one box*):

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class C3 | LINTA Notes Claims | $_____ | ☐ **ACCEPT** (VOTE FOR) THE PLAN <br> ☐ **REJECT** (VOTE AGAINST) THE PLAN |

**Item 2.    Releases Under the Plan.**

**Please be advised that Article VIII of the Plan contains the following release provisions:**

Article VIII.C of the Plan contains the following release by the Debtors (the "Debtor Release"):

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, and subject to the completion of each of those certain investigations commenced by, and under the direction and authority of, each of the Disinterested Directors of QVCG, LINTA, QVC, and CBI, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or**

4

unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release, other than as specified above.

Article VIII.D of the Plan contains the following third-party release by the Releasing Parties (the "Third-Party Release"):

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or**

6

**(c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.**

Definitions related to the Debtor Release and the Third-Party Release:

**Under the Plan, "*Released Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Disinterested Directors; (d) the RCF Agent; (e) the QVC Notes Trustee; (f) the LINTA Notes Trustee; (g) the Consenting Stakeholders; (h) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (i) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (j) the Takeback Debt Agents; (k) the DIP LC Agent and other DIP LC Secured Parties; (*l*) the other Releasing Parties; and (m) each Related Party of each Entity in clause (a) through clause (*l*); *provided* that, in each case, an Entity shall not be a Released Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.**

**Under the Plan, "*Releasing Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the RCF Agent; (d) the QVC Notes Trustee; (e) the LINTA Notes Trustee; (f) the Consenting Stakeholders; (g) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (h) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (i) the Takeback Debt Agents; (j) the DIP LC Agent and other DIP LC Secured Parties; (k) Holders of Claims or Interests who vote to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (*l*) Holders of Claims or Interests who are presumed to accept the Plan and do not affirmatively opt out of the releases set forth in the Plan; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth in the Plan; (n) Holders of Claims or Interests who vote to reject the Plan but do not affirmatively opt out of the releases set forth in the Plan; (o) Holders of Claims or Interests who are deemed to reject the Plan and affirmatively opt into the releases provided by the Plan; (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q); and (q) each Related Party of each Entity in clause (a) through clause (p) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided* that, in each case, an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.**

<u>**Important Information Regarding the Releases**</u>

**As a "Releasing Party" under the Plan, you are deemed to provide the releases contained in <u>Article VIII.D</u> of the Plan, as set forth above. The election to withhold consent to grant such release is at your option. By opting out of the releases set forth in <u>Article VIII.D</u> of the Plan, you will forego the benefit of obtaining the releases set forth in <u>Article VIII</u> of the Plan if you are a Released Party in connection therewith. You will receive the same treatment on account of your Claim(s) or Interest(s) under the Plan regardless of whether you elect to not grant the release contained in <u>Article VIII.D</u> of the Plan.**

**You may elect to opt out of the releases contained in <u>Article VIII.D</u> of the Plan if you check the box below and (a) timely submit the Beneficial Holder Ballot but abstain from voting to accept or reject the Plan or (b) vote to reject the Plan. If you (x) fail to timely submit a Beneficial Holder Ballot either to your Nominee or the Claims and Noticing Agent, (y) submit the Beneficial Holder Ballot but abstain from voting to accept or reject**

7

the Plan without checking the box below, or (z) vote to accept or reject the Plan without checking the box below, in each case you will be deemed to consent to the releases set forth in Article VIII.D of the Plan.

You may also opt out of the releases by timely objecting to the releases contained in the Plan, either by means of (i) a formal objection filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors in writing, including by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or in writing, including via electronic mail, as applicable, before confirmation.

**OPTIONAL RELEASE ELECTION.**

☐ **By checking this box, you elect to opt OUT of the Third-Party Release**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation"):

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action and any claim arising from or related to any act or omission occurring from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Definitive Documents, the QVC New Equity Interests, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, or any wind-down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with the foregoing, any Avoidance Actions, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date, except for claims or Causes of Action arising out of or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and other applicable Laws, regulations, or rules protecting such Exculpated Parties from liability. In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in the Plan, each of the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the

8

**Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.**

Article VIII.F of the Plan establishes an injunction (the "Injunction"):

**Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, liabilities, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such released Claims, Interests, liabilities, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action unless such Holder has timely Filed a motion expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action released or settled pursuant to the Plan.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan (as may be amended, restated, supplemented, or otherwise modified from time to time), shall be deemed to have consented to the injunction provisions set forth in the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Exculpated Parties or the 1125(e) Exculpation Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, in whole or in part, a claim or Cause of Action, as applicable, subject to the release and exculpation provisions of Article VIII hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim not released or subject to exculpation under the Plan, and (b) specifically authorizing such Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party or 1125(e) Exculpation Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

**Notwithstanding anything to the contrary in the foregoing, the injunctions set forth above do not enjoin Claims or Causes of Action against the Exculpated Parties or the Released Parties, as applicable, that relate to (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement), executed to implement the Plan or any claim or obligation arising under the Plan; or**

9

**(c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**Item 3.**  **Other Class C3 LINTA Notes Claims Beneficial Holder Ballots Submitted.**

By returning this Beneficial Holder Ballot, the undersigned Holder of the Class C3—LINTA Notes Claim certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Class C3—LINTA Notes Claims owned by such Beneficial Holder, except as identified in the following table, and (b) *all* Beneficial Holder Ballots submitted by the Beneficial Holder for Class C3—LINTA Notes Claims indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 1 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

| Account Number with Other Nominee | DTC Participant Number and Name of Other Nominee | Principal Amount of Class C3 LINTA Notes Claims Voted through Other Nominee | Plan Vote of Other Class C3 LINTA Notes Claims (Accept or Reject) | Opt-Out of Third-Party Release (Yes or No) |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

**Item 4.**  **Certifications**.

By signing this Beneficial Holder Ballot, the Beneficial Holder (or authorized signatory of such Beneficial Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Beneficial Holder (or is entitled to vote on behalf of such Beneficial Holder) of the Class C3—LINTA Notes Claims described in Item 1 as of the Voting Record Date, (iii) it is an Eligible Holder (if voting prior to the commencement of the chapter 11 cases), and (iv) all authority conferred, or agreed to be conferred, pursuant to this Beneficial Holder Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

**Item 5.**  **Beneficial Holder Information and Signature.**

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
Email Address

**ANNEX A**

**INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT**

1. Beneficial Holder Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Claims and Noticing Agent will tabulate all properly completed Beneficial Holder Ballots received on or before the Voting Deadline.**

2. Complete the Beneficial Holding Ballot by providing all the information requested, signing, dating, and returning the Beneficial Holder Ballot directed by your Nominee. Any Beneficial Holder Ballot that is illegible, contains insufficient information to identify the Holder or to indicate whether the Holder intends to vote all of such Holder's Claims to accept or reject the Plan, is unsigned, or is submitted by or on behalf of a non-Eligible Holder prior to entry of the solicitation procedures order will not be counted. Beneficial Holder Ballots may not be submitted to the Claims and Noticing Agent by facsimile or email; *provided* that Master Ballots from Nominees and pre-validated Beneficial Holder Ballots from Beneficial Holders may be submitted directly to the Claims and Noticing Agent by email. If neither the "**accept**" nor "**reject**" box is checked in Item 1, both boxes are checked in Item 1, or the Beneficial Holder Ballot is otherwise not properly completed, executed, or timely returned, then the Beneficial Holder Ballot shall not be counted in determining acceptance or rejection of the Plan. Notwithstanding the foregoing, if your Nominee is collecting your vote through other customary methods, including (but not limited to) via a "voting information form," please follow the instructions set forth by your Nominee.

3. Please vote, whether by this Beneficial Holder Ballot or otherwise, as directed by your Nominee. **The Claims and Noticing Agent will tabulate all properly completed pre-validated Beneficial Holder Ballots and Master Ballots received on or before the Voting Deadline. IF YOU ARE RETURNING YOUR BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE, PLEASE RETURN IT BY THE DEADLINE PROVIDED BY YOUR NOMINEE TO ALLOW SUFFICIENT TIME FOR YOUR VOTE TO BE INCLUDED ON A MASTER BALLOT AND FORWARDED TO THE VOTING AGENT BY THE VOTING DEADLINE.**

4. **IF, AND ONLY IF, YOU RECEIVED A "PRE-VALIDATED" BENEFICIAL HOLDER BALLOT FROM YOUR NOMINEE (AS DESCRIBED AT PAGE 3, ABOVE), YOU MAY SUBMIT SUCH PRE-VALIDATED BENEFICIAL HOLDER BALLOT DIRECTLY TO THE CLAIMS AND NOTICING AGENT BY ONLY ONE OF THE FOLLOWING METHODS:**

    **I.** Return your completed and signed "pre-validated" Beneficial Holder Ballot in the return envelope provided, if any, or otherwise by regular mail, overnight mail, or hand delivery to:

    **QVC Group Inc. Ballot Processing Center**
    **c/o Kroll Restructuring Administration LLC**
    **850 3rd Avenue, Suite 412**
    **Brooklyn, NY 11232**

    **(To arrange hand delivery of your Beneficial Holder Ballot, please email QVCballots@ra.kroll.com (with "QVC Ballot Submission" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.)**

    **OR**

    **II.** Return your completed and signed "pre-validated" Beneficial Holder Ballot by email to QVCBallots@ra.kroll.com (with "QVC Group Beneficial Holder Ballot" in the subject line).

5. If it is your Nominee's customary practice to collect your vote via voter information form, email, telephone, electronic website link or other means in lieu of this Beneficial Holder Ballot, you may follow your Nominee's instructions regarding the submission of your vote.

6.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Beneficial Holder Ballot voting different or inconsistent Claims within a single Class under the Plan, the Beneficial Holder Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Beneficial Holder Ballots will not be counted.  An otherwise properly executed Beneficial Holder Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

7.  The Beneficial Holder Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

8.  The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

9.  If you cast more than one Beneficial Holder Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Beneficial Holder Ballot submitted to your Nominee or the Claims and Noticing Agent, as applicable, will supersede any prior Beneficial Holder Ballot.

10. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Beneficial Holder Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BENEFICIAL HOLDER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

13. **IF YOU HAVE RECEIVED A DAMAGED BENEFICIAL HOLDER BALLOT OR HAVE LOST YOUR BENEFICIAL HOLDER BALLOT, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT OR THE SOLICITATION PROCEDURES, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (888) 575-5337 (USA OR CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCBALLOTS@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.**

14. THE CLAIMS AND NOTICING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**PLEASE RETURN YOUR BENEFICIAL HOLDER BALLOT PROMPTLY**

**Please complete, sign, and date this Beneficial Holder Ballot and return it in accordance with the instructions of your Nominee.  For your vote to be counted, your voting instructions, whether in the form of a Beneficial Holder Ballot or otherwise according to directions received from your Nominee, must be actually received by your Nominee in sufficient time to be included on a timely submitted Master Ballot or your "pre-validated" Beneficial Holder Ballot must be actually received by the Claims and Noticing Agent by no later than the Voting Deadline, unless such Voting Deadline is extended by the Debtors.**

**ANNEX B**

Please check one, and only one, box below to indicate the CUSIP / ISIN to which this Beneficial Ballot pertains.  If you check more than one box below, you risk having your vote invalidated.

| | Class C3 – LINTA Notes Claims | |
|---|---|---|
| | **Notes Description** | **CUSIP / ISIN** |
| ☐ | 8.500% LINTA Notes due 2029 | 530715AD3 / US530715AD31 |
| ☐ | 4.000% LINTA Exchangeable Notes due 2029 | 530715AG6 / US530715AG61 |
| ☐ | 4.000% LINTA Exchangeable Notes due 2029 (144A) | 530715AF8 / US530715AF88 |
| ☐ | 4.000% LINTA Exchangeable Notes due 2029 (REGS) | EC1980720 / USEC19807207 |
| ☐ | 8.250% Senior Secured LINTA Notes due 2030 | 530715AJ0 / US530715AJ01 |
| ☐ | 3.750% LINTA Exchangeable Notes due 2030 | 530715AL5 / US530715AL56 |
| ☐ | 3.750% LINTA Exchangeable Notes due 2030 (144A) | 530715AK7 / US530715AK73 |

**Exhibit 4A**

**Notice of Non-Voting Status and Opt-Out Form**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QVC GROUP, INC., *et al.*,[1] | ) | Case No. 26-90447 (ARP) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF (I) NON-VOTING STATUS OF**
**CERTAIN UNIMPAIRED CLAIMS PRESUMED TO**
**ACCEPT AND (II) OPPORTUNITY FOR HOLDERS OF SUCH**
**CLAIMS AND INTERESTS TO OPT OUT OF THE PLAN RELEASE**

**THIS NOTICE AND OPT-OUT FORM AFFECTS YOUR LEGAL RIGHTS.  PLEASE READ THIS OPT-OUT FORM CAREFULLY.  UNLESS YOU CHECK THE BOX IN ITEM 2 OF THE ATTACHED OPT-OUT FORM, YOU WILL BE HELD TO FOREVER RELEASE (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DISINTERESTED DIRECTORS; (D) THE RCF AGENT; (E) THE QVC NOTES TRUSTEE; (F) THE LINTA NOTES TRUSTEE; (G) THE CONSENTING STAKEHOLDERS; (H) THE EXIT ABL FACILITY AGENT AND EXIT ABL FACILITY LENDERS; (I) THE SYNDICATED EXIT FINANCING AGENT AND SYNDICATED EXIT FINANCING LENDERS; (J) THE TAKEBACK DEBT AGENTS; (K) THE DIP LC AGENT AND OTHER DIP LC SECURED PARTIES; (L) THE OTHER RELEASING PARTIES; AND (M) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (L); PROVIDED THAT, IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (I) AFFIRMATIVELY OPTS OUT OF THE RELEASES IN THE PLAN; OR (II) TIMELY OBJECTS TO THE RELEASES IN THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE THE COMBINED HEARING.IF YOU DO NOT WANT TO PROVIDE THESE RELEASES, YOU MUST CHECK THE BOX IN ITEM 2 OF THE ATTACHED OPT-OUT FORM, COMPLETE THIS OPTOUT FORM, SIGN IT, AND RETURN IT SO IT IS ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC ("KROLL" OR THE "CLAIMS AND NOTICING AGENT") ON OR BEFORE 11:59 P.M. PREVAILING CENTRAL TIME ON MAY 19, 2026.**

On April 16, 2026, QVC Group, Inc. and certain of its affiliates (collectively, the "Debtors," and together with their non-debtor affiliates, the "Company") commenced solicitation of votes on the *Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended,

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC.  The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Plan") prior to the filing of these Chapter 11 Cases (the "Solicitation Date"). On the Solicitation Date, the Debtors, among other things, distributed the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] to Holders of Claims, in each case, as of the applicable voting record date (the "Voting Record Date").

The Bankruptcy Court can confirm the Plan and bind you if the Plan is accepted by the Holders of at least two thirds in amount and more than one half in number of the Claims in each Impaired Class of Claims who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) Bankruptcy Code. If the Plan is confirmed by the Court, it will be binding on you even though you are not entitled to vote on the Plan and are presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, as set forth below. As further described below, in order to opt out of the Third-Party Release (defined below), you must complete, sign and return this Opt-Out Form to the Claims and Noticing Agent by no later than 11:59 p.m. (prevailing Central Time) on May 19, 2026.

You are receiving this notice and the attached opt-out form because you are a Holder or potential Holder of a Claim in one of the following Plan classes not entitled to vote as of the Voting Record Date (the "Unimpaired Non-Voting Classes"). As such, you are (1) presumed to accept, and as a result, **not** entitled to vote on the Plan; and (2) entitled to opt out of the releases provided by the Plan. If the Plan is confirmed and consummated, Holders of Allowed Claims in the Unimpaired Non-Voting Classes will receive the following treatment on the Effective Date:

| QVCG | | | |
|---|---|---|---|
| Class | Claims / Interests | Treatment of Claim / Interest | Voting Rights |
| Class A1 | Other Secured Claims against QVCG | Each Holder of an Allowed Other Secured Claim against QVCG shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Secured Claim, as determined by the applicable Debtors:<br><br>(i) payment in full in Cash; or<br>(ii) such other treatment rendering such Allowed Other Secured Claim Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class A2 | Other Priority Claims against QVCG | Each Holder of an Allowed Other Priority Claim against QVCG shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Priority Claim, treatment in a manner consistent with section 1129(a) of the Bankruptcy Code. | Not Entitled to Vote (Presumed to Accept) |

---

[2]   Capitalized terms used but not defined herein have the meanings set forth in the Plan or the Disclosure Statement, as applicable.

| | | QVCG | | |
|---|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | | **Voting Rights** |
| Class A3 | General Unsecured Claims against QVCG | Each Holder of an Allowed General Unsecured Claim against QVCG shall receive, in full and final satisfaction, settlement, release, and discharge of such General Unsecured Claim, as determined by the applicable Debtors:<br><br>(i) payment in full in Cash on the later of (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to, or the agreement governing, such Allowed General Unsecured Claim against QVCG; or<br><br>(ii) such other treatment rendering such Allowed General Unsecured Claim Unimpaired. | | Not Entitled to Vote (Presumed to Accept) |
| Class A4 | QVC-QVCG Settlement Claim | QVC shall receive, in full and final satisfaction, settlement, release, and discharge of the QVC-QVCG Settlement Claim:<br><br>(i) all QVCG Distributable Cash; or<br><br>(ii) such other treatment otherwise addressed at the option of the Debtors, and acceptable to such Holders of QVC-QVCG Settlement Claims, the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders rendering such QVC-QVCG Settlement Claims Unimpaired, and in each case as set forth in the Restructuring Steps Plan. | | Not Entitled to Vote |
| Class A5 | Other Intercompany Claims against QVCG | Each Other Intercompany Claim against QVCG shall be, in full and final satisfaction, settlement, release, and discharge of such Other Intercompany Claim, as determined by the applicable Debtors, with the consent of the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders:<br><br>(i) Reinstated;<br>(ii) set off, settled, discharged, contributed, cancelled, converted to equity;<br>(iii) released without any distribution on account of such Allowed Intercompany Claim; or<br>(iv) otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan. | | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class A6 | QVCG Preferred Equity Interests | The QVCG Preferred Equity Interests shall be cancelled, released, discharged, extinguished, and of no further force or effect, and such Holders shall not receive any distribution, property, or other value under the Plan on account of such QVCG Preferred Equity Interests. | | Not Entitled to Vote (Deemed to Reject) |

3

| QVCG | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class A7 | QVCG Common Equity Interests | The QVCG Common Equity Interests shall be cancelled, released, discharged, extinguished, and of no further force or effect, and such Holders shall not receive any distribution, property, or other value under the Plan on account of such QVCG Common Equity Interests. | Not Entitled to Vote (Deemed to Reject) |
| Class A8 | Section 510(b) Claims against QVCG | On the Effective Date, each Section 510(b) Claim against QVCG shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

| QVC DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class B1 | Other Secured Claims against the QVC Debtors | Each Holder of an Allowed Other Secured Claim against a QVC Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Secured Claim, as determined by the applicable Debtors:<br><br>(i)  payment in full in Cash;<br>(ii)  the collateral securing its Allowed Other Secured Claim;<br>(iii)  Reinstatement of its Allowed Other Secured Claim; or<br>(iv)  such other treatment acceptable to the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders rendering such Allowed Other Secured Claim Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class B2 | Other Priority Claims against the QVC Debtors | Each Holder of an Allowed Other Priority Claim against a QVC Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Priority Claim, treatment in a manner consistent with section 1129(a) of the Bankruptcy Code. | Not Entitled to Vote (Presumed to Accept) |
| Class B3 | RCF Claims against the QVC Debtors | (1) Each Holder of an Allowed RCF Claim shall receive, in full and final satisfaction, settlement, release, and discharge of (a) such portion of its RCF Claim comprising RCF Loan Claims, its Pro Rata share (taking into account Claims in Class B4) of the QVC Funded Debt Plan Consideration and (b) such portion of its RCF Claim comprising RCF Letter of Credit Claims, Cash equal to the full amount of its RCF Letter of Credit Claim; provided that any RCF Letter of Credit that remains undrawn and outstanding as of the Effective Date shall be either (x) rolled into the Exit ABL Facility and granted liens pursuant to the Exit ABL Facility on terms acceptable to the Required Consenting RCF Lenders and the applicable issuing bank, (y) cancelled or returned undrawn to the applicable issuing bank, or (z) cash collateralized or otherwise backstopped in a manner reasonably | Entitled to Vote |

| QVC DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| | | satisfactory to the applicable issuing bank, in each case, on or prior to the Effective Date; and<br><br>(2) the QVC Debtors or the Reorganized QVC Debtors, as applicable, shall pay in full in Cash all RCF Agent Fees. | |
| Class B4 | QVC Notes Claims against the QVC Debtors | (1) Each Holder of an Allowed QVC Notes Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such QVC Notes Claim, its Pro Rata share (taking into account Claims in Class B3) of the QVC Funded Debt Plan Consideration; and<br>(2) the QVC Debtors or the Reorganized QVC Debtors, as applicable, shall pay in full in Cash all QVC Notes Trustee Fees. | Entitled to Vote |
| Class B5 | General Unsecured Claims against the QVC Debtors | Each Holder of an Allowed General Unsecured Claim against a QVC Debtor shall, in full and final satisfaction, settlement, release, and discharge of such General Unsecured Claim, as determined by the applicable Debtors:<br>(i) payment in full in Cash on the later of (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to, or the agreement governing, such Allowed General Unsecured Claim against the QVC Debtors;<br>(ii) Reinstated; or<br>(iii) receive such other treatment acceptable to the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders rendering such Allowed General Unsecured Claim Unimpaired. | Not Entitled to Vote (Presumed to Accept) |

5

| | | QVC DEBTORS | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class B6 | Intercompany Claims against the QVC Debtors | After giving effect to the Intercompany Settlement set forth herein, each other Intercompany Claim against a QVC Debtor shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Claim, as determined by the applicable Debtors with the consent of the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders: <br><br> (i)　　Reinstated; <br> (ii)　　set off, settled, discharged, contributed, cancelled, converted to equity; <br> (iii)　　released without any distribution on account of such Allowed Intercompany Claim; or <br> (iv)　　otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan. | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class B7 | Intercompany Interests in the QVC Debtors | Each Allowed Intercompany Interest in a QVC Debtors shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Interests, as determined by the applicable Debtors: <br><br> (i)　　Reinstated; <br> (ii)　　set off, settled, discharged, contributed, cancelled; <br> (iii)　　released without any distribution on account of such Allowed Intercompany Claim; or <br> (iv)　　otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan. <br><br> *provided*, that, for the avoidance of doubt, any direct or indirect Interests held by any LINTA Debtor in any QVC Debtor shall be cancelled, released, discharged, and extinguished and will be of no further force or effect. | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class B8 | Section 510(b) Claims against the QVC Debtors | On the Effective Date, each Section 510(b) Claim against a QVC Debtor shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

6

| LINTA DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class C1 | Other Secured Claims against the LINTA Debtors | Each Holder of an Allowed Other Secured Claim against a LINTA Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Secured Claim, as determined by the applicable Debtors, with the consent of the LINTA Noteholder Group:<br><br>(i) payment in full in Cash; or<br>(ii) such other treatment acceptable to the Required Consenting Stakeholders rendering its Allowed Other Secured Claim Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class C2 | Other Priority Claims against the LINTA Debtors | Each Holder of an Allowed Other Priority Claim against a LINTA Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Priority Claim, treatment in a manner consistent with section 1129(a) of the Bankruptcy Code, with the consent of the LINTA Noteholder Group. | Not Entitled to Vote (Presumed to Accept) |
| Class C3 | LINTA Notes Claims | Each Holder of an Allowed LINTA Notes Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such LINTA Notes Claim, its Pro Rata share of the LINTA Distributable Cash. | Entitled to Vote |
| Class C4 | General Unsecured Claims against the LINTA Debtors | Each Holder of an Allowed General Unsecured Claim against a LINTA Debtor shall receive, in full and final satisfaction, settlement, release, and discharge of such General Unsecured Claim, as determined by the applicable Debtors:<br><br>(i) payment in full in Cash on the later of (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to, or the agreement governing, such Allowed General Unsecured Claim against the LINTA Debtors; or<br>(ii) such other treatment acceptable to the Required Consenting Stakeholders rendering such General Unsecured Claims Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class C5 | Intercompany Claims against the LINTA Debtors | After giving effect to the Intercompany Settlement set forth herein, each Other Intercompany Claim against a LINTA Debtor shall be, in full and final satisfaction, settlement, release, and discharge of such Other Intercompany Claim, as determined by the applicable Debtors, with the consent of the | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |

7

| LINTA DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| | | Required Consenting Stakeholders:<br>(i) Reinstated;<br>(ii) set off, settled, discharged, contributed, cancelled, converted to equity;<br>(iii) released without any distribution on account of such Allowed Other Intercompany Claim; or<br>(iv) otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan; provided that in no event shall Class C5 receive any Cash from the LINTA Debtors. | |
| Class C6 | Intercompany Interests in the LINTA Debtors | Each Allowed Intercompany Interest in a LINTA Debtor shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Interests, as determined by the applicable Debtors:<br>(i) Reinstated;<br>(ii) set off, settled, discharged, contributed, cancelled;<br>(iii) released without any distribution on account of such Allowed Intercompany Interest; or<br>(ii) otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan. | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class C7 | Section 510(b) Claims against the LINTA Debtors | On the Effective Date, each Section 510(b) Claim against a LINTA Debtor shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

| CBI DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class D1 | Other Secured Claims against the CBI Debtors | Each Holder of an Allowed Other Secured Claim against the CBI Debtors shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Secured Claim, as determined by the applicable Debtors:<br>(i) payment in full in Cash;<br>(ii) the collateral securing its Allowed Other Secured Claim;<br>(iii) Reinstatement of its Allowed Other Secured Claim; or<br>(ii) such other treatment acceptable to the Required Consenting QVC Noteholders and the Required Consenting RCF | Not Entitled to Vote (Presumed to Accept) |

8

| CBI DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| | | Lenders rendering its Allowed Other Secured Claim Unimpaired. | |
| Class D2 | Other Priority Claims against the CBI Debtors | Each Holder of an Allowed Other Priority Claim against the CBI Debtors shall receive, in full and final satisfaction, settlement, release, and discharge of such Other Priority Claim, treatment in a manner consistent with section 1129(a) of the Bankruptcy Code. | Not Entitled to Vote (Presumed to Accept) |
| Class D3 | General Unsecured Claims against the CBI Debtors | Each Holder of an Allowed General Unsecured Claim against the CBI Debtors shall, in full and final satisfaction, settlement, release, and discharge of such General Unsecured Claim, as determined by the applicable Debtors: <br>(i) payment in full in Cash on the later of (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to, or the agreement governing, such Allowed General Unsecured Claim against the CBI Debtors; <br>(ii) Reinstated; or <br>(iii) receive such other treatment acceptable to the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders rendering such General Unsecured Claims Unimpaired. | Not Entitled to Vote (Presumed to Accept) |
| Class D4 | Intercompany Claims against the CBI Debtors | After giving effect to the Intercompany Settlement set forth herein, each other Intercompany Claim against the CBI Debtors shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Claim, as determined by the applicable Debtors with the consent of the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders: <br>(i) Reinstated; <br>(ii) set off, settled, discharged, contributed, cancelled, converted to equity; <br>(iii) released without any distribution on account of such Allowed Intercompany Claim; or <br>(iv) otherwise addressed at the option of the Debtors, in each case as set forth in the Restructuring Steps Plan. | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class D5 | Intercompany Interests in the CBI Debtors | Each Allowed Intercompany Interest in a CBI Debtor shall be, in full and final satisfaction, settlement, release, and discharge of such Intercompany Interest, as determined by the applicable Debtors: <br>(i) Reinstated; <br>(ii) set off, settled, discharged, contributed, cancelled; | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |

9

| CBI DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| | | (iii) released without any distribution on account of such Allowed Intercompany Interest; or <br> (iv) otherwise addressed at the option of the Debtors, with the consent of the Required Consenting QVC Noteholders and the Required Consenting RCF Lenders in each case as set forth in the Restructuring Steps Plan. | |
| Class D6 | Section 510(b) Claims against the CBI Debtors | On the Effective Date, each Section 510(b) Claim against the CBI Debtors shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

**ADDITIONALLY, THE PLAN CONTAINS RELEASE, EXCULPATION, INJUNCTION, AND DISCHARGE PROVISIONS SET FORTH IN ARTICLE VIII OF THE PLAN, INCLUDING A THIRD-PARTY RELEASE IN ARTICLE VIII.D OF THE PLAN (THE "THIRD-PARTY RELEASE"). SUCH PROVISIONS IN ARTICLE VIII OF THE PLAN ARE COPIED IN THE ATTACHED OPT-OUT FORM.**

**YOU WILL BE DEEMED TO HAVE CONSENTED AND TO BE BOUND BY, TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN UNLESS YOU (A) TIMELY OBJECT TO THE RELEASES IN THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE THE COMBINED HEARING, OR (B) CHECK THE OPT-OUT BOX IN THE ATTACHED OPT-OUT FORM AND COMPLETE AND SUBMIT THE OPT-OUT FORM IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH THEREIN.**

Your rights are described in the Plan and Disclosure Statement. Copies of the Plan, the Disclosure Statement, and any other publicly-filed documents in the Chapter 11 Cases are available free of charge, as applicable, by: (a) visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/QVC; (b) emailing QVCInfo@ra.kroll.com (with "QVC Group—Solicitation Inquiries" in the subject line); or (c) calling the Claims and Noticing Agent at (888) 575-5337 (USA or Canada, toll-free) or +1 (347) 292-4386 (International, toll). You may also obtain copies of any pleadings filed in the Chapter 11 Cases via PACER at https://www.pacer.gov (for a fee).

\* \* \* \* \* \*

10

**OPTIONAL OPT-OUT FORM FOR PLAN RELEASES**

If the Plan is confirmed and consummated, the releases set forth in Article VIII of the Plan (the "Plan Releases") shall apply. **THE PLAN RELEASES INCLUDE A THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN (THE "THIRD-PARTY RELEASE") AND COPIED BELOW, ALONG WITH CERTAIN RELEVANT DEFINITIONS.**

You are receiving the Plan Releases opt-out form (this "Opt-Out Form") because you are a Holder or potential Holder of a Claim or Interest in a Non-Voting Class Presumed to Accept as of Voting Record Date. Holders of Claims or Interests in Unimpaired Non-Voting Classes are entitled to opt out of the Third-Party Plan Release as provided herein.

The Third-Party Plan Release provides as follows:[3]

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC**

---

[3]   The Plan also contains Debtor releases and exculpation and injunction provisions, set forth in Articles VIII.C, VIII.E, and VIII.F of the Plan, respectively. Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim that does not opt out of or opts in to, as applicable, the Third-Party Release) to receive the Plan Releases.

Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan;  (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and

12

opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.

### Certain Definitions Related to the Third-Party Plan Release

Under the Plan, "**Related Party**" means, collectively, with respect to any Entity, each of, and in each case solely in its capacity as such, (a) such Entity's current and former Affiliates and (b) such Entity's and such Entity's current and former Affiliates' current and former directors (including outside directors), managers, officers, investment committee members, members of any governing body, equity holders (including holders of QVCG Preferred Equity and regardless of whether any equity interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds (including the beneficial holders for the account of whom such funds are managed), predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current and former Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, restructuring advisors, and other professionals and advisors, and any such Entity's respective heirs, executors, estates, and nominees of the foregoing.

Under the Plan, "**Released Parties**" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Disinterested Directors; (d) the RCF Agent; (e) the QVC Notes Trustee; (f) the LINTA Notes Trustee; (g) the Consenting Stakeholders; (h) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (i) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (j) the Takeback Debt Agents; (k) the DIP LC Agent and other DIP LC Secured Parties; (*l*) the other Releasing Parties; and (m) each Related Party of each Entity in clause (a) through clause (*l*); *provided* that, in each case, an Entity shall not be a Released Party if it:  (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

Under the Plan, "**Releasing Parties**" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the RCF Agent; (d) the QVC Notes Trustee; (e) the LINTA Notes Trustee; (f) the Consenting Stakeholders; (g) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (h) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (i) the Takeback Debt Agents; (j) the DIP LC Agent and other DIP LC Secured Parties; (k) Holders of Claims or Interests who vote to accept the Plan and do not affirmatively opt out of the releases set forth herein; (*l*) Holders of Claims or Interests who are presumed to accept the Plan and do not affirmatively opt out of the releases set forth herein; (m) Holders of Claims or Interests who abstain from voting on the Plan and who do not affirmatively opt out of the releases set forth herein; (n) Holders of Claims or Interests who vote to reject the Plan but do not affirmatively opt out of the releases set forth herein; (o) Holders of Claims or Interests who are deemed to reject the Plan and affirmatively opt into the releases provided by the Plan; (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q); and (q) each Related Party of each Entity in clause (a) through clause (p) for

13

which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided* that, in each case, an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

**YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY PLAN RELEASE UNLESS YOU (A) TIMELY OBJECT TO THE RELEASES IN THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE THE COMBINED HEARING OR (B) CHECK THE OPT-OUT BOX IN ITEM 1 BELOW AND COMPLETE AND SUBMIT THIS OPT-OUT FORM BY MAY 19, 2026, AND IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

**Item 1. Claims Held.**

The undersigned hereby certifies that, as of the Voting Record Date of April 13, 2026, the undersigned was the Holder of the following Claims in the aggregate amount(s) specified below (insert amount(s) in the applicable box(es) below):

| Class | Description | Amount |
|-------|-------------|--------|
| A1 | Other Secured Claims against QVCG | $_____ |
| A2 | Other Priority Claims against QVCG | $_____ |
| A3 | General Unsecured Claims against QVCG | $_____ |
| B1 | Other Secured Claims against the QVC Debtors | $_____ |
| B2 | Other Priority Claims against the QVC Debtors | $_____ |
| B5 | General Unsecured Claims against the QVC Debtors | $_____ |
| C1 | Other Secured Claims against the LINTA Debtors | $_____ |
| C2 | Other Priority Claims against the LINTA Debtors | $_____ |
| C4 | General Unsecured Claims against the LINTA Debtors | $_____ |
| D1 | Other Secured Claims against the CBI Debtors | $_____ |
| D2 | Other Priority Claims against the CBI Debtors | $_____ |
| D3 | General Unsecured Claims against the CBI Debtors | $_____ |

**Item 2. Third-Party Plan Release Opt-Out**

☐      The undersigned elects to **OPT OUT** of the Third-Party Plan Release so that it will not apply to me, the undersigned.

14

**Item 3**.  **Certifications.**

By signing this Opt-Out Form, the undersigned certifies that:

1.  as of the Voting Record Date of April 13, 2026, either:  (i) the entity is the Holder of a Claim or Interest in a Non-Voting Class Presumed to Accept; or (ii) the entity is an authorized signatory for an entity that is a Holder of a Claim or Interest in a Non-Voting Class Presumed to Accept;

2.  the entity has received a copy of the notice to which this Opt-Out Form is attached and is submitting this Opt-Out Form pursuant to the terms and conditions set forth therein;

3.  the entity has submitted the same election with respect to the Third-Party Plan Release for all Claims or Interests; and

4.  no other Opt-Out Forms have been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

15

## INSTRUCTIONS FOR SUBMITTING THIS OPT-OUT FORM
## PLEASE RETURN YOUR OPT-OUT FORM PROMPTLY

**For this Opt-Out Form to be valid and effective, it must be completed and signed as provided above and returned to the Claims and Noticing Agent by <u>one</u> of the following methods so as to be <u>actually received</u> by the Claims and Noticing Agent on or before May 19, 2026, at 11:59 p.m., prevailing Central Time.**

---

**If Submitting Your Opt-Out Form Online through the "E-Ballot" Platform:**

**The Claims and Noticing Agent will accept Opt-Out Forms if properly completed through the "E-Ballot" platform.  To submit your customized electronic Opt-Out Form via the "E-Ballot" platform, visit https://restructuring.ra.kroll.com/qvc, click on the "Submit E-Ballot" link located on the left-hand navigation panel of the landing page and follow directions provided therein to complete and submit your Opt-Out Form.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Opt-Out Form:**

**Unique E-Opt-Out ID #:_____**

**Submission of your Opt-Out Form via the Claims and Noticing Agent's "E-Ballot" platform is the sole manner in which Opt-Out Forms will be accepted via electronic or online transmission.  Opt-Out Forms submitted by facsimile, email, or other means of electronic transmission will <u>not</u> be counted.**

**If you cast an Opt-Out Form using the "E-Ballot" platform you should NOT also submit the paper original of your Opt-Out Form.**

---

**If Submitting Your Opt-Out Form via First Class Mail, Overnight Courier or Hand Delivery:**

**Submit your completed and signed Opt-Out Form by first class mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:**

**QVC Group Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

**(To arrange hand delivery of your Opt-Out Form, please email QVCballots@ra.kroll.com (with "QVC Opt-Out Form Submission" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.)**

**Important Information Regarding Releases under the Plan**

The Plan includes the following release, exculpation, and injunction provisions:[4]

Article VIII.C: Releases by the Debtors

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, and subject to the completion of each of those certain investigations commenced by, and under the direction and authority of, each of the Disinterested Directors of QVCG, LINTA, QVC, and CBI, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership**

---

[4]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Opt-Out Form.

and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors,

18

**the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release, other than as specified above.**

Article VIII.D: Releases by the Releasing Parties

**Except as otherwise provided in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, the Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract,**

19

instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan and the Restructuring Transactions, or the distribution of property under the Plan or any other related agreement, including the issuance or distribution of Securities pursuant to the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan;  (b) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.

Article VIII.E:  Exculpation

Notwithstanding anything contained in the Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action and any claim arising from or related to any act or omission occurring from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the

20

**Definitive Documents, the QVC New Equity Interests, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, the Plan, the Plan Supplement, the Restructuring Transactions, or any wind-down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with the foregoing, any Avoidance Actions, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date, except for claims or Causes of Action arising out of or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and other applicable Laws, regulations, or rules protecting such Exculpated Parties from liability.  In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in the Plan, each of the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.**

<u>Article VIII.F:  Injunction</u>

**Except as otherwise expressly provided in the Plan or in the Confirmation Order, or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, liabilities, or Causes of Action that have been extinguished, released, discharged, or are**

subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such released Claims, Interests, liabilities, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action unless such Holder has timely Filed a motion expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan (as may be amended, restated, supplemented, or otherwise modified from time to time), shall be deemed to have consented to the injunction provisions set forth in the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Exculpated Parties, or the 1125(e) Exculpation Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, in whole or in part, a claim or Cause of Action, as applicable, subject to the release and exculpation provisions of Article VIII hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim not released or subject to exculpation under the Plan, and (b) specifically authorizing such Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party, or 1125(e) Exculpation Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunctions set forth above do not enjoin Claims or Causes of Action against the Exculpated Parties or the Released Parties, as applicable, that relate to (a) the rights of any Holder of an Allowed

**Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Plan Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement), executed to implement the Plan or any claim or obligation arising under the Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**\* \* \* \***

23

<u>**Exhibit 4B**</u>

**Notice of Non-Voting Status and Opt-In Form**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| QVC GROUP, INC., *et al.*,[1] | ) | Case No. 26-90447 (ARP) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) NON-VOTING STATUS**
**OF CERTAIN IMPAIRED CLAIMS AND INTERESTS**
**DEEMED TO REJECT (II) OPPORTUNITY FOR HOLDERS**
**OF SUCH CLAIMS AND INTERESTS TO OPT IN TO THE PLAN RELEASE**

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE.  YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT ELECT TO OPT IN TO THE PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN USING THE ENCLOSED OPT-IN FORM WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY DECLINING TO OPT IN TO THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RECIPROCAL RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC ("KROLL" OR THE "CLAIMS AND NOTICING AGENT") BY TELEPHONE AT (888) 575-5337 (USA OR CANADA, TOLL-FREE) OR +1 (347) 292-4386 (INTERNATIONAL, TOLL) OR EMAIL QVCINFO@RA.KROLL.COM AND REFERENCE "QVC GROUP, INC. SOLICITATION INQUIRY" IN THE SUBJECT LINE.**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC.  The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these chapter 11 cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

On April 16, 2026, QVC Group, Inc. and certain of its affiliates (collectively, the "Debtors," and together with their non-debtor affiliates, the "Company") commenced solicitation of votes on the *Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Plan") prior to the filing of these Chapter 11 Cases (the "Solicitation Date"). On the Solicitation Date, the Debtors, among other things, distributed the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] to Holders of Claims, in each case, as of the applicable voting record date (the "Voting Record Date").

The Bankruptcy Court can confirm the Plan and bind you if the Plan is accepted by the Holders of at least two thirds in amount and more than one half in number of the Claims in each Impaired Class of Claims who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) Bankruptcy Code. If the Plan is confirmed by the Court, it will be binding on you even though you are not entitled to vote on the Plan and are deemed to reject, as set forth below, the Plan pursuant to section 1126(g) of the Bankruptcy Code. As further described below, in order to opt in to the Third-Party Release (defined below), you must complete, sign and return this Opt-In Form to the Claims and Noticing Agent by no later than 11:59 p.m. (prevailing Central Time) on May 19, 2026.

You are receiving this notice and the attached opt-in form because you are a Holder or potential Holder of a Claim in one of the following Plan classes as of the Voting Record Date (the "Impaired Non-Voting Classes"). As such, you are (1) deemed to reject the Plan, and as a result, **not** entitled to vote on the Plan; and (2) entitled to opt in to the releases provided by the Plan. If the Plan is confirmed and consummated, Holders of Allowed Claims in the Impaired Non-Voting Classes will receive the following treatment on the Effective Date.

| QVCG | | | |
|---|---|---|---|
| Class | Claims / Interests | Treatment of Claim / Interest | Voting Rights |
| Class A6 | QVCG Preferred Equity Interests | The QVCG Preferred Equity Interests shall be cancelled, released, discharged, extinguished, and of no further force or effect, and such Holders shall not receive any distribution, property, or other value under the Plan on account of such QVCG Preferred Equity Interests | Not Entitled to Vote (Deemed to Reject) |
| Class A7 | QVCG Common Equity Interests | The QVCG Common Equity Interests shall be cancelled, released, discharged, extinguished, and of no further force or effect, and such Holders shall not receive any distribution, property, or other value under the Plan on account of such QVCG Common Equity Interests. | Not Entitled to Vote (Deemed to Reject) |

---

[2]   Capitalized terms used but not defined herein have the meanings set forth in the Plan or the Disclosure Statement, as applicable.

2

| QVCG | | | |
|------|--|--|--|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class A8 | Section 510(b) Claims against QVCG | On the Effective Date, each Section 510(b) Claim against QVCG shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

| QVC DEBTORS | | | |
|------|--|--|--|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class B8 | Section 510(b) Claims against the QVC Debtors | On the Effective Date, each Section 510(b) Claim against a QVC Debtor shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

| LINTA | | | |
|------|--|--|--|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class C7 | Section 510(b) Claims against the LINTA Debtors | On the Effective Date, each Section 510(b) Claim against the LINTA Debtors shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and such Holders will not receive any distribution on account of such Section 510(b) Claim. | Not Entitled to Vote (Deemed to Reject) |

| CBI DEBTORS | | | |
|------|--|--|--|
| **Class** | **Claims / Interests** | **Treatment of Claim / Interest** | **Voting Rights** |
| Class D6 | Section 510(b) Claims against the CBI Debtors | Notwithstanding anything to the contrary herein, a Section 510(b) Claim against the CBI Debtors, if any Claim exists, may only become Allowed by Final Order of the Bankruptcy Court. | Not Entitled to Vote (Deemed to Reject) |

**ADDITIONALLY, THE PLAN CONTAINS RELEASE, EXCULPATION, INJUNCTION, AND DISCHARGE PROVISIONS SET FORTH IN <u>ARTICLE VIII</u> OF THE PLAN, INCLUDING A THIRD-PARTY RELEASE IN <u>ARTICLE VIII.D</u> OF THE PLAN (THE "<u>THIRD-PARTY RELEASE</u>"). SUCH PROVISIONS IN <u>ARTICLE VIII</u> OF THE PLAN ARE COPIED IN THE ATTACHED OPT-OUT FORM.**

**YOU WILL BE DEEMED TO HAVE CONSENTED TO, AND BE BOUND BY, THE THIRD-PARTY RELEASE SET FORTH IN <u>ARTICLE VIII.D</u> OF THE PLAN IF YOU CHECK THE OPT-IN BOX IN THE ATTACHED OPT-IN FORM AND COMPLETE AND SUBMIT THE OPT-IN FORM IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH THEREIN.**

3

Your rights are described in the Plan and Disclosure Statement. Copies of the Plan, the Disclosure Statement, and any other publicly-filed documents in the Chapter 11 Cases are available free of charge, as applicable, by: (a) visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/QVC; (b) emailing QVCInfo@ra.kroll.com (with "QVC Group—Solicitation Inquiries" in the subject line); or (c) calling the Claims and Noticing Agent at (888) 575-5337(USA or Canada) (toll-free) or +1 (347) 292-4386 (International). You may also obtain copies of any pleadings filed in the Chapter 11 Cases via PACER at https://www.pacer.gov (for a fee).

4

**OPTIONAL OPT-IN FORM FOR PLAN RELEASES**

If the Plan is confirmed and consummated, the releases set forth in Article VIII of the Plan (the "Plan Releases") shall apply. **THE PLAN RELEASES INCLUDE A THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN (THE "THIRD-PARTY RELEASE") AND COPIED BELOW, ALONG WITH CERTAIN RELEVANT DEFINITIONS.**

You are receiving the Plan Releases opt-in form (this "Opt-In Form") because you are a Holder or potential Holder of a Claim or Interest in a Non-Voting Class Deemed to Reject as of Voting Record Date. Holders of Claims or Interests in Impaired Non-Voting Classes are entitled to opt in to the Third-Party Plan Release as provided herein.

The Third-Party Plan Release provides as follows:[3]

**Except as otherwise provided in this Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by this Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, this Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC**

---

[3]   The Plan also contains Debtor releases and exculpation and injunction provisions, set forth in Articles VIII.C, VIII.E, and VIII.F of the Plan, respectively. Unless you otherwise are included in the definition of Released Parties, you must be a Releasing Party (*i.e.*, a Holder of a Claim that does not opt out of or opts in to, as applicable, the Third-Party Release) to receive the Plan Releases.

**Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or this Plan, the solicitation of votes with respect to this Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of this Plan and the Restructuring Transactions, or the distribution of property under this Plan or any other related agreement, including the issuance or distribution of Securities pursuant to this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan;  (b) any post-Effective Date obligations of any party or Entity under this Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement this Plan or any claim or obligation arising under this Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and**

6

**opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.**

### Certain Definitions Related to the Third-Party Plan Release

Under the Plan, "**Related Party**" means, collectively, with respect to any Entity, each of, and in each case solely in its capacity as such, (a) such Entity's current and former Affiliates and (b) such Entity's and such Entity's current and former Affiliates' current and former directors (including outside directors), managers, officers, investment committee members, members of any governing body, equity holders (including holders of QVCG Preferred Equity and regardless of whether any equity interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds (including the beneficial holders for the account of whom such funds are managed), predecessors, participants, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current and former Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, restructuring advisors, and other professionals and advisors, and any such Entity's respective heirs, executors, estates, and nominees of the foregoing.

Under the Plan, "**Released Parties**" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Disinterested Directors; (d) the RCF Agent; (e) the QVC Notes Trustee; (f) the LINTA Notes Trustee; (g) the Consenting Stakeholders; (h) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (i) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (j) the Takeback Debt Agents; (k) the DIP LC Agent and other DIP LC Secured Parties; (*l*) the other Releasing Parties; and (m) each Related Party of each Entity in clause (a) through clause (*l*); *provided* that, in each case, an Entity shall not be a Released Party if it:  (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

Under the Plan, "**Releasing Parties**" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the RCF Agent; (d) the QVC Notes Trustee; (e) the LINTA Notes Trustee; (f) the Consenting Stakeholders; (g) the Exit ABL Facility Agent and Exit ABL Facility Lenders; (h) the Syndicated Exit Financing Agent and Syndicated Exit Financing Lenders; (i) the Takeback Debt Agents; (j) the DIP LC Agent and other DIP LC Secured Parties; (k) Holders of Claims or Interests who vote to accept this Plan and do not affirmatively opt out of the releases set forth herein; (*l*) Holders of Claims or Interests who are presumed to accept this Plan and do not affirmatively opt out of the releases set forth herein; (m) Holders of Claims or Interests who abstain from voting on this Plan and who do not affirmatively opt out of the releases set forth herein; (n) Holders of Claims or Interests who vote to reject this Plan but do not affirmatively opt out of the releases set forth herein; (o) Holders of Claims or Interests who are deemed to reject this Plan and affirmatively opt into the releases provided by this Plan; (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q); and (q) each Related Party of each Entity in clause (a) through clause (p)

for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided* that, in each case, an Entity shall not be a Releasing Party if it: (i) affirmatively opts out of the releases in the Plan; or (ii) timely objects to the releases in the Plan and such objection is not resolved before the Combined Hearing.

**YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE IF YOU CHECK THE OPT-IN BOX IN ITEM 2 BELOW AND COMPLETE AND SUBMIT THIS OPT-IN FORM BY MAY 19, 2026 AND IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

**Item 1. Claims or Interests Held.**

The undersigned hereby certifies that, as of the Voting Record Date of April 13, 2026, the undersigned was the Holder of the following Claims in the aggregate amount(s) specified below (insert amount(s) in the applicable box(es) below):

| Class | Description | Amount |
|---|---|---|
| A6 | QVCG Preferred Equity Interests | _____ |
| A7 | QVCG Common Equity Interests | _____ |
| A8 | Section 510(b) Claims against QVCG | $_____ |
| B8 | Section 510(b) Claims against the QVC Debtors | $_____ |
| C7 | Section 510(b) Claims against the LINTA Debtors | $_____ |
| D6 | Section 510(b) Claims against the CBI Debtors | $_____ |

**Item 1. Third-Party Plan Release Opt-In**

☐       The undersigned elects to **OPT IN** to the Third-Party Plan Release so that it will apply to me, the undersigned.

**Item 2. Certifications.**

By signing this Opt-In Form, the undersigned certifies that:

1. as of the Voting Record Date of April 13, 2026, either: (i) the entity is the Holder of a Claim or Interest in a Non-Voting Class Deemed to Reject; or (ii) the entity is an authorized signatory for an entity that is a Holder of a Claim or Interest in a Non-Voting Class Deemed to Reject;

2. the entity has received a copy of the notice to which this Opt-In Form is attached and is submitting this Opt-In Form pursuant to the terms and conditions set forth therein;

3. the entity has submitted the same election with respect to the Third-Party Plan Release for all Claims or Interests; and

8

4. no other Opt-In Forms have been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims, then any such earlier Opt-In Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

9

## <u>INSTRUCTIONS FOR SUBMITTING THIS OPT-IN FORM</u>
## <u>PLEASE RETURN YOUR OPT-IN FORM PROMPTLY</u>

**For this Opt-In Form to be valid and effective, it must be completed and signed as provided above and returned to the Claims and Noticing Agent by <u>one</u> of the following methods so as to be <u>actually received</u> by the Claims and Noticing Agent on or before May 19, 2026 at 11:59 p.m., prevailing Central Time.**

---

**<u>If Submitting Your Opt-In Form Online through the "E-Ballot" Platform:</u>**

**The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the "E-Ballot" platform. To submit your customized electronic Opt-In Form via the "E-Ballot" platform, visit https://restructuring.ra.kroll.com/qvcballots, click on the "Submit E-Ballot" link located on the left-hand navigation panel of the landing page and follow directions provided therein to complete and submit your Opt-In Form.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-In Form:**

**Unique E-Opt-In ID #:_____**

**Submission of your Opt-In Form via the Claims and Noticing Agent's "E-Ballot" platform is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will <u>not</u> be counted.**

**If you cast an Opt-In Form using the "E-Ballot" platform you should NOT also submit the paper original of your Opt-In Form.**

---

**<u>If Submitting Your Opt-In Form via First Class Mail, Overnight Courier or Hand Delivery:</u>**

**Submit your completed and signed Opt-In Form by first class mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:**

**QVC Group Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

**(To arrange hand delivery of your Opt-In Form, please email QVCballots@ra.kroll.com (with "QVC Opt-In Form Submission" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.)**

---

For all persons or entities who hold one or more positions in the Debtors' Class A6—QVCG Preferred Equity Interests and Class A7—QVCG Common Equity Interests (as identified by the CUSIPs and ISINs set forth below) in "street name" at a bank, broker, or other intermediary, through DTC or another similar depository (such Holders being "Beneficial Holders" of the Debtors' Preferred Equity Interests and Common Equity Interests):

**CUSIP 74915M605 / ISIN US74915M6057 (Common Stock) (QVC Group, Inc.)**
**CUSIP 74915M704 / ISIN US74915M7048 (Common Stock) (QVC Group, Inc.)**
**CUSIP 74915M308 / ISIN US74915M3088 (Preferred Stock) (QVC Group, Inc.)**
**CUSIP 747262103 / ISIN US7472621033 (Common Stock) (QVC Inc.)**
**CUSIP 747262202 / ISIN US7472622023 (Common Stock) (QVC Inc.)**

**By electronic, online submission:**

As a Beneficial Holder of the Debtors' equity securities referenced above, you will not be issued a Unique E-Opt-In ID# to retrieve and submit the customized electronic version of your Opt-In Form.  Instead, click on the Public Equities Opt-In Portal link located on the left-hand navigation panel of the Debtors' restructuring website at: https://restructuring.ra.kroll.com/QVC to upload a .pdf of your completed Opt-In Form.  For the avoidance of doubt, only Holders of the above-referenced equity securities, whose ownership thereof is registered in the Holder's own name directly on the books and records of the Debtors and/or the Debtors' transfer agent, will receive a Unique E-Opt-In ID#, which will enable them to retrieve and submit a customized electronic version of their Opt-In Form.

11

**Important Information Regarding Releases under the Plan**

The Plan includes the following release, exculpation, and injunction provisions:[4]

Article VIII.C: Releases by the Debtors

**Except as otherwise provided in this Plan or the Confirmation Order to the contrary, and subject to the completion of each of those certain investigations commenced by, and under the direction and authority of, each of the Disinterested Directors of QVCG, LINTA, QVC, and CBI, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by this Plan, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership**

---

[4]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Opt-In Form.

and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or this Plan, the solicitation of votes with respect to this Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of this Plan and the Restructuring Transactions, or the distribution of property under this Plan or any other related agreement, including the issuance or distribution of Securities pursuant to this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under this Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement this Plan or any claim or obligation arising under this Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors,

13

the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release, other than as specified above.

Article VIII.D: Releases by the Releasing Parties

Except as otherwise provided in this Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring contemplated by this Plan, the adequacy of which is hereby confirmed, in each case except for claims arising under, or preserved by, this Plan, to the fullest extent permitted under applicable law, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and every Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claims or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, contingent or noncontingent, in Law, equity, contract, tort or otherwise, under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, and their Estates (including the Debtors' capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the RCF Credit Agreement, the QVC Notes Indentures, the LINTA Notes Indenture, the DIP LC Credit Agreement, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, any related adversary proceedings, intercompany transactions between or among a Debtor and another Debtor or Affiliate of a Debtor, the decision to file the Chapter 11 Cases, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the RSA, the Intercompany Settlement, the QVC New Equity Interests, the New Organizational Documents, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), before or during the Chapter 11 Cases, any other Definitive Document or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract,

14

instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with any of the foregoing or any Restructuring Transactions, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the Disclosure Statement, or this Plan, the solicitation of votes with respect to this Plan, the pursuit of Confirmation, the pursuit of Consummation of the Restructuring Transactions, the administration and implementation of this Plan and the Restructuring Transactions, or the distribution of property under this Plan or any other related agreement, including the issuance or distribution of Securities pursuant to this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) the rights of any Holder of an Allowed Claim or Allowed Interest (as applicable) to receive distributions under the Plan;  (b) any post-Effective Date obligations of any party or Entity under this Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement) executed to implement this Plan or any claim or obligation arising under this Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) a good faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, other than as specified above.

Article VIII.E:  Exculpation

Notwithstanding anything contained in this Plan to the contrary, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or Third-Party Release, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action and any claim arising from or related to any act or omission occurring from the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the

**Definitive Documents, the QVC New Equity Interests, the Exit Financing, the DIP LC Documents, the New Debt Documents, the Management Incentive Plans, the Disclosure Statement, this Plan, the Plan Supplement, the Restructuring Transactions, or any wind-down transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or the Confirmation Order in lieu of such legal opinion) related to, created, or entered into in connection with the foregoing, any Avoidance Actions, the pursuit of Confirmation, the pursuit of consummation of the Restructuring Transactions, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date, except for claims or Causes of Action arising out of or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.**

**The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and other applicable Laws, regulations, or rules protecting such Exculpated Parties from liability.  In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in this Plan, each of the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.**

Article VIII.F:  Injunction

**Except as otherwise expressly provided in this Plan or in the Confirmation Order, or for obligations or distributions issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, liabilities, or Causes of Action that have been extinguished, released, discharged, or are**

subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such released Claims, Interests, liabilities, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action unless such Holder has timely Filed a motion expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim, Interest, or Cause of Action or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, liabilities, or Causes of Action released or settled pursuant to this Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to this Plan (as may be amended, restated, supplemented, or otherwise modified from time to time), shall be deemed to have consented to the injunction provisions set forth in this Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Exculpated Parties, or the 1125(e) Exculpation Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, in whole or in part, a claim or Cause of Action, as applicable, subject to the release and exculpation provisions of Article VIII hereof, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim not released or subject to exculpation under this Plan, and (b) specifically authorizing such Entity to bring such claim or Cause of Action, as applicable, against any such Exculpated Party, or 1125(e) Exculpation Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunctions set forth above do not enjoin Claims or Causes of Action against the Exculpated Parties or the Released Parties, as applicable, that relate to (a) the rights of any Holder of an Allowed

17

**Claim or Allowed Interest (as applicable) to receive distributions under the Plan; (b) any post-Plan Effective Date obligations of any party or Entity under this Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including any Definitive Document, the New Debt Documents, the New Organizational Documents, and other documents set forth in the Plan Supplement), executed to implement this Plan or any claim or obligation arising under this Plan; or (c) Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct.**

**\* \* \* \***

18