**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>QVC GROUP, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90447 (ARP)<br><br>(Jointly Administered)<br><br>**Docket Nos. 205, 206, 207** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS TO THE EMERGENCY MOTION OF THE PREFERRED**
**SHAREHOLDERS TO TERMINATE EXCLUSIVITY UNDER 11 U.S.C. § 1121(d)**

The Official Committee of Unsecured Creditors (the "Committee") of QVC Group, Inc.

("QVCG") and its affiliated debtors (with QVCG, collectively, the "Debtors") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby submits this objection

(this "Objection")[2] to the *Emergency Motion of the Preferred Shareholders to Terminate*

*Exclusivity Under 11 U.S.C. § 1121(d)* (Docket Nos. 205, 207) (the "Exclusivity Termination

Motion") filed by an ad hoc group of certain preferred shareholders (the "Preferred Shareholder

Ad Hoc Group").  In support of this Objection, the Committee respectfully states as follows:

**Preliminary Statement**

1.      There are no grounds to terminate exclusivity in light of the undisputed facts of

these Chapter 11 Cases: (a) the Debtors have already filed and are moving forward with

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/QVC.  The location of Debtor QVC Group, Inc.'s corporate headquarters and the Debtors' service address in these Chapter 11 Cases is 1200 Wilson Drive, West Chester, Pennsylvania 19380.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *First Amended Joint Prepackaged Plan of Reorganization QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (Docket No. 289) (inclusive of the Initial Plan (as defined herein) and all exhibits thereto and as may be amended, supplemented or otherwise modified from time to time, the "Plan").

confirmation of their Plan; (b) the Debtors' Plan is confirmable and supported by all voting classes; (c) the Debtors are competently and professionally managed; and (d) the hearing on confirmation of the Debtors' Plan will commence imminently on June 4, 2026.

2.　　The Preferred Shareholder Ad Hoc Group opposes confirmation of the Debtors' Plan – which it is entitled to do.  That objection does not, however, provide grounds to justify terminating the Debtors' exclusivity, especially where these Chapter 11 Cases have been pending for less than 50 days.  The Preferred Shareholder Ad Hoc Group's wish to pursue its so-called "Alternative Plan" – which is not an actual plan, but is a plan concept that is fatally flawed and detrimental to General Unsecured Creditors – provides no basis to terminate exclusivity.[3]

3.　　The Preferred Shareholder Ad Hoc Group has put forth no valid grounds to terminate exclusivity in these Chapter 11 Cases.  Indeed, the Exclusivity Termination Motion woefully fails to meet the heavy burden for establishing cause for termination of exclusivity under section 1121 of the Bankruptcy Code.

4.　　At this early stage of the case, as an opponent of the Debtors' Plan, the Preferred Shareholder Ad Hoc Group should file and prosecute an objection to the Plan, not a motion to terminate exclusivity.  For the reasons set forth herein, and in the Debtors' objection to the Exclusivity Termination Motion, in which the Committee joins, the Court should deny the Exclusivity Termination Motion.

---

[3]　It appears that the Preferred Shareholder Ad Hoc Group's concept is to file a plan for QVCG only and artificially impair the $13 million (by their estimation) of general unsecured creditors of that entity (who are being unimpaired under the Debtors' Plan), and gamble their recovery on litigating the intercompany claim issues, possibly resulting in a $3 billion allowed claim against QVCG that would dilute the general unsecured creditors' recovery to the point of oblivion.  Even if the Preferred Shareholder Ad Hoc Group succeeded in terminating exclusivity, which they cannot, and their plan was more than a concept, that plan would suffer from multiple flaws that would render it unconfirmable out of the gate (*e.g.,* gerrymandering, artificial impairment, and feasibility issues).

**Background**

5.　　On April 17, 2026, the Debtors filed their *Joint Prepackaged Plan of Reorganization of QVC Group, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (Docket No. 15) (the "Initial Plan") and corresponding *Disclosure Statement* (Docket No. 14) (the "Disclosure Statement"), reflecting a prepackaged restructuring negotiated among the Debtors and the Consenting Stakeholders (as defined in the RSA).[4]

6.　　The Plan provides that the Committee's constituents, the holders of General Unsecured Claims across all of the Debtor entities, will be paid in full or otherwise rendered unimpaired.[5]　The Committee supports the Debtors' Plan.　Holders of series A cumulative redeemable preferred stock issued by QVCG (the "Preferred Equity") will receive no recovery on account thereof under the Plan.[6]　As of May 8, 2026, the members of the Preferred Shareholder Ad Hoc Group reportedly held approximately 22.19% of the outstanding Preferred Equity.[7]

7.　　The Preferred Shareholder Ad Hoc Group filed the Exclusivity Termination Motion on May 8, 2026, seeking emergency relief by no later than May 26, 2026.　The hearing on the Exclusivity Termination Motion was rescheduled for June 4, 2026, the same date as the commencement of the hearing on confirmation of the Debtors' Plan.[8]

---

[4]　　*See Restructuring Support Agreement* (Docket No. 4, Ex. A) (the "RSA").

[5]　　Plan Arts. I.A.79, III.A–B; *see also* Disclosure Statement Arts. II, III.E, III.M.

[6]　　Plan Arts. I.A.156, III.B.6.

[7]　　*Compare id.*, *with* Docket No. 204, Ex. A (reporting 2,814,238 shares of Preferred Equity held by members of the Preferred Shareholder Ad Hoc Group).

[8]　　*See* Docket Nos. 219, 294.

**The Preferred Shareholder Ad Hoc Group Has Not Established, and
Cannot Establish, Cause to Terminate Exclusivity in the Chapter 11 Cases**

8.      Section 1121(d) of the Bankruptcy Code provides, in pertinent part, that "on request of a party in interest . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."[9]  The burden is on the party seeking termination or reduction of a debtor's exclusivity periods to show that "cause" exists, a burden which has been described as a "heavy" one.[10]  To meet this heavy burden, the party "must produce affirmative evidence to support a finding of cause."[11]  The Preferred Shareholder Ad Hoc Group's Exclusivity Termination Motion is devoid of evidence that would support its request because the requisite "cause" does not exist here.

9.      When determining whether "cause" exists to increase or reduce a debtor's exclusivity periods, courts typically consider the factors set forth in *In re Adelphia Communications Corp.*[12]  This is a fact-specific inquiry, with courts most commonly finding "cause" to reduce a debtor's exclusivity under egregious circumstances where there is gross mismanagement, acrimonious relations between the debtor's principals, the use of the exclusivity periods as a tactical device or means of coercion, or troubling conduct that is just short of conduct

---

[9]   11 U.S.C. § 1121(d).

[10]  *In re Texaco, Inc.*, 81 B.R. 806, 813 (Bankr. S.D.N.Y. 1988) (holding that parties seeking to modify or terminate exclusivity periods had "not sustained their burden of establishing cause within the meaning of 11 U.S.C. § 1121(d)"); *Matter of Excel Maritime Carriers Ltd.*, 2013 WL 5155040, at *1 (Bankr. S.D.N.Y. Sept. 13, 2013) (concluding that the burden on the party seeking to terminate exclusivity "is a heavy one[.]"); 7 Collier on Bankruptcy ¶ 1121.06 (16th ed. 2026) (describing movant seeking reduction of exclusivity periods as "bear[ing] a particularly heavy burden[]").

[11]  *In re Borders Grp.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011).

[12]  352 B.R. 578, 586–87 (Bankr. S.D.N.Y. 2006) (identifying nine enumerated factors) (citing *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997)); *In re Express One Int'l*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (outlining same factors and collecting cases).

that would justify the appointment of a chapter 11 trustee.[13] A court's primary consideration should be whether terminating a debtor's exclusivity periods is necessary to materially advance the chapter 11 case in a manner that would not otherwise be possible.[14] None of the factors supporting a finding that cause exists to terminate exclusivity are present in this case. In fact, the opposite is the case – the circumstances posited by the Preferred Shareholder Ad Hoc Group unequivocally support denial of the Exclusivity Termination Motion.

10.     Courts are clear that the existence of the following circumstances alone do ***not*** constitute "cause" to terminate or shorten a debtor's exclusive periods: (a) a constituency's dissatisfaction or displeasure with a debtor's proposed plan; (b) a creditor's or other party in interest's statement that it would provide a more favorable plan proposal if exclusivity were terminated; or (c) the fact that a key stakeholder wants to file a competing plan.[15]

11.     Courts are also clear that "considering termination of an exclusivity period 'is a serious matter' and termination 'should be granted neither routinely nor cavalierly.'"[16] Moreover, terminating exclusivity "particularly during the initial exclusivity period[s] is an extraordinary thing in a bankruptcy case."[17]

---

[13]   *See, e.g.*, *Texaco*, 81 B.R. at 812 (collecting cases); *Matter of Texas Extrusion Corp.*, 844 F.2d 1142 (5th Cir. 1988); *Matter of Fansteel, Inc.*, 2017 WL 782865, at *1 (Bankr. S.D. Iowa Feb. 28, 2017); *Excel Maritime*, 2013 WL 15155040, at *1.

[14]   *See Borders Grp.*, 460 B.R. at 827 (quoting *Dow Corning*, 208 B.R. at 670 and *Adelphia*, 352 B.R. at 590); *Excel Maritime*, 2013 WL 15155040, at *2 ("[T]he ultimate consideration for the Court [i]s what will best move the case forward in the best interest of all parties.").

[15]   *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 134 (D.N.J. 1995); *Adelphia*, 352 B.R. at 587; *Excel Maritime*, 2013 WL 15155040, at *1.

[16]   *In re Lichtin/Wade, L.L.C.*, 478 B.R. 204, 215 (Bankr. E.D.N.C. 2012) (quoting *In re Fountain Powerboat Indus., Inc.*, No. 09-07132-8-RDD, 2009 WL 4738202, at *6 (Bankr. E.D.N.C. Dec. 4, 2009)).

[17]   *Excel Maritime*, 2013 WL 15155040, at *1; *see also Geriatrics Nursing*, 187 B.R. at 134 ("[E]arly termination of the statutorily prescribed period during which the debtor has the sole right to file a plan of reorganization is not the proper manner, absent a showing of sufficient cause, to facilitate" discourse, creditor constituencies, and parties in interest.).

4897-3488-8623.2 72854.00002                    5

12.     The Preferred Shareholder Ad Hoc Group cannot meet its heavy burden to terminate the Debtors' exclusivity periods less than 50 days into these Chapter 11 Cases. The Exclusivity Termination Motion utterly fails to address, much less meet, the *Adelphia* factors or otherwise establish that terminating exclusivity would advance the progress of these Chapter 11 Cases, as opposed to thrusting the cases into a situation that would create serious risks to the Debtors' reorganization – precisely what the exclusivity periods are designed to protect against.

13.     The Debtors are working cooperatively with the Consenting Stakeholders and the Committee, and there is no indicia of anything but professionalism and proper management in the conduct of these Chapter 11 Cases. The Plan confirmation hearing is scheduled to commence forthwith on June 4, 2026, and the Plan is confirmable and supported by all voting classes. The Preferred Shareholder Ad Hoc Group is dissatisfied with the terms of the Plan. Dissatisfaction with the Debtors' Plan, however, does not provide a basis for termination of exclusivity under applicable law. The Preferred Shareholder Ad Hoc Group will have a full and fair opportunity to litigate any objection it may bring to the Debtors' Plan in connection with the hearing on confirmation of the Plan. The Preferred Shareholder Ad Hoc Group's desire to file a competing chapter 11 plan consistent with its "Alternative Plan" concept does not provide a basis for termination of exclusivity as a matter of law.

14.     For the reasons set forth herein and in the Debtors' objection to the Exclusivity Termination Motion, the Court should deny the relief requested in the Exclusivity Termination Motion.

Dated:   May 25, 2026
        Houston, Texas

Respectfully submitted,

*/s/ Theodore S. Heckel*

PACHULSKI STANG ZIEHL & JONES LLP
Michael D. Warner (Texas Bar No. 00792304)
Theodore S. Heckel (Texas Bar No. 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone:   (713) 691-9385
Facsimile:   (713) 691-9407
Email:          mwarner@pszjlaw.com
             theckel@pszjlaw.com

-and-

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler (admitted *pro hac vice*)
Alan J. Kornfeld (admitted *pro hac vice*)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:   (212) 561-7700
Facsimile:   (212) 561-7777
Email:          rfeinstein@pszjlaw.com
             bsandler@pszjlaw.com
             akornfeld@pszjlaw.com

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors*

## Certificate of Service

I hereby certify that on May 25, 2026, a true and correct copy of the foregoing document was caused to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Theodore S. Heckel*
Theodore S. Heckel
