

# W A M P A N O A G   C A P I T A L   L L C

June 12, 2026

***Via USPS***
The Honorable Judge Alfredo R. Perez
Courtroom 400
515 Rusk
Houston, TX 77002

United States Courts
Southern District of Texas
FILED

JUN 15 2026

Nathan Ochsner, Clerk of Court

In Re QVC Group Inc., et al., Case No. 26-90447

Your Honor:

As a preferred shareholder not belonging to the Ad Hoc group, we have followed this case and the mini-trial with great interest due to our position. Listening to the closing arguments, we felt forced to write to you after some of the statements of the debtors' and creditors' lawyers claiming that no other preferred holder objects to this settlement. We object to this settlement and are confident the thousands of other preferred holders would as well if they had the means and their position was big enough to justify hiring high-priced lawyers. In all likelihood, the main holders of this security are retail investors seeking income producing investments, typically retirees living on a fixed budget with the shares held in street name, which is why they are so hard to find and organize. Most of whom probably do not even know this case is happening or even if they do, that they are about to be zeroed out. Only 10.6% of this security is held by institutions according to Bloomberg.

The creditor groups in this case seem to have identified this most vulnerable group as the easiest to loot since they were unlikely to be able to fight back with no equity committee or other representation in this case. Based on the testimony we heard, the "independent director" assigned to QVC Group seems to have worked in a number of Kirkland restructuring situation roles and so his loyalty is at best conflicted due to his prospects of future engagement on Kirkland cases. He made no attempt to rebut any of the negotiating points of the creditors by hiring tax or financial experts and it seems the legal advice he received was ineffectual as well. The fact that overtures to engage by the Ad Hoc Preferred group were rejected is all the evidence you need to come to the conclusion that this was a Potemkin attempt to cover their tracks as they unfairly ganged up on the QVC Group box.

Thankfully the Ad Hoc Preferred group came along to try to right the wrongs that the debtors were trying to effectuate. It is laughable that one of the attorneys in closing slung the "vulture investor" epithet at the Preferred group when most of the creditors on the 2019 statements of the

creditors' groups are the biggest and most aggressive distressed institutional investors in the country. The term "vulture investor" was coined based on their past actions and yet their attorneys are trying to make them out to be the victims in this case simply because the preferred holders want the benefit of their bargain with the debtors. When anyone actually bought their position is a meaningless old trope that has no bearing on this case. Contractual rights do not disappear because a security was bought or sold and if they did, the capital markets would cease to function.

The releases they offer as the only compensation for the theft of the assets at the QVC Group box are worthless to us and all other preferred holders. We may be wrong but as far as we can tell, a corporation owes no duties to former shareholders, only current ones. The debtors also did not even offer an analysis of how many current holders received dividends and would potentially benefit from the releases. Most importantly, we are not aware of any case in any circuit in the country where a debtor or bankruptcy trustee has successfully clawed back legitimate dividends payments from individual investors on securities sold to the public markets (absent actual fraud which is not a factor in this case). Quite the opposite based on appeals courts' and the Supreme Court's decisions: the 546(e) safe harbor exists for a very good reason and if it did not, it would create instability in the financial system and potentially devastate innocent individual investors who are customers of financial institutions and assume they could use the dividends they receive to fund their retirement and the like. As Your Honor knows, a constructive fraudulent conveyance clawback action is a very difficult case to make even when the facts are on your side and there are not affirmative defenses such as a contemporaneous solvency opinion and near par bond prices at the time of the dividends. To reiterate, bonds can trade below par due to a variety of reasons including inflation which was rampant over the past few years. Any trustee or others who initiated any sort of clawback would just be wasting estate resources on this worthless cause of action.

Likewise, the potential tax liabilities are hypothetical and contingent claims that have been thrown on the weak "mountain of claims" that Attorney Glenn has identified as exceedingly spurious justification for a made-up inter-company claim. We have heard nothing about any attempt to settle or quantify this claim with the IRS so that this case can move forward based on facts and not fantasy (just as there has been no attempt to market the Cornerstone stake in a 363 sale to determine a value). Any "overpayments" should be collected from the IRS as estate assets. As someone who has consulted for/helped insurance companies set up new business, the premium paid is absolutely based on the risk of the claim being paid out. The seller of this insurance is a sophisticated multi-national company which specializes in selling a portfolio of these policies. The premiums they charge are above the historic/perceived risk of this type of claim to account for administrative costs and profit, with any investment portfolio return adding to profit from the time the policy is sold to when it expires or the claim is paid, if ever. If they systematically sell policies for less than the risk of paying out on them, then they will sooner or later face insolvency. The fact that the premium was so low is a huge mark of confidence by a financial third party in the first loss position who specializes in this type of tax risk using teams

of tax lawyers, actuaries and computer models. Assertions that this is not the case (without any explanation to the contrary) solely display ignorance of how the world works.

The only ones hurt by a rejection of this plan are the bondholders who would receive a lower recovery and assumed you would just rubber stamp them taking what isn't theirs by right. In recent years, we have noticed a disturbing trend in bankruptcy practice where there is far too much deference paid to debtors' counsel and the might makes right attitude of some creditors' counsel where they are allowed to run roughshod over securities contracts, corporate structure and bankruptcy law all in the name of expediency. Those rights matter and without honoring them, the whole system begins to break down. In effect, this is a substantive consolidation plan which dares not utter those words because they know none of the criteria for it have been met. In this court of equity, you have the opportunity to send a message that these unseemly attempts to deprive public investors of a recovery solely because they are unorganized equity holders are not appropriate in the bankruptcy courts.

There is no emergency here despite the hyperbolic statements from debtors' counsel. There is not even any need for DIP financing. There will be no liquidation of QVC Inc. if bondholders get slightly less recovery. That is a red herring: the debtors and creditors will seek and are required to preserve the estate even if the plan is rejected and their petulant demands are not met. The only thing that would happen is the QIBs who make up the Ad Hoc bondholder hedge funds' institutional investor base would receive slightly lower returns this month. The number of times we have seen debtors try to ram through an unconfirmable plan based on claims that everything is going to fall apart and then everything ends up being fine when they are required to adjust it are too numerous to count.

We urge you to reject this plan which unethically strips the voiceless preferred holders of their structural and contractual rights.

Kind Regards,

*Rich Tosi*
*Wampanoag Capital LLC*
*Managing Member*